Jeffrey T. Golenbock
Jonathan L. Flaxer
Douglas L. Furth
Golenbock Eiseman Assor Bell & Peskoe LLP
437 Madison Avenue
New York, NY 10022
Tel) (212) 907-7300
Fax) (212) 754-0330
jgolenbock@golenbock.com

Counsel for Law Debenture Trust Company
of New York, as Indenture Trustee

UNITED STATES BANKRUTPCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| LYONDELL CHEMICAL COMPANY, et al., | Case No. 09-10023 (REG) |
| Debtors. | (Jointly Administered) |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS, on behalf of the Debtors' Estate, | Adversary Proceeding No. 09-01375 |
| Plaintiff, | |
| vs. | |
| CITIBANK, N.A., et al., | |
| Defendants. | |

**MEMORANDUM OF LAW SUBMITTED BY LAW DEBENTURE TRUST COMPANY OF NEW YORK AS INDENTURE TRUSTEE IN OPPOSITION TO MOTION BY FINANCING PARTY DEFENDANTS TO DISMISS COUNTS I, II, XX AND XXI OF THE COMPLAINT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

471162.3

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

    A.    The Millennium Noteholders' Interests Differ
            From Other Unsecured Creditors ................................................................. 1

    B.    The Financing Party Defendants' Motion Asks This Court
            To Substitute for Congress And To Dramatically Extend
            The Reach of Section 546(e) ....................................................................... 2

ARGUMENT ............................................................................................................................... 3

I.    The Financing Party Defendants' Interpretation of Section 546(e) Is
     Based On a Misreading of the Language of the Amendment ................................ 3

II.   Congress' Specific Intent to Make a 'Technical Change' Is Inapposite To The
     Financing Party Defendants' Drastic Re-Interpretation of Section 546(e) ............ 7

CONCLUSION ............................................................................................................................ 9

# TABLE OF AUTHORITIES

*Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002)......................................................................8

*Gozlon-Peretz v. United States*, 498 U.S. 395, 111 S. Ct. 840, 112 L. Ed. 2d 919 (1991) ..............7

*Mid-Continent Elec., Inc. v. Fifth Third Bank* (*In re Mid-Continent Elec., Inc.*),
    278 B.R. 607 (Bankr. M.D. Fla. 2002).......................................................................................7

*Moody v. Security Pac. Bus. Credit, Inc.* (W.D. Pa. 1991) ...............................................................7

*Rosener v. Majestic Management, Inc.* (*In re OODC, LLC f/k/a Optical Datacom, LLC*),
    321 B.R. 128 (Bankr. D. Del. 2005)...........................................................................................7

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001).........................................................................................6

*Term Loan Holder Comm. v. Ozer Group, L.L.C.* (*In re Caldor Corp.*),
    303 F.3d 161 (2d Cir. 2002) ......................................................................................................2

*United States v. Ron Pair Enters.*, 489 U.S. 235 (1989) ..................................................................8

## STATUTES

11 U.S.C. § 546(e) ...................................................................................................... *passim*

11 U.S.C. § 548(a)(1) ..........................................................................................................6

11. U.S.C. § 1109(b)............................................................................................................2

11 U.S.C. § 101(54)(A) .......................................................................................................5

11 U.S.C. § 544 ..........................................................................................................3, 4, 6, 7

Law Debenture Trust Company of New York, in its capacity as successor Indenture Trustee for those certain 7.625% Senior Unsecured Notes due 2026 issued by debtor Millennium America, Inc. (hereafter "Law Debenture Trust"), respectfully submits this memorandum of law in opposition to the motion made by the "Financing Party Defendants"[1] to dismiss Counts I, II, XX and XXI of the Complaint in this action (the "Complaint") which was commenced by the Official Committee of Unsecured Creditors for Lyondell Chemical Company *et al.* (the "Committee").

## PRELIMINARY STATEMENT

A.  The Millennium Noteholders' Interests Differ
    From Other Unsecured Creditors

Law Debenture Trust is the successor trustee under the Indenture, dated as of November 27, 1996, by and among Millennium America Inc., as issuer, Millennium Chemicals Inc. as guarantor, and The Bank of New York as Trustee (hereafter, the "Millennium Indenture"). Law Debenture Trust succeeded Bank of New York as trustee. Millennium America Inc. ("Millennium America") is a wholly-owned subsidiary of Millennium Chemicals Inc. ("Millennium Chemicals"), which in turn is a wholly-owned subsidiary of Lyondell Chemical Co. ("Lyondell"). Millennium America, Millennium Chemical and Lyondell are all chapter 11 debtors in these jointly administered chapter 11 cases. The securities issued under the Millennium Indenture are $241 million of unsecured notes due in 2026 (the "Millennium Notes").

---

[1] The Financing Party Defendants are Defendants Citibank, N.A., Citibank International pic and Citigroup Global Markets Inc., Deutsche Bank Trust Company Americas, Goldman Sachs Credit Partners, L.P. and Goldman Sachs International, Merrill Lynch
and Merrill Capital Corporation, ABN AMRO Inc. and ABN AMRO Bank
N.V., UBS Securities LLC, LeverageSource III S.a.r.l., and the Ad Hoc Group of Senior Secured Lenders. The Ad Hoc Group of Secured Lenders include ABN AMRO Bank, N.V., Bank of Scotland Plc, DZ Bank AG, Deutsche Zentral-Genossenschaftsbank, Kohlberg Kravis Roberts & Co. Fixed income) LLC and LeverageSource III S.a.r.l.

The holders of Millennium Notes (the "Millenium Noteholders") are among those unsecured creditors who are represented in this adversary proceeding by the Official Committee of Unsecured Creditors (the "Committee") appointed in these Chapter 11 cases. The Committee represents unsecured creditors of all the Debtors and seeks to recover on behalf of all the Debtors' estates. Nonetheless, the damages suffered by creditors of different Debtors will differ depending upon, among other things, the assets and liabilities of the particular Debtor. In the case of the Millennium Noteholders, the damages or other remedies to which they are entitled will depend on facts relating to Millennium America and Millennium Chemicals (collectively, the "Millennium Debtors") in particular, including the value of the assets and liabilities of those entities at relevant times. Such damages will differ from the damages sustained by creditors of other Debtors. Accordingly, Law Debenture Trust as successor trustee is concurrently seeking to intervene in the prosecution of the Complaint in order to protect the interests of the Millennium Noteholders. *See Term Loan Holder Comm. v. Ozer Group, L.L.C.* (In re Caldor Corp.), 303 F.3d 161, 169-70 (2d Cir. 2002) (Bankruptcy Code § 1109(b) grants parties in interest an unconditional right to intervene and be heard on any issue in a bankruptcy case, including in an adversary proceeding.)

B. The Financing Party Defendants' Motion Asks This Court To Substitute For Congress And To Dramatically Extend The Reach Of Section 546(e)

As discussed below, the Financing Party Defendants' motion is based on a misreading of Bankruptcy Code section 546(e) as amended in 2006. Defendants argue —contrary to the text of the amended statute itself and in the face of legislative history that unambiguously states that the amendment was "technical" in nature only — that the 2006 amendment expanded the safe harbor provided in section 546(e) to immunize financial institutions from any attempt by a trustee to

avoid a debtor's obligation to pay that financial institution under Code sections 544, 545, 547 and 548.

Such a result would, by any estimation, constitute a radical revision of the statute and would deprive trustees and creditors of a powerful tool used regularly over the years to recover assets that are rightly property of the estate and to compensate creditor groups that were harmed by a fraudulent transfer. If Congress intented to make such a substantial change, the language of section 546(e) would surely say so plainly. The 2006 amendment to section 546(e) did not do that, and in fact makes no mention of any restriction on the trustee's right to avoid a debtor's *obligations* to financial institutions. One can readily understand why Defendants would like section 546(e) to operate as they propose, but to accomplish that result, Defendants should be lobbying Congress, not this Court.

## ARGUMENT

### I. The Financing Party Defendants' Interpretation of Section 546(e) Is Based On a Misreading of the Language of the Amendment

The Financing Party Defendants argue that a recent amendment to section 546(e) of the Bankruptcy Code provides them with a complete defense against the fraudulent transfer claims brought against them in this action. But Defendants' proffered interpretation of section 546(e) depends on a misreading of the language used in the amendment and would constitute a dramatic expansion of the scope of section 546(e) even though it is clear that Congress intended the amendment of section 546(e) to be technical in nature. Comparison of the language of section 546(e) with the language of other related statutory provisions exposes the fundamental flaws in Defendants' argument.

Bankruptcy Code section 546(e) was amended pursuant to the Financial Netting Improvements Act of 2006. As a consequence of that amendment, section 546(e) now reads as follows (language added by the 2006 Amendment is underlined))

> Notwithstanding sections 544, 545, 547, 548 (a)(1)(B), and 548 (b) of this title, the trustee may not avoid a transfer that is a margin payment, as defined in section 101, 741, or 761 of this title, or settlement payment, as defined in section 101 or 741 of this title, made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, <u>or that is a transfer made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, in connection with a securities contract, as defined in section 741 (7), commodity contract, as defined in section 761 (4), or forward contract,</u> that is made before the commencement of the case, except under section 548 (a)(1)(A) of this title.

11 U.S.C. 546(e).

The Financing Party Defendants argue that by reason of this amendment, section 546(e) provides them with a safe harbor, and immunizes them from the fraudulent transfer claims alleged in Counts I, II, XX and XXI and elsewhere. Defendants argue that (i) they are a "financial institution;" (ii) their funding of the leveraged buyout of Lyondell Chemical Company by Bassell AF S.C.A. constitutes a "transfer"; and (iii) Defendants made such "transfer" in "connection with a securities contract."[2] Accordingly, Defendants argue that section 546(e) constitutes a complete legal defense to the claims asserted against them.

Defendants' argument flies in the face of the plain language of section 546(e). There is nothing in the language of section 546(e), either pre- or post- the 2006 amendment, that provides that a trustee is barred from seeking to attack a debtor's obligation to repay a debt, such as the credit facilities attacked by the Committee in the Complaint. Nevertheless, Defendants argue

---

[2] This memorandum does not address Defendants' argument that the term "securities contract" includes loans used for corporate acquisitions. Rather, Law Debenture Trust joins in the arguments advanced by the Committee, which conclusively demonstrate that that the credit facilities entered into by the Defendants with the Debtors are not "securities contracts" for purposes of section 546(e).

4

that section 546(e) as amended does just that, based on the fact that the term "transfer" used in the amended section 546(e) is defined in Bankruptcy Code section 101(54)(A) to include "the creation of a lien." Defendants argue that if a lien is protected from attack by a trustee, so must the underlying obligation be protected from attack.

But Defendants' argument ignores the irrefutable fact that nowhere in section 546(e) does the statute prohibit an avoidance action by the trustee with respect to an *obligation* of the debtor. Defendants attempt to read that term into the amended language of section 546(e) through a specious syllogism, *i.e.*, the definition of the term "transfer" includes the creation of a lien; the creation of a lien occurs when an underlying obligation is secured; therefore the term transfer must include the incurrence of an obligation, and section 546(e) must bar a trustee from seeking to avoid an obligation made to a financial institution. But tortured logic is not a substitute for statutory interpretation.

Contrary to Defendants' assertion that liens and obligations are always inextricably linked, there is no necessity for an obligation to be secured by a lien, and the mere fact that a trustee might not be able to avoid a lien, does not require the conclusion that the trustee might not still have the right to seek to avoid the underlying obligation. There are good reasons for liens and obligations to be viewed separately. For example, a lien might secure multiple obligations or obligations of multiple entities and the avoidance of one obligation would not necessarily mean that the lien should go away. Similarly, it is not uncommon in the preference context for a lien granted for purposes of credit enhancement to be avoided as a preference while the obligation that it was intended to secure remains. In some circumstances, moreover, a trustee may be able to eliminate a portion of the underlying debt secured by a lien. In that circumstance, while the lien might remain, the amount of the underlying debt secured by that lien would be

471162.3

reduced. In this case, if the Committee succeeds in eliminating the entire underlying debt, any lien that would otherwise have secured that debt will be worthless. That is to say, Congress treats liens and obligations differently because they may be granted or incurred at different times and because they are indeed different. In the context of 546(e), while Congress may have addressed "transfers," which it has defined as including the creation of a lien, it did not address obligations.

In short, Defendants' alleged "plain reading" of section 546(e) is anything but plain. Rather, Defendants are attempting to rewrite § 546(e) to include a wholly different concept, that is the avoidance of obligations, that Congress manifestly did not include in that section. Had Congress wished to include that concept, of course, it could have done so easily, simply by including the term "obligation" in the language it added to section 546(e). But it did not, even though the Bankruptcy Code consistently makes clear that the terms "transfer" and "obligation" are not coextensive.

By way of example, Bankruptcy Code section 548 states that a trustee has the right to avoid "any transfer...of an interest of the debtor in property, or any obligation...incurred by the debtor." 11 U.S.C. 548(a)(1) (emphasis added). Similarly, Bankruptcy Code section 544 provides that the trustee shall have the "rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor ...." If, as Defendants argue, the word "transfer" includes the concept of "obligation" then the use of the word "transfer" in sections 548 and 544 would be superfluous, and unnecessary. Any such conclusion would be contrary to long-established principles of interpretation. It is well settled that when looking at statutory language, the court should interpret a statute such that each and every word has its purpose. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory constructions that a statute ought, upon the whole, to be so construed that, if it can be

prevented, no clause, sentence or word shall be superfluous, void or insignificant."). Bankruptcy Code sections 544 and 548 demonstrate that when Congress wishes to differentiate between "transfer" and "obligation," it does so specifically.[3] A plain reading of section 546(e) thus fails to support Defendants' basic argument. Only by grafting the term and concept of "obligation" to the term "transfer" would section 546(e) even arguably be relevant to the Committee's fraudulent transfer claims. A court should not rewrite legislation under the guise of statutory interpretation. But that is precisely what Defendants ask this Court to do here.

## II. Congress' Specific Intent to Make a 'Technical Change' Is Inapposite To The Financing Party Defendants' Drastic Re-Interpretation of Section 546(e)

Prior to the 2006 Amendment, fraudulent transfer actions were permitted against parties who loaned money to complete a leveraged buyout in order to avoid the debtor's obligations incurred to the lenders funding the LBO. *See, e.g., Rosener v. Majestic Management, Inc. (In re OODC, LLC f/k/a Optical Datacom, LLC)*, 321 B.R. 128 (Bankr. D. Del. 2005); *Mid-Continent Elec., Inc. v. Fifth Third Bank (In re Mid-Continent Elec., Inc.)*, 278 B.R. 607 (Bankr. M.D. Fla. 2002); *Moody v. Security Pac. Bus. Credit, Inc.* (W.D. Pa. 1991). Defendants apparently concede that consistent with these cases, in its pre-amendment state, section 546(e) would not have limited the right of the Committee to avoid the debtors' obligations to the Financing Defendants. Accordingly, if Defendants' interpretation of section 546(e) were correct, that would mean that Congress intended by the Financial Netting Improvements Act of 2006 to dramatically expand the scope of section 546(e) and to provide a safe harbor to financial

---

[3] The Supreme Court has held that one must presume that Congress has acted intentionally and purposely in the inclusion of language in one section of a statute and the exclusion of such language in another section of the same Act. *See Gozlon-Peretz v. United States*, 498 U.S. 395, 111 S.Ct. 840, 846-47, 112 L.Ed.2d 919 (1991). One must assume, therefore, that the inclusion of the term "obligation" in sections 544 and 548, and the omission of that same term in section 546 was purposeful.

7

institutions involved in LBOs where none previously existed. As discussed above, the plain language of section 546(e) is by itself sufficient to defeat this argument. Where the plain language of a statute is clear, the courts should not interpret that statute in a way that is "demonstrably at odds with the intentions of the drafters." *United States v. Ron Pair Enters.*, 489 U.S. 235, 242 (1989). *See also Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002). But if there were any doubt as to the plain meaning of section 546(e), the Congressional history of the Financial Netting Improvements Act of 2006 makes it clear beyond any legitimate dispute that Congress did not intend its amendment of section 546(e) to have any such wide-ranging and dramatic effect.

One need not look beyond the first page of the House Report describing the 2006 Amendment to see that Congress did not intend a drastic overhaul to the Bankruptcy Code. On page 1, the House Report states that "H.R. 5585 makes *technical* changes to the netting and financial provisions incorporated by Title IX of the Bankruptcy Prevention and Consumer Protection Act of 2005." House Report, 109-548, 9/12/06 (emphasis added). Pertaining specifically to the amendment of section 546(e), the House Report further states that "this amendment *conforms* the language of 546(e) and 546(f) to the language in 546(g). House Report, 109-548, 9/12/06 (emphasis added). Nothing in the language of section 546(g) even remotely suggests that the amendment to section 546(e) was intended to expand the scope of 546(e) to limit the right of trustees to avoid obligations of debtors to financial institutions. In short, the House Report lacks even the faintest suggestion that Congress intended, or even thought, that the 'technical' and 'conforming' changes would result in any substantial changes in the Bankruptcy Code, no less the radical and wide-ranging changes suggested by Defendants.

8

471162.3

Comments made by the bill's co-sponsors likewise make clear that the amendment was not intended to have the far reaching results advocated by Defendants.

*See* Comments of Representative McHenry, Comments of Representative McHenry, 152 Cong. Rec. H8650 (November 15, 2006) ("The legislation....makes a number of technical changes to the financial contract safe harbor provisions..."). In her comments to the House of Representatives, the bill's other co-sponsor, Representative Wasserman Schultz, explained that the 2006 Amendment "protects the rights of market participants to terminate complex financial agreements." See Comments of Representative Wasserman Schultz, 152 Cong. Rec. H7601 (September 27, 2006). Nothing the in bill's co-sponsors' comments suggest that either envisioned the drastic change suggested by the Financing Party Defendants.

In short, the congressional history, as gleaned from the House Report and floor debate, unequivocally demonstrates that the 2006 amendment to section 546(e) was only intended to be a technical change, and was not intended to add a new, and extremely broad, limitation on the power of trustees to avoid obligations in large scale LBOs. Here, the legislative history of the 2006 amendment to section 546(e) confirms that the plain language of 546(e) is precisely what Congress intended. To the extent that this Court believes that there is any ambiguity in the plain language of 546(e), however, any such ambiguity would be resolved by reference to legislative history.

## CONCLUSION

For the reasons set forth above, Law Debenture Trust, in its capacity as successor trustee for those certain 7.625% Senior Unsecured Notes due 2026 issued by debtor Millennium America, Inc., respectfully requests that the Court deny the Financing Party Defendants' motion

to dismiss Counts I, II, XX and XXI of the Complaint. In addition, Law Debenture Trust joins in the arguments advanced by the Committee in opposition to such motion.

Dated: September 25, 2009
      New York, New York

                        GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP

                        By: /s/ Jeffrey T. Golenbock
                             Jeffrey T. Golenbock
                             Jonathan L. Flaxer
                             Douglas L. Furth

                        437 Madison Avenue
                        New York, New York 10022
                        (212) 907-7373
                        Attorneys for Law Debenture Trust Company of New York, as Trustee