UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                   :

**In re:**                                             :                                     **Chapter 11**

**LYONDELL CHEMICAL COMPANY, et al.,** :      **Case No. 09-10023 (REG)**

                      **Debtors.**                :                                 **Jointly Administered**

------------------------------------------------------------x
**OFFICIAL COMMITTEE OF UNSECURED** :
**CREDITORS, on behalf of the Debtors'**
**Estates,**
                    **Plaintiff,**      :      **Adversary Proceeding**
          **v.**                          :      **No. 09-01375 (REG)**

**CITIBANK, N.A., et. al.,**            :
                    **Defendants.** :
------------------------------------------------------------x

**ORDER APPROVING REVISED SETTLEMENT
WITH FINANCING PARTY DEFENDANTS IN COMMITTEE
LITIGATION PURSUANT TO BANKRUPTCY RULE 9019**

Upon the joint amended motion dated March 6, 2010 (the "Joint Amended Motion")[1] of Lyondell Chemical Company and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee") for approval, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), of the revised settlement with respect to the above-captioned adversary proceeding (the "Committee Litigation"), as more fully set forth in the Joint Amended Motion; and the Court having jurisdiction to consider the Joint Amended Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Joint Amended Motion and the relief requested therein being a core

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed thereto in the Joint Amended Motion or the Revised Settlement.

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Initial Motion and the Joint Amended Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having reviewed the Joint Amended Motion and any opposition thereto and statements submitted in connection therewith; and the Court having reviewed the record of the Committee Litigation; and upon the hearing held before the Court on March 11, 2010 (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Joint Amended Motion and at the Hearing establish just cause for the relief granted herein; and the Court having overruled any objections filed with regard to the Joint Amended Motion; and the relief requested in the Joint Amended Motion being in the best interests of the Debtors, their estates and their creditors; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Joint Amended Motion seeking approval of the revised settlement, in the executed form as filed on March 10, 2010 (attached as Exhibit A, the "Revised Settlement") is granted in its entirety, and any objections to the Joint Amended Motion not previously withdrawn, waived or settled, and all reservation of rights included therein, are hereby overruled with prejudice; and it is further

ORDERED that any objections to the Initial Motion shall be suspended as of the date hereof and, on the Payment Date, shall be deemed withdrawn with prejudice; and it is further

ORDERED that, pursuant to Bankruptcy Rule 9019, the Revised Settlement is approved in its entirety and all of its terms are incorporated herein by reference as if fully set forth herein (and the failure to specifically describe or include herein any particular provision of

the Revised Settlement shall not diminish or impair the effectiveness of any such provision); and it is further

ORDERED that the Debtors are authorized and directed to execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers and to take any and all actions reasonably necessary or appropriate to consummate, complete, execute, and implement the Revised Settlement in accordance with the terms and conditions thereof; and it is further

ORDERED that the manner in which notice of the Initial Motion and the Joint Amended Motion was provided to all parties entitled to such notice is found to have been adequate, appropriate, reasonable and sufficient for all purposes and is approved; and it is further

ORDERED that this Order (including the Revised Settlement incorporated herein) is and shall be binding on all parties in interest in the Debtors' chapter 11 cases (including, but not limited to, any subsequently appointed chapter 11 or chapter 7 trustee or any representative of the Debtors' estates appointed pursuant to 11 U.S.C. § 1123), except with respect to any provisions regarding allocation or distribution of settlement consideration to or among holders of Allowed General Unsecured Claims, which shall be binding only on the Parties until confirmation of the Revised Plan or an Alternative Plan, and thereafter on all parties in interest, and in each case, on each of their predecessors or successors; and it is further

ORDERED that the settlement and compromises set forth in the Revised Settlement, and the execution and delivery of the Revised Settlement by the Parties, are approved; and it is further

ORDERED that the settlement and compromises set forth in the Revised Settlement are fair and reasonable to, and are in the best interests of, the Debtors and their

estates, the Secured Lenders, the 2015 Noteholders, the Specified Millennium Noteholders, other holders of Millennium Notes Claims and the Debtors' other unsecured creditors and in entering into the Revised Settlement, the Debtors, the Committee, the Financing Party Defendants, the 2015 Notes Trustee, the members of the 2015 Notes Ad Hoc Group and the Millennium Notes Trustee have exercised their respective rights and powers, and used the same degree of care and skill in their exercise, as a prudent person would exercise or use under the circumstances; and it is further

ORDERED that upon entry of this Order, the 2015 Notes Claims shall be deemed (a) Allowed in the amount of $1,351,695,059.96 (excluding fees and expenses of the 2015 Notes Trustee) for purposes of the Revised Plan or an Alternative Plan and the Revised Settlement, (b) not subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, defense or "claim" (as defined in the Bankruptcy Code) under applicable provisions of the Bankruptcy Code (including sections 510, 544, 547 and 548) or state law, and (c) not subject to disallowance under any provision of the Bankruptcy Code, including section 502(d) thereof; provided, however, that the foregoing provision shall have no application or effect (and shall retroactively be null and void) in the event that any one or more of the conditions set forth in the definition of "2015 Notes Plan Conditions" is not satisfied (or in the case of clause (a)(1) thereof, waived as provided in the Revised Settlement) or the Payment Date does not occur; and it is further

ORDERED that upon entry of the Approval Order, the Millennium Notes Claims shall be deemed (a) Allowed in the amount of $244,058,317.71 (excluding fees and expenses of the Millennium Notes Trustee) for purposes of the Revised Plan or an Alternative Plan and the Revised Settlement, (b) not subject to avoidance, subordination, recharacterization, recovery,

attack, offset, counterclaim, defense or "claim" (as defined in the Bankruptcy Code) under applicable provisions of the Bankruptcy Code (including sections 510, 544, 547 and 548) or state law, and (c) not subject to disallowance under any provision of the Bankruptcy Code, including section 502(d) thereof; provided, however, that the foregoing provision shall have no application or effect (and shall retroactively be null and void) in the event that any one or more of the conditions set forth in the definition of "Millennium Notes Plan Conditions" is not satisfied or the Payment Date does not occur; and it is further

ORDERED that the mutual releases contained in the Revised Settlement shall be effective as of the Payment Date, and each Party shall be deemed fully and forever to have released and to be permanently enjoined from asserting, pursuing or prosecuting in any manner and in any forum any and all claims released pursuant to the Revised Settlement, including, but not limited to, claims arising from the negotiation of or entry into the Revised Settlement or the Initial Settlement; and it is further

ORDERED that on the Payment Date, the releases contained in the Revised Settlement with respect to State Law Avoidance Claims shall be binding on all parties in interest, including the Debtors, the Committee, the Trustees, the 2015 Notes Trustee, the 2015 Notes Holders, the holders of Allowed General Unsecured Claims, the holders of Senior Facility Claims, the holders of Bridge Loan Facility Claims, the holders of Senior/Bridge Deficiency Claims, the Secured Lenders, the Millennium Notes Trustee, the Specified Millennium Noteholders, other holders of Millennium Notes Claims and each of the Debtors' other creditors and each of their respective predecessors, successors and assigns, and each such party shall be permanently enjoined from asserting, pursuing or prosecuting in any manner and in any forum

any and all State Law Avoidance Claims released pursuant to the Revised Settlement; and it is further

ORDERED that prosecution of the claims asserted or that could have been asserted in the complaint in the Committee Litigation [09-01375 Docket No. 1] or the Proposed Amended Committee Complaint (and any claims that could have been asserted by the 2015 Notes Trustee, the Millennium Notes Trustee or any other party as a result of actual or potential intervention in the Committee Litigation), as against the Financing Party Defendants and Secured Lenders (in any capacity for which they have been sued), shall be stayed pending the Payment Date, at which time such complaint and claims (including the Committee's motion for leave to amend such complaint [09-01375 Docket No. 65], as against the Financing Party Defendants and Secured Lenders) shall be deemed dismissed with prejudice, effective as of the Payment Date, and the Debtors shall be authorized to file a notice of such dismissal on or after the Payment Date; and it is further

ORDERED that, consistent with the Arco and Equistar Settlement, prosecution of the claims asserted or that could have been asserted in the complaint in intervention of Bank of New York Mellon, as indenture trustee under the ARCO Indenture, and Bank of New York Mellon Trust Company, N.A., as indenture trustee under the Equistar Indenture (together "<u>BNY Mellon</u>") in the Committee Litigation [09-01375 Docket No. 150], as against the Lender Releasees, which BNY Mellon has been required to suspend by order of the Bankruptcy Court dated February 17, 2010, shall be and remain stayed pending the Payment Date, at which time such complaint and claims shall be dismissed with prejudice, effective as of the Payment Date, and the Debtors shall be authorized to file a notice of such dismissal on or after the Payment Date; and it is further

ORDERED that prosecution of the claims asserted or that could have been asserted in the complaint in the 2015 Notes Litigation [09-01501 Docket No. 1], as against the defendants named therein, shall be stayed pending the Payment Date, at which time such complaint and claims shall be deemed dismissed with prejudice, effective as of the Payment Date, and the Debtors shall be authorized to file a notice of such dismissal on or after the Payment Date; and it is further

ORDERED that prosecution or filing of objections or other oppositions to the Debtors' complaint in the Debtors' Injunction Litigation [09-01459 Docket No. 1] shall be suspended or enjoined pending the Payment Date, at which time any such objections or oppositions shall be deemed withdrawn with prejudice, effective as of the Payment Date, and the Debtors shall be authorized to file a notice of such withdrawal on or after the Payment Date; and it is further

ORDERED that prosecution of the Pending STN Motions shall be suspended pending the Payment Date, at which time such motions shall be deemed withdrawn with prejudice, effective as of the Payment Date, and the Debtors shall be authorized to file a notice of such withdrawal on or after the Payment Date; and it is further

ORDERED that, except to the extent inconsistent with the exercise of their fiduciary duties, the Debtors shall not propose or support any plan that is inconsistent with or does not effectuate the Revised Settlement; and it is further

ORDERED that, except as expressly provided in the Revised Settlement, upon entry of this Order, the Committee, the 2015 Notes Trustee, the 2015 Notes Ad Hoc Group and the Millennium Notes Trustee shall be deemed to have withdrawn without prejudice, and shall promptly withdraw without prejudice, all pending objections to the Debtors' plan of

reorganization dated December 23, 2009 [09-10023 Docket No. 3489], its associated disclosure statement [09-10023 Docket No. 3488], and the Debtors' pending motion to approve the Equity Commitment Agreement [09-10023 Docket No. 3487] subject to refiling only in the event this Order is vacated, reversed, modified or amended prior to the Payment Date; and it is further

ORDERED that each of the Non-Settling Defendants is hereby permanently barred, enjoined and restrained from commencing, prosecuting, or asserting in this Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere any claim for non-contractual indemnity or contribution against any Lender Releasee (including any other non-contractual claim against the Lender Releasees, whether or not denominated as for contribution or indemnity, where the injury to the Non-Settling Defendant is the Non-Settling Defendant's liability to the plaintiffs), arising out of or reasonably flowing from the claims or allegations in the Committee Litigation, whether arising under state, federal or foreign law as claims, cross-claims, counterclaims, or third-party claims (collectively, the "Barred Claims"), and with respect to the Barred Claims, the Non-Settling Defendant is entitled to the judgment reduction provisions set forth herein. This Order (the "Bar Order") is without prejudice to the position of any party as to the existence, in the absence of this Bar Order, of any Barred Claim.

> (a) If (i) any person acting on behalf of the Debtors' estates, including any successor to the Debtors including any chapter 7 trustee, any committee appointed in the Bankruptcy Case, any trustee of the Litigation Trust or any estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code or (ii) any trustee of the Creditor Trust (any of the above, a "Plaintiff"), obtains a judgment or award (a "Judgment") against a Non-Settling Defendant or other party with respect to one or more causes of action based upon, arising from, or related to the Debtor Released Claims or any transaction underlying any Debtor Released Claim then, with respect to any actual, potential or asserted liability of a Lender Releasee to a Non-Settling Defendant or other party for the Barred Claims in respect of such Judgment, the Plaintiff shall, prior to or in connection with the entry of such Judgment, provide notice of this Bar

Order to the court or tribunal in which such Judgment was obtained, and the court or tribunal shall reduce such Judgment against such Non-Settling Defendant or other party in an amount that is the greater of (i) the amount of the consideration provided pursuant to the Revised Settlement by the Lender Releasee(s) against whom there would have been a Barred Claim in the absence of this Bar Order, <u>provided</u> that for purposes of this clause (i), the Parties and Non-Settling Defendants reserve all rights with respect to the determination of the amount of the consideration provided pursuant to the Revised Settlement that should be deemed allocable to such Lender Releasee(s) and to such Barred Claim for purposes of judgment reduction; or (ii) the amount equal to the Judgment against such Non-Settling Defendant or other party times the aggregate proportionate share of fault (expressed as a percentage) of the Lender Releasee(s) against whom there would have been a Barred Claim in the absence of this Bar Order. In the event that Judgment shall be entered against a Non-Settling Defendant or other party without a prior or concurrent determination as to the existence of a Barred Claim (and, in the event of a determination of the existence of a Barred Claim, without a reduction of such Judgment), such Judgment shall not, and shall be deemed not to, give rise to any Barred Claim.

(b) In the event such Plaintiff asserts any claim or cause of action against any Non-Settling Defendant or other party in any court or tribunal other than this Court, or in the event that any proceeding before this Court with respect to one or more causes of action based upon, arising from, or related to the Debtor Released Claims or any transaction underlying any Debtor Released Claim, is (1) removed or transferred from this Court to any other court or tribunal, (2) adjudicated to judgment in this Court and enforcement proceedings are brought in any other court or tribunal; or (3) adjudicated to judgment in this Court but a Barred Claim is brought in a proceeding in any other court or tribunal; such Plaintiff shall, to the extent it is a party to such proceeding or has notice thereof, provide notice of such proceeding to the applicable Lender Releasee and shall take any additional steps, as are reasonably directed by such Lender Releasee, for the enforcement of this Bar Order by such other court or tribunal. Notwithstanding the foregoing, in the event such other court or tribunal declines to enforce this Bar Order or declines to rule on or determine any Barred Claim, and Judgment is entered by such a court or tribunal against a Non-Settling Defendant or other party without a prior or concurrent determination of and reduction for Barred Claims with respect to such Judgment, then: (i) such Judgment shall not prejudice the rights of any Non-Settling Defendant or other party to seek or obtain a judgment credit or reduction in accordance with applicable law or this Order; (ii) such Judgment shall not, and shall be deemed not to, give rise to any Barred Claim; and (iii) in the event that the Litigation Trust collects proceeds on account of such Judgment, such proceeds shall be retained by the Litigation Trust and not distributed until the earlier of (x) expiration of the applicable statute of limitations period with respect to any potential Barred Claim in respect of such Judgment; or (y) final determination, after all available appeals are taken and exhausted, of all Barred Claims in respect of such Judgment. In the event that a Lender Releasee is adjudged liable for any

Barred Claim by a final, non-appealable order, then, to the extent proceeds have been collected by the Litigation Trust in respect of the Judgment underlying such Barred Claim, such proceeds shall be distributed from the Litigation Trust to the applicable Non-Settling Defendant or other party in satisfaction of such judgment; provided that such proceeds shall instead be distributed by the Litigation Trust to the applicable Lender Releasee(s) to the extent any amounts previously have been paid by the Lender Releasee(s) in satisfaction of such judgment. Notwithstanding the foregoing, if the reason that such court or tribunal has declined to adjudicate a Barred Claim is the absence of the Lender Releasee from the jurisdiction and the refusal of such Lender Releasee to submit to its jurisdiction, then such Lender Releasee shall forfeit its rights to a reduction in any Judgment rendered otherwise provided for hereby, except that such Lender Releasee shall not forfeit such rights if it declines to appear in any subsequent action for contribution that such Non-Settling Defendant or other party may commence in a court or tribunal that lacks jurisdiction over such Lender Releasee or otherwise lacks authority to enter a valid and enforceable Judgment against such Lender Releasee.

(c) The Lender Releasees acknowledge that any Plaintiff that obtains a Judgment subject to reduction based on a Barred Claim is a party in interest with respect to any action or proceeding for the adjudication of such Barred Claim and shall have the right to intervene in such action or proceeding and that the consent of such Plaintiff shall be required for the settlement or compromise of any Barred Claim; in addition, the Plaintiff shall be deemed to consent to the right of intervention of any Lender Releasee in any action or proceeding for the adjudication of such Barred Claim; and it is further

ORDERED that if any Plaintiff enters into a settlement with a Non-Settling Defendant or other party with respect to one or more causes of action based upon, arising from, or related to the Debtor Released Claims or any transaction underlying any Debtor Released Claim, then such Plaintiff shall cause to be included, and in all events, the settlement shall be deemed to include, a dismissal, release and waiver of any Barred Claims with respect to such settlement; and it is further

ORDERED that each of the Lender Releasees is hereby permanently barred, enjoined and restrained from commencing, prosecuting, or asserting in this Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere any claim for non-contractual indemnity or contribution against

any Non-Settling Defendant (including any other non-contractual claim against the Non-Settling Defendants, whether or not denominated as for contribution or indemnity, where the injury to the Lender Releasee is the Lender Releasee's liability to the plaintiffs), arising out of or reasonably flowing from the claims or allegations in the Committee Litigation, whether arising under state, federal or foreign law as claims, cross-claims, counterclaims, or third-party claims. This Order is without prejudice to the position of any party as to the existence, in the absence of this Bar Order, of any such claim; and it is further

ORDERED that nothing herein shall prejudice or operate to preclude the rights of any Non-Settling Defendant to (i) obtain judgment credit or reduction to the fullest extent available under applicable law on any applicable grounds whatsoever; provided that the Plaintiff reserves the right to dispute any such claimed right to judgment credit or reduction; or (ii) assert claims, other than Barred Claims, against any party. For the avoidance of doubt, the provisions of this Order, including the judgment reduction provisions set forth herein, shall not apply to (i) any contractual indemnity or (ii) any claim asserted in the Committee Complaint or the Proposed Amended Committee Complaint or in any other Complaint filed by any Plaintiff in this Court or in any other court or tribunal for which joint liability does not exist as a matter of law, equity or fact as between any Non-Settling Defendant and any Lender Releasee, including, by way of example, the claims asserted in Count XIV and Count XVII and the equitable subordination of claims sought in Count XV of the Committee Complaint; and it is further

ORDERED that, as of the Payment Date, the Committee (and each of its members) shall irrevocably be divested of standing to pursue claims on behalf of the Debtors' estates against the Financing Party Defendants and the Secured Lenders (in each case, in any capacity for which they have been or could have been sued), and any request for standing to

pursue claims on behalf of the Debtors' estates against any of the Financing Party Defendants or Secured Lenders (in each case, in any capacity for which any of them were or could have been sued) by any other party (including, without limitation, the 2015 Notes Trustee, BNY Mellon, as indenture trustee under the ARCO Indenture and the Equistar Indenture, and the Millennium Notes Trustee) shall hereby be denied; and it is further

ORDERED that, on the Payment Date, any rights of the Committee or any other party to assert, prosecute or seek standing to assert or prosecute a Lender Claim (as defined in the DIP Financing Order), in each case whether affirmatively, as a defense, or in any other manner, shall irrevocably and automatically terminate, and any and all extant Lender Claims shall be, and shall be deemed, irrevocably dismissed with prejudice, it being acknowledged that, unless otherwise released hereunder or in the Revised Settlement or in the Revised Plan or any Alternative Plan, the rights of the Committee, the Litigation Trust or the Creditor Trust to assert or prosecute a Non-Settling Defendant Claim, Assigned Preference Claim or State Law Avoidance Claim, as applicable, will survive and will be unaffected by the foregoing; and it is further

ORDERED that, consistent with Section 3.13 of the Revised Settlement, the DIP Financing Order is hereby modified to eliminate the $250,000 limitation for "Capped Activities" of the Committee's professionals contained in paragraph 23 thereof, and compensation of the Committee's professionals for their reasonable fees and expenses for such activities shall be subject to final application (to be submitted to the Debtors in the same manner as the Committee's professionals have done to date), objection, allowance and reimbursement consistent with the Bankruptcy Code and prior orders of the Court; provided, that upon entry of this Order (i) the Committee's professionals shall be entitled to be paid, no Party shall object to

the payment of, and the Debtors shall pay, the Committee's professionals fees and expenses for "Capped Activities" allowed but not awarded to date pursuant to Bankruptcy Court orders approving the First Interim Fee Application [09-10023 Docket No. 2505] and the Second Interim Fee Application [09-10023 Docket No. 3416], and (ii) the Committee's professionals shall be entitled to be paid, and the Debtors shall pay, the Committee's professionals fees and expenses for "Capped Activities" requested or to be requested for each of the months of September, October, November and December 2009 pursuant to monthly fees submissions, and any additional periods as the case may be, pursuant to the Interim Compensation Procedures Order and not otherwise objected to except for the reason that such fees and expenses were for "Capped Activities," subject only to applicable holdbacks, <u>provided</u> that the Notice Parties (as defined in the Interim Compensation Procedures Order) shall have 15 days from entry of this Order during which to review and object to the reasonableness of the amounts addressed in subsection (ii) of this paragraph, that no compensation shall be paid by the Debtors for any professionals of any subcommittee of the Committee and that the foregoing shall not expand any other reimbursement obligations of the Debtors' estates under the Revised Settlement; and it is further

ORDERED that the Senior Agent, the Bridge Agent and the Collateral Agent shall not be liable to any party on account of actions taken by the Senior Agent, the Bridge Agent or the Collateral Agent in good faith (other than as finally judicially determined by a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Senior Agent, the Bridge Agent or the Collateral Agent, as applicable), to effectuate the transactions contemplated by the Revised Settlement, including, without limitation, the release of any Liens securing Senior Secured Claims or Bridge Loan Facility Claims or the Claims of any party; and it is further

ORDERED that the Debtors shall indemnify and hold harmless the Senior Agent, the Bridge Agent and the Collateral Agent from and against any and all losses, claims, damages, liabilities and reasonable expenses, joint or several, to which the Senior Agent, the Bridge Agent and the Collateral Agent may become subject arising out of or in connection with any claim, challenge, litigation, investigation or proceeding with respect to effectuating the transactions contemplated in the Revised Plan, any Alternative Plan or the Revised Settlement including, without limitation, the "Enforcement Sale" contemplated in the Revised Plan and the release of Liens and related transactions contemplated in the Revised Settlement, and shall promptly reimburse the Senior Agent, the Bridge Agent and the Collateral Agent for reasonable legal or other reasonable out-of-pocket expenses as they are incurred in connection with investigating, responding to or defending any of the foregoing, _provided_ that the foregoing indemnification shall not apply to losses, claims, damages, liabilities or expenses finally judicially determined by a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct on the part of the Senior Agent, the Bridge Agent or the Collateral Agent, as applicable.  If for any reason (other than for the reasons set forth in the proviso to the previous sentence) the foregoing indemnification is unavailable to either the Senior Agent, the Bridge Agent or the Collateral Agent or insufficient to hold either the Senior Agent, Bridge Agent or the Collateral Agent harmless, then the Debtors shall contribute to the amount paid or payable by the Senior Agent, the Bridge Agent or the Collateral Agent as a result of such loss, claim, damage, liability or expense.  Such indemnification obligations shall survive and shall not be discharged by any plan of reorganization in these chapter 11 cases; and it is further

ORDERED that the Debtors (and after the Effective Date, the Reorganized Debtors) shall continue to pay and reimburse to (i) Citibank, N.A. and its Affiliates, in their

various current and former agent capacities under the Senior Facility and the Bridge Loan Facility, (ii) Deutsche Bank Trust Company Americas and its Affiliates, in its capacity as the Senior Agent, and (iii) Merrill Lynch Capital Corporation and its Affiliates, in its capacity as administrative agent under the Bridge Loan Facility, the reasonable expenses incurred by them thereunder (including the reasonable, actual and documented fees and disbursements of counsel), and, such expenses (but only such expenses (including the reasonable, actual and documented fees and disbursements of counsel), and not any other claims or rights under the Senior Facility or the Bridge Loan Facility agreement) shall not be discharged under the Revised Plan or any Alternative Plan. Notwithstanding the foregoing, the Debtors (and after the Effective Date, the Reorganized Debtors) shall continue to honor their indemnification obligations under the Senior Facility and Bridge Loan Facility to the Senior Agent, the Bridge Agent and Collateral Agent or as set forth herein, in the Revised Settlement, the Revised Plan or any Alternative Plan, and such indemnification obligations shall not be discharged under the Revised Plan or any Alternative Plan; and it is further

ORDERED that the 2015 Notes Plan Support Agreement and the Millennium Notes Plan Support Agreement each shall be enforceable, respectively,[2] against the parties thereto and each of their respective direct and indirect, initial and subsequent successors and assigns in accordance with the terms and conditions contained therein, as applicable, and any assignment or transfer of (a) 2015 Notes by any signatory to a 2015 Notes Plan Support Agreement or any Subsequent Transferee, or (b) Millennium Notes by any Specified Millennium Noteholder or any Subsequent Transferee, shall be null and void <u>ab initio</u> and the transferor shall

---

[2] The Court having reviewed the forms of such confidential plan support agreements, which were provided to the Court for *in camera* review.

remain subject to and liable under its respective plan support agreement unless (i) such signatory to a 2015 Notes Plan Support Agreement, Specified Millennium Noteholder, or Subsequent Transferee, as the case may be, has provided a copy of this Order and the applicable plan support agreement to such prospective assignee or transferee; (ii) such assignee or transferee has executed a joinder in the form attached as Exhibit B hereto, which shall provide, inter alia, that (x) such assignee or transferee agrees to abide by and not contest any of the provisions of this Order, including, without limitation, the exclusive jurisdiction of the Bankruptcy Court to enforce the Millennium Notes Plan Support Agreement or the 2015 Notes Plan Support Agreement, as the case may be, and any amendments and joinders thereto and the remedy of specific performance set forth in the Millennium Notes Plan Support Agreement or the 2015 Notes Plan Support Agreement, as the case may be, and (y) to the extent permitted by applicable law and as set forth in the applicable plan support agreement, such assignee or transferee shall pay the Debtors and any third party beneficiary with respect to the Millennium Notes Plan Support Agreement or the 2015 Notes Plan Support Agreement, as the case may be, any fees and expenses (including, without limitation, reasonable attorneys' fees) expended by such parties to specifically enforce the terms of the Millennium Notes Plan Support Agreement or the 2015 Notes Plan Support Agreement, as the case may be; and (iii) such selling signatory to a 2015 Notes Plan Support Agreement, Specified Millennium Noteholder, or Subsequent Transferee has provided electronic notice of such assignment or transfer (by providing a sellers' notice in the form attached as Exhibit C hereto), and the prospective transferee has provided electronic notice of such purchase (by providing an executed copy of such joinder), to the Debtors (Attn: Peter M. Friedman (*peter.friedman@cwt.com*) and George A. Davis (*george.davis@cwt.com*)) within the

earlier of (x) five business days after such assignment or transfer or (y) two business days after execution of the joinder; and it is further

ORDERED that to the extent of any inconsistency between this Order and the Revised Settlement incorporated herein by reference, on the one hand, and any plan of reorganization confirmed in these chapter 11 cases, on the other hand, the terms of this Order and the Revised Settlement, as applicable, shall govern; and it is further

ORDERED that this Order shall constitute findings of fact and conclusions of law and, notwithstanding the possible applicability of any provision of the Bankruptcy Rules, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that the provisions and effect of this Order, any actions taken pursuant to this Order or the Revised Settlement and the Parties' respective rights, obligations, remedies and protections provided for herein and in the Revised Settlement shall survive the conversion, dismissal or closing of these chapter 11 cases, appointment of a trustee herein, confirmation of a plan or plans of reorganization, or the substantive consolidation of these chapter 11 cases with any other case or cases, and the terms and provision of this Order and the Revised Settlement shall continue in full force and effect notwithstanding the entry of any such order; and it is further

ORDERED that the Revised Settlement and the Order constitute and evidence the valid and binding obligations of the Parties, which obligations shall be enforceable against each Party in accordance with the terms of the Revised Settlement and this Order; and it is further

ORDERED that this Court shall retain continuing jurisdiction with respect to all matters related to or arising from this Order and the Revised Settlement or their implementation.

Dated: New York, New York
      ***March 11, 2010***

                                            ***s/ Robert E. Gerber***
                                            ROBERT E. GERBER
                                            UNITED STATES BANKRUPTCY JUDGE