**Hearing Date: December 6, 2010, 9:45 am**

Richard I. Werder, Jr.
Susheel Kirpalani
Andrew J. Rossman
Rex Lee
Benjamin I. Finestone
K. McKenzie Anderson
Sarah Rubin

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

*Attorneys for BI S.à.r.l.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
|  |  |
|---|---|
| In re:  LYONDELL CHEMICAL COMPANY, et al., | Case No. 09-10023 (REG) |
| | Chapter 11 |
| Debtors. | |
| | (Jointly Administered) |

------------------------------------------------------------x

|  |  |
|---|---|
| EDWARD S. WEISFELNER, AS LITIGATION TRUSTEE OF THE LB LITIGATION TRUST | |
| Plaintiff | Adv. Pro. No. 09-01375 |
| v. | |
| LEONARD BLAVATNIK, et al., | |
| Defendants | |

------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF BI S.À.R.L.'S MOTION**
**TO DISMISS COUNTS XIV AND XIX OF THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................1

STATEMENT OF RELEVANT ALLEGATIONS AND FACTS...................................2

STANDARD OF REVIEW ..................................................................3

ARGUMENT..................................................................4

I.    THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER BIS. ...............5

    A.    BIS Is Not Subject To General Or Specific Jurisdiction In The United States. ..................................................................5

    B.    BIS Is Neither A "Mere Department" Of Nell And Nell's Shareholders Nor Is It The Alter Ego Of Len Blavatnik. ..............................................7

    C.    Counts XIV And XIX Should Be Dismissed With Prejudice...............................11

II.    COUNT XIX SHOULD ALSO BE DISMISSED BECAUSE THE BANKRUPTCY CODE'S AVOIDANCE POWERS DO NOT APPLY TO EXTRATERRITORIAL TRANSACTIONS....................................................12

CONCLUSION..................................................................16

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re Adelphia Commc'ns Corp.*,
359 B.R. 54 (Bankr. S.D.N.Y. 2006) ....................................................................4

*In re Am. Camshaft Specialties, Inc.*,
410 B.R. 765 (Bankr. E.D. Mich. 2009) ...............................................................6

*In re Astropower Liquidating Trust*,
335 B.R. 309 (Bankr. D. Del. 2005) .....................................................................5

*Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*,
975 F. Supp. 562 (S.D.N.Y. 1997)........................................................................4

*Benz v. Compania Naviera Hidalgo, S.A.*,
353 U.S. 138 (1957)............................................................................................13

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985).........................................................................................6, 7

*Certified Building Products, Inc. v. NLRB*,
528 F.2d 968 (9th Cir. 1975) ...............................................................................9

*In re Colonial Realty Co.*,
980 F.2d 125 (2d Cir. 1992).................................................................................15

*Delagi v. Volswagenwerk AG of Wolfsburg, Germany*,
29 N.Y.2d 426 (1972) ...........................................................................................8

*Equal Employment Opportunity Comm. v. Arabian American Oil Co.*,
499 U.S. 244 (1991)............................................................................................12

*Exter Shipping Ltd. v. Kilakos*,
310 F. Supp. 2d 1301 (N.D. Ga. 2004) ................................................................9

*In re Flores*,
426 B.R. 350 (Bankr. D. Kan. 2010) ...................................................................6

*In re Florsheim Group Inc.*,
336 B.R. 126 (Bankr. N.D. Ill. 2005) .................................................................14

*In re French*,
440 F.3d 145 (4th Cir. 2006) .............................................................................15

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984)..............................................................................................6

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945)..............................................................................................6

*Jacobs v. Felix Bloch Erben Verlag Fur Buhne Film Und Funk KG,*
   160 F. Supp. 2d 722 (S.D.N.Y. 2001) ................................................................8, 9

*Jazini v. Nissan Motor Co., Ltd.,*
   148 F.3d 181 (2d Cir. 1998) ...............................................................................4

*Keeton v. Hustler Magazine, Inc.,*
   465 U.S. 770 (1984) .............................................................................................5

*Kernan v. Kurz-Hastings, Inc.,*
   175 F.3d 236 (2d Cir. 1999) ...............................................................................4

*In re Levant Line, S.A.,*
   166 B.R. 221 (Bankr. S.D.N.Y. 1994) ...............................................................5

*Licci v. Am. Express Bank Ltd.,*
   704 F. Supp. 2d 403 (S.D.N.Y. 2010) ...............................................................11

*Marine Midland Bank, N.A. v. Miller,*
   664 F.2d 899 (2d Cir. 1981) ...............................................................................4

*In re Maxwell Commc'n Corp. plc,*
   170 B.R. 800 (Bankr. S.D.N.Y. 1994) ..........................................................14, 15

*In re Maxwell Commc'n Corp. plc,*
   186 B.R. 807 (S.D.N.Y. 1995) ....................................................................13, 14, 15

*In re Midland Euro Exchange Inc.,*
   347 B.R. 708 (Bankr. C.D. Cal. 2006) .........................................................14, 15

*Morrison v. Nat'l Austl. Bank Ltd.,*
   -- U.S. --, 130 S. Ct. 2869 (2010) ..................................................................12, 13

*In re PNP Holdings Corp.,*
   99 F.3d 910 (9th Cir. 1996) ................................................................................5

*Papasan v. Allain,*
   478 U.S. 265 (1986) .............................................................................................4

*RAE Systems, Inc. v. TSA Systems, Ltd.,*
   No. C 04-2030, 2005 WL 1513124 (N.D. Cal. June 24, 2005) ..........................9

*Sale v. Haitian Centers Council, Inc.,*
   509 U.S. 155 (1993) .............................................................................................13

*In re Teligent, Inc.,*
   Nos. 01-12974, 03-3577, 2004 WL 724945 (Bankr. S.D.N.Y. Mar. 30, 2004) ......6

*In re Uni-Marts, LLC,*
   404 B.R. 767 (Bankr. D. Del. 2009) ....................................................................5

*In re Vebeliunas,*
   332 F.3d 85 (2d Cir. 2003) ..................................................................................11

*Volkswagenwerk Altiengensellschaft v. Beech Aircraft Corp.*,
    751 F.2d 117 (2d Cir. 1984)...................................................................................................8

*Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*,
    933 F.2d 131 (2d Cir. 1991)..................................................................................................11

## **Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ..........................................................................................4

Federal Rule of Civil Procedure 12(b)(2) ................................................................................3, 11

Defendant BI S.à.r.l. ("BIS") respectfully submits this Memorandum of Law in support of its Motion pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) and Federal Rule of Bankruptcy Procedure 7012(b) to dismiss with prejudice Counts XIV and XIX of the Amended Complaint filed by plaintiff Edward S. Weisfelner (the "Trustee").

## PRELIMINARY STATEMENT

Counts XIV and XIX of the Amended Complaint should be dismissed for lack of personal jurisdiction. BIS is a Luxembourg company. It does not conduct business in the United States. It has no banking relationships here. It does not advertise here. And, of course, it has never sought the privileges and protections of the laws of the United States. It has been sued here only in connection with dividend payments that Basell AF S.C.A. ("Basell"), another Luxembourg company, made *before* Basell's merger with Lyondell Chemical Company ("Lyondell").

The Trustee does not dispute that BIS lacks the "minimum contacts" with the United States necessary to establish personal jurisdiction over it. He does not allege a single fact that, if proven true, could show BIS is subject to jurisdiction in the United States. Instead, he bases his claim for this Court's jurisdiction over BIS solely on the conclusory, and incorrect, allegation that BIS is the alter ego of defendants Nell Limited ("Nell") and Len Blavatnik. But, again, he does not allege a single fact that would justify a reverse piercing of the corporate veil so as to permit the exercise of personal jurisdiction over BIS. As a result, the Court need not conduct a rigorous jurisdictional analysis. Rather, the Trustee's failure to make any showing of personal jurisdiction over BIS alone warrants dismissal of Counts XIV and XIX.

Moreover, dismissal should be with prejudice. The Trustee has already had more than ample opportunity in which to make a *prima facie* showing of personal jurisdiction over BIS. Several months ago, the Trustee provided a copy of his then-draft amended complaint to counsel

for BIS.  Before the Trustee filed his Amended Complaint, counsel for BIS informed the Trustee

that BIS was a Luxembourg company and that it is not subject to personal jurisdiction in this

Court.  Counsel also asked the Trustee to provide an explanation of the grounds on which he

claimed that BIS could be properly hailed to the United States.  In response, the Trustee offered

no such explanation other than to assert, in conclusory fashion, that BIS was the alter ego of

other defendants in this case.  That the Trustee filed his Amended Complaint without alleging

any specific facts to support a finding of personal jurisdiction over BIS, despite knowing full

well that any claim against BIS was ripe for a jurisdictional challenge, shows that the Trustee has

absolutely no basis to sue BIS in the United States.  As a result, Counts XIV and XIX should be

dismissed with prejudice.

Even if there is some basis for personal jurisdiction over BIS, Count XIX should still be

dismissed because the avoidance provisions of the Bankruptcy Code do not apply to

extraterritorial transactions.  In his Amended Complaint, the Trustee alleges that Basell, a

Luxembourg company, made two dividend payments to BIS, also a Luxembourg company, in

2007, before Basell merged with Lyondell.  In Count XIX, he seeks to avoid these dividend

payments as fraudulent transfers pursuant to Section 548 of the Bankruptcy Code.  The Court's

avoidance powers under the Bankruptcy Code, however, cannot be applied to transfers that, as

alleged here, occurred extraterritorially between two foreign companies.  Dismissal of Count

XIX with prejudice is thus also appropriate under Federal Rule of Civil Procedure 12(b)(6).

### STATEMENT OF RELEVANT ALLEGATIONS AND FACTS

BIS is a Luxembourg company.  (Am. Compl. ¶ 33.)  At the time of the merger of

Lyondell and Basell, also a Luxembourg company, BIS owned substantially all of Basell's

capital stock.  (*Id.*)  In July 2007, Basell made a dividend payment in the amount of €75 million

(the "July Dividend").  (*Id.* ¶ 454.)  In December 2007, before the Merger closed, Basell made

another dividend payment in the amount of €100 million (the "December Dividend"). (*Id.*) The Trustee alleges, on information and belief, that BIS was the initial transferee of these two payments. (*Id.* ¶ 456.) In Count XIX, the Trustee seeks to avoid the July and December Dividends pursuant to Section 548 of the Bankruptcy Code. (*Id.* ¶ 459.) In Count XIV, the Trustee alleges that the July and December Dividends, as well as another dividend in May 2007 for €140 million (collectively with the July and December Dividends, the "Basell Dividends"), were unlawful under Luxembourg law.

The Trustee's Amended Complaint lacks any allegation that BIS conducted any business in or had any other contacts to the United States.

Though the Trustee alleges that other defendants in this case "control" BIS, he does not allege any specific facts to support that conclusory allegation. (Am. Compl. ¶¶ 33-34.) Rather, to support his claim of "control," he alleges only the following: (i) BIS was a wholly-owned subsidiary of Nell; (ii) defendant Peter Thorén was one of BIS's managers; (iii) Nell's major shareholders were defendant Access Industries Holdings LLC and non-defendant NAG Investments LLC, which were managed by non-defendant Access Industries Management, LLC, of which Thorén was also an officer; and (iv) Blavatnik, who was not an officer or manager of BIS, nonetheless operated BIS as his alter ego. (*Id.*)

In addition, contrary to the Trustee's claim that Blavatnik, Nell or any other defendant in this case controlled BIS, the Trustee admits in his Amended Complaint that the Basell Dividends were approved by Basell's shareholders—BIS and Basell AF GP S.à.r.l.—"each acting *through their managers*," and no one else, as they were required to do. (*Id.* ¶¶ 419-23 (emphasis added).)

## STANDARD OF REVIEW

On a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of showing that the court has jurisdiction over

the defendant." *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999) (internal quotations and citation omitted). In the absence of discovery or an evidentiary hearing, a plaintiff seeking to defeat a jurisdictional challenge must make at least a *prima facie* showing of jurisdiction over the defendant. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981). To do so, the plaintiff cannot rely solely on conclusory allegations but instead must plead specific facts that, if true, are sufficient to establish jurisdiction. *Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F. Supp. 562, 564 (S.D.N.Y. 1997). Allegations that merely restate the legal standard, as those here, are insufficient to constitute a *prima facie* showing. *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998).

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded allegations but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see also In re Adelphia Commc'ns Corp.*, 359 B.R. 54, 60 (Bankr. S.D.N.Y. 2006) (Gerber, J.) (same).

## ARGUMENT

Counts XIV and XIX should be dismissed with prejudice because the Trustee fails to make a *prima facie* showing that this Court has personal jurisdiction over BIS. He has not pleaded any specific facts to support: (i) that BIS conducts any activity in the United States or (ii) that BIS is the alter ego of Nell, Len Blavatnik or any other defendant. Moreover, even if this Court has personal jurisdiction over BIS, Count XIX should still be dismissed because Section 548 of the Bankruptcy Code cannot be applied to avoid a transaction that, as alleged here, occurred extraterritorially between two foreign companies.

## I.      THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER BIS.

### A.      BIS Is Not Subject To General Or Specific Jurisdiction In The United States.

The Trustee fails to allege facts showing a basis for this Court's exercise of personal jurisdiction over BIS.   Specifically, the Trustee has not demonstrated either that BIS has continuous and systematic presence in the United States to justify general jurisdiction over BIS, or that BIS has sufficient minimum contacts with the United States to warrant specific jurisdiction for a dispute relating to the Basell Dividends.[1]

As an initial matter, BIS has not consented to this Court's jurisdiction.  BIS did not file a proof of claim in the bankruptcy cases.  *See In re PNP Holdings Corp.*, 99 F.3d 910, 911 (9th Cir. 1996) (holding that, by filing proof of claim in debtor's chapter 11 bankruptcy case, Canadian corporation consented to bankruptcy court's jurisdiction).  Moreover, the chapter 11 bankruptcy filings of certain of BIS's subsidiaries cannot be attributed to BIS as consent to the jurisdiction of U.S. bankruptcy courts.  *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) (holding that in assessing jurisdiction over a subsidiary and jurisdiction over a parent, "[e]ach [company's] contacts with the forum State must be assessed individually"); *In re Am. Camshaft Specialties, Inc.*, 410 B.R. 765, 774 (Bankr. E.D. Mich. 2009) ("mere ownership

---

[1]    The Bankruptcy Rules provide for worldwide service of process, limited by the due process clause of the Fifth Amendment.  *See In re Uni-Marts, LLC*, 404 B.R. 767, 775 (Bankr. D. Del. 2009) (personal jurisdiction in bankruptcy court is governed by Rule 7004, which provides that exercise of jurisdiction must be consistent with the "Constitution and laws of the United States") (quoting Fed. R. Bankr. P. 7004(f)).

Here, the relevant question is whether BIS has the requisite minimum contacts with the United States, rather than New York.  *In re Levant Line, S.A.*, 166 B.R. 221, 233 (Bankr. S.D.N.Y. 1994) (instructing that where Fifth Amendment sets constitutional limitations on exercise of personal jurisdiction over defendant, defendant must have requisite minimum contacts with the United States rather than the forum state).  A jurisdictional analysis under New York law is thus not appropriate in this case.  *See Levant Line*, 166 B.R. at 233 (noting that amended Bankruptcy Rule 7004 renders an inquiry based on the New York jurisdictional statute obsolete); *In re Astropower Liquid. Trust*, 335 B.R. 309, 317 (Bankr. D. Del. 2005) (declining to consider Delaware long-arm statute in adversary proceeding brought by liquidating trust).

by a corporation of all of the stock of a subsidiary amenable to the jurisdiction of the courts of a state may not alone be sufficient to justify holding that the parent corporation is likewise amenable").

Because BIS has not consented to this Court's jurisdiction, the Trustee must demonstrate that there are sufficient contacts between BIS and the United States. Due process limits the power of a court to assert personal jurisdiction over a nonresident defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-24 (1984). A nonresident defendant may not be "subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)); *see also In re Flores,* 426 B.R. 350, 355 (Bankr. D. Kan. 2010) (dismissing claims where trustee presented no allegations or affidavits to establish that defendant had any meaningful contacts to the United States that would satisfy constitutional due process requirements).

Here, the Trustee does not even attempt to establish that BIS has the type of "continuous and systematic general business contacts" with the United States that would justify this Court's exercise of general jurisdiction over it. *See Helicopteros*, 466 U.S. at 415. This Court thus does not have general jurisdiction over BIS.[2]

Similarly, the Trustee does not allege any facts showing that BIS has the minimum contacts with the United States required to justify specific jurisdiction over it with respect to the Basell Dividends. To establish specific jurisdiction, a plaintiff must show that (1) the defendant

---

[2] Even if the Court were to apply New York's long-arm statute, the Trustee fails to allege facts supporting a finding that BIS would be subject to jurisdiction under New York's "doing business" test for general jurisdiction. *See In re Teligent, Inc.*, Nos. 01-12974 (SMB), 03-3577, 2004 WL 724945, at *6 n.14 (Bankr. S.D.N.Y. Mar. 30, 2004) (noting that the federal "continuous and systematic" contacts test is similar to New York's "doing business" test under CPLR 301).

purposefully directed its activities at the residents of the forum, and (2) the claim arose out of or is related to the defendant's contacts with the forum. *Burger King Corp*, 471 U.S. at 472.

The Trustee fails to plead any facts establishing either of the two requirements for specific jurisdiction. He fails to do so because he does not allege BIS directed any activity to the United States, much less any activity in respect to the Basell Dividends. Instead, he alleges merely that "the pre-Merger distributions to shareholders of Basell were initiated by [Len] Blavatnik after he began to implement his plan of acquiring Lyondell," and were approved by the managers of Basell AF GP S.à.r.l. and BIS (*see* Am. Compl. ¶ 423), and that "[Len] Blavatnik caused Basell to issue a shareholder dividend in the amount of €75 million" (*id.* ¶ 203). These allegations do not come close to *a prima facie* showing that BIS, a Luxembourg company, can be subjected to this Court's jurisdiction for a dispute relating to the Basell Dividends.[3]

### B.    BIS Is Neither A "Mere Department" Of Nell And Nell's Shareholders Nor Is It The Alter Ego Of Len Blavatnik.

Rather than plead facts sufficient to establish general jurisdiction or the requisite minimum contacts between BIS and the United States, the Trustee asserts that, "upon information and belief," BIS is a "mere department" of Nell and Nell's shareholders (*id.* ¶ 33),[4] and that Len Blavatnik operated BIS as his alter ego (*id.* ¶ 34).

---

[3]    The Trustee thus also fails to satisfy the requirements under New York's long-arm statute, which "parallel" those necessary for a finding of specific jurisdiction under federal law. *Teligent*, 2004 WL 724945, at *6 n.14.

[4]    The Trustee's allegation that BIS is a "mere department" of Nell and Nell's shareholders is simply a recitation of the legal standard under New York's jurisdictional law. For reasons previously discussed, a New York jurisdictional analysis is unnecessary here. In any event, as discussed more fully below, the Trustee has failed to allege actual facts showing that BIS is a "mere department" of Nell or Nell's shareholders such that BIS would be subject this Court's jurisdiction.

To prove that a subsidiary is a "mere department" of its parent, the plaintiff must show that the parent exercises complete control over the activities of the subsidiary. *Delagi v. Volkswagenwerk AG of Wolfsburg, Germany*, 29 N.Y.2d 426, 432 (1972); *see also Jacobs v. Felix Bloch Erben Verlag Fur Buhne Film Und Funk KG*, 160 F. Supp. 2d 722, 734 (S.D.N.Y. 2001) ("A corporate entity is considered to be a mere department of a parent company only where the control of the lesser entity is pervasive enough that the corporate separation is more formal than real.") (internal quotations omitted). Courts generally consider the following four factors in determining whether the parent exercises such complete control over its subsidiary: (1) common ownership; (2) the subsidiary's financial dependency on parent corporation; (3) the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities; and (4) the degree of control over the marketing and operational policies of the subsidiary exercised by the parent. *Volkswagenwerk Altiengensellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120-22 (2d Cir. 1984).

In support of his contention that, "upon information and belief," BIS is a "mere department" of Nell and Nell's shareholders, the Trustee alleges that (i) Len Blavatnik operated Nell, Access Industries and BIS as his alter egos and (ii) one of BIS's managers, Thorén, was also an officer of Access Industries Management LLC, the company that managed Access Industries and NAG Investments LLC, two major shareholders of Nell. (Am. Compl. ¶¶ 33-34.) The Trustee alleges no other facts whatsoever in support of his theory that BIS was merely a department of Nell and its shareholders. Specifically, the Trustee does not make any factual showing that BIS was undercapitalized or was financially dependent on Nell and its shareholders, that Nell and its shareholders interfered in any way with the management of BIS's

8

affairs, or that BIS otherwise failed to observe corporate formalities.  *See Jacobs*, 160 F. Supp. 2d at 736 (finding that subsidiaries were not operated as mere departments where plaintiffs offered little factual support for their allegation that there was a "chain of financial dependence" and submitted no credible evidence refuting the defendants' assertion that each of the corporations maintained its own books, records, and bank accounts, and functioned independently in its day-to-day operations).

Similarly, the Trustee fails to substantiate the allegation that Len Blavatnik operated BIS as his alter ego.  Under federal common law governing the exercise of personal jurisdiction, if a corporation is the alter ego of an individual defendant, or one corporation the alter ego of another, a court may "pierce the corporate veil" jurisdictionally to attribute "contacts" accordingly.  *RAE Systems, Inc. v. TSA Systems, Ltd.*, No. C 04-2030, 2005 WL 1513124, at *3 (N.D. Cal. June 24, 2005) (citing *Certified Building Products, Inc. v. NLRB*, 528 F.2d 968, 969 (9th Cir. 1975)).  Factors that courts often consider include:  (1) commingling of corporate and personal finances; (2) failure to hold director or shareholder meetings or maintain corporate records; (3) non-functioning of other officers or directors; and (4) whether failure to disregard the corporate fiction would be unjust or fundamentally unfair to an injured party.  *Exter Shipping Ltd. v. Kilakos*, 310 F. Supp. 2d 1301, 1317 (N.D. Ga. 2004).  Here, the Trustee does not assert a single fact to support a finding that any of these factors are present in this case.  Instead, the Trustee makes unsubstantiated references to Blavatnik's "control" of  certain "entities" (Am. Compl. ¶ 268), and the fact that "at all relevant times" Blavatnik "operated" BIS as his alter ego (*id.* ¶ 34).  The Trustee's more specific allegation that "[Len] Blavatnik caused Basell to issue a shareholder dividend in the amount of €75 million" also falls well short of showing that BIS is Blavatnik's alter ego.  (*Id.* ¶ 203.)  Entirely absent from the Amended Complaint are any

allegations that Len Blavatnik commingled his personal finances with those of BIS, that BIS failed to observe corporate formalities, or that BIS's managers did not manage the affairs of the company.

Indeed, contrary to the Trustee's claim that Blavatnik or Nell controlled BIS, the Trustee admits that with respect to the Basell Dividends—the subject of his claim against BIS—BIS operated on its own accord and without any undue influence from Blavatnik, Nell or any other defendant in this case. In his Amended Complaint, the Trustee alleges that each of the Basell Dividends was "proposed" by Basell AF GP S.à.r.l. and "approved" by Basell's shareholders— BIS and Basell AF GP S.à.r.l.—"each acting *through their managers*," and no one else. (Am. Compl. ¶¶ 419-23 (emphasis added).) It is telling that this is the only specific factual allegation the Trustee makes in respect to BIS's operations.

Even if the Trustee's claim that BIS is an alter ego of Len Blavatnik is analyzed under New York law, which for reasons discussed earlier is unwarranted, the outcome would be the same. The Trustee fails to provide sufficient support for the alter ego allegation. Under New York law, factors indicating that a corporation is a mere alter ego of an individual or of another corporation include:

> [T]he absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*In re Vebeliunas*, 332 F.3d 85, 91 (2d Cir. 2003) (quoting *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 139 (2d Cir. 1991)).  Here, the only factor pleaded by the Trustee is that Thorén was a manager of BIS while "also an officer of Access Industries Management LLC, the company that managed two major shareholders of Nell Limited (Access Industries and NAG Investments LLC)" (Am. Compl. ¶ 33) and that Alex Blavatnik was, "upon information and belief" a vice president of Access Industries (*id.* ¶ 29).

Based on the foregoing, Count XIX should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

### C.    Counts XIV And XIX Should Be Dismissed With Prejudice.

Where, as here, the plaintiff fails to make a *prima facie* showing that the defendant is subject to personal jurisdiction, the court may dismiss the plaintiff's claim with prejudice and without leave to take jurisdictional discovery.  *See*, *e.g.*, *Licci v. Am. Express Bank Ltd.*, 704 F. Supp. 2d 403, 408 (S.D.N.Y. 2010) (denying jurisdictional discovery and dismissing claim for lack of personal jurisdiction).

Here, the Trustee's failure to allege a *prima facie* case for jurisdiction is no mere pleading deficiency.  In July 2010, the Trustee provided a copy of his draft amended complaint to counsel for BIS.  On July 7, 2010, counsel for BIS informed the Trustee that BIS is a Luxembourg company and is not subject to personal jurisdiction in the United States, thereby providing the Trustee with BIS's grounds for the present motion.  (*See* Declaration of Richard I. Werder, Jr. ("Werder Decl.") Ex. 1 at 1 (July 7, 2010 Letter from R. Werder to S. Wissner-Gross).)  Counsel for BIS also requested that the Trustee provide an explanation of the grounds on which he intended to assert that this Court had jurisdiction over BIS.  (*Id.*)  On July 9, 2010, the Trustee responded but offered no such explanation.  Instead, he merely asserted without support, that BIS

is within the "control" of other defendants in this case.  (*See* Werder Decl., Ex. 3 at 1 (July 9, 2010 Letter from S. Wissner-Gross to R. Werder).)

At the July 14, 2010 status conference, the Trustee assured the Court that he had no intention of filing "serial amendments."  (*See* Werder Decl., Ex. 4 at 15:25-16:3 (July 14, 2010 Transcript) ("And if we agree with Mr. Werder, Your Honor, we'll drop the claim . . . it's not our goal to have serial amendments.").)  Thus, the Trustee's failure to allege any specific basis for jurisdiction over BIS—despite knowing well in advance of filing his amended complaint that BIS intended to challenge any claim against it on jurisdictional grounds—makes clear that the Trustee cannot make a *prima facie* showing of this Court's jurisdiction over BIS.  Accordingly, Counts XIV and XIX should be dismissed with prejudice.

## II.    COUNT XIX SHOULD ALSO BE DISMISSED BECAUSE THE BANKRUPTCY CODE'S AVOIDANCE POWERS DO NOT APPLY TO EXTRATERRITORIAL TRANSACTIONS.

The application of the Bankruptcy Code's avoidance provisions to the Basell Dividends would be an improper extraterritorial application of United States law, and therefore is not permitted in connection with Count XIX of the amended complaint.   Indeed, there is a "longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Morrison v. Nat'l Austl. Bank Ltd.*, -- U.S. --, 130 S. Ct. 2869, 2877 (2010) (internal quotations omitted). Therefore, "unless there is the affirmative intention of the Congress clearly expressed" to give a statute extraterritorial effect, "we must presume it is primarily concerned with domestic conditions."  *Id.* (quoting *Equal Employment Opportunity Comm. v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991) ("*Aramco*")).  This presumption applies regardless of whether there is a risk of conflict between the U.S. statute and foreign law.  *See Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 173-74 (1993).

In determining whether a statute applies extraterritorially, courts perform a two-part inquiry. *See In re Maxwell Commc'n Corp. plc*, 186 B.R. 807, 816 (S.D.N.Y. 1995) (*Maxwell II*). First, the court must determine whether the conduct at issue "occurred outside the borders of the U.S." *Id.* If the conduct at issue was in fact extraterritorial, the court must consider whether Congress intended the federal statute to apply extraterritorially. *Id.* According to a recent Supreme Court decision, "[w]here a statute gives no clear indication of an extraterritorial application, it has none." *Morrison*, 130 S. Ct. at 2878; *see also Aramco*, 499 U.S. at 248 (quoting *Benz v. Compania Naviera Hidalgo, S.A.*, 353 U.S. 138, 147 (1957)) (unless "the affirmative intention of the Congress" to apply the law extraterritorially is "clearly expressed," a federal law will only apply domestically).

The United States Supreme Court's recent decision in *Morrison* is instructive as to the weight of the presumption against the extraterritorial application of federal statutes. In that case, the Supreme Court considered the extraterritorial application of section 10(b) of the Securities Exchange Act, and held that inclusion of the term "interstate commerce," which includes "commerce between a foreign country and any State", in section 10(b) was not enough to defeat the presumption against extraterritoriality. 130 S. Ct. at 2882. Moreover, Congress' "fleeting references" in its description of the Securities Exchange Act's purpose to the dissemination and quotation abroad of prices of securities traded in domestic exchanges also did not overcome the presumption against the extraterritorial application of the Act. *Id.* Since there is no *affirmative* indication in the Securities Exchange Act that section 10(b) applies extraterritorially, the Supreme Court concluded that it does not. *Id.*

The Trustee has pleaded that the Basell Dividends were made by Basell to BIS, both Luxembourg entities. (Am. Compl. ¶¶ 453-59.) He does not allege any facts showing that the

center of gravity of the transactions was anywhere but Luxembourg.  In analyzing avoidable transfers with an international component, courts apply a "center of gravity" test, under which they "look to the facts of the case to determine whether they have a center of gravity outside the United States."  *In re Florsheim Group Inc.*, 336 B.R. 126, 130 (Bankr. N.D. Ill. 2005) (quoting *In re Maxwell Commc'n Corp. plc*, 170 B.R. 800, 809 (Bankr. S.D.N.Y. 1994) ("*Maxwell I*")). Although "all component[s]" of a transfer will be considered, the fact that the transferor and transferee are non-U.S. entities is an important factor.  *Maxwell II*, 186 at 816; *In re Midland Euro Exchange Inc.*, 347 B.R. 708 (Bankr. C.D. Cal. 2006) (holding that the center of gravity of an allegedly fraudulent transfer made by a Barbados company to a company in England was outside of the United States where both the transferor and the transferee were non-U.S. companies).  Here, the Trustee alleges that Basell, a Luxembourg entity, made shareholder distributions to BIS, also a Luxembourg entity, thereby making a determination that the center of gravity of these transfers was anywhere but Luxembourg unsubstantiated.  (Am. Compl. ¶¶ 453-59; *see also Maxwell II*, 186 B.R. 816-18 (holding that the center of gravity was outside of the United States where the parties to the transfers were non-U.S. entities, notwithstanding that they were initiated in the U.S. following the sale of U.S. assets).)

Upon determination that a transfer is extraterritorial, as here, a court must then consider whether Congress intended the federal statute to apply extraterritorially.  Here, the Trustee is seeking to avoid the Basell Dividends pursuant to Section 548 of the Bankruptcy Code.  (Am. Compl. ¶¶ 453-59.)  Courts in the Second Circuit have held that Congress did not intend avoidance powers to apply extraterritorially.  As the Bankruptcy Court for the Southern District of New York has explained with respect to preferential transfers, there is no clear expression of Congressional intent that Section 547 applies extraterritorially, and, as such, the avoidance

14

powers cannot operate on an extraterritorial transfer. *Maxwell I*, 170 B.R at 811. Moreover, the *Maxwell I* court rejected that Congress implied that the avoidance powers have any extraterritorial reach by virtue of Section 541 because, under Second Circuit precedent, property recovered from an avoided preferential transfer does "not become property of the estate until recovered." *Id*; *In re Colonial Realty Co.*, 980 F.2d 125, 131 (2d Cir. 1992). Section 541 therefore "does not indicate that Congress intended § 547 to govern extraterritorial transfers." *Maxwell II*, 186 B.R. at 820.[5]

That the Trustee challenges the Basell Dividends as fraudulent transfers under Section 548 of the Bankruptcy Code rather than as a preferential transfer under Section 547 does not warrant a different outcome. *See Midland Euro Exchange Inc.*, 347 B.R. 708, 717-18 (Bankr. C.D. Cal. 2006) (citing the bankruptcy court's decision in *Maxwell I* and holding that Section 548 does not apply extraterritorially). First and foremost, Section 548 does not give a clear indication of its extraterritorial application. *Id.* at 718. As the *Maxwell I* court explained with respect to preferential transfers, the Bankruptcy Code's broad definition of transfer "makes no reference whatsoever to the place where the transfer occurred or the place where the property is now found." *Maxwell I*, 170 B.R. at 811. Moreover, Section 548 itself contains no indication that it is intended to apply extraterritorially. *See id.* (noting that nothing in Section 547 itself

---

[5]    The Fourth Circuit has held that Congress intended the Bankruptcy Code avoidance provisions to apply extraterritorially by virtue of Section 541 of the Bankruptcy Code. *In re French*, 440 F.3d 145 (4th Cir. 2006). The court reasoned that Section 541 of the Bankruptcy Code applies extraterritorially to ensure that all property of the debtor, including property located outside of the United States, is property of the estate. Accordingly, the court reasoned that "property of the estate" must include all property that "would have been property of the estate" but for the transfer. *Id.* at 151-52. The Fourth Circuit's reasoning is expressly at odds with controlling Second Circuit authority regarding the scope of Section 541. *See In re Colonial Realty Co.*, 980 F.2d at 131 (holding property recoverable as an avoidable transfer is not property of the estate until recovered).

indicates that it was meant to apply extraterritorially).  As such, it is improper to apply Section 548 to extraterritorial transfers.

## CONCLUSION

For the foregoing reasons, BIS respectfully requests that the Court dismiss Counts XIV and XIX of the Trustee's Amended Complaint with prejudice.

Dated: New York, New York
          September 24, 2010

**QUINN EMANUEL URQUHART
& SULLIVAN LLP**

By: /s/ Richard I. Werder, Jr.

Richard I. Werder, Jr.
Susheel Kirpalani
Andrew J. Rossman
Rex Lee
Benjamin I. Finestone
K. McKenzie Anderson
Sarah L. Rubin

51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

rickwerder@quinnemanuel.com
susheelkirpalani@quinnemanuel.com
andrewrossman@quinnemanuel.com
rexlee@quinnemanuel.com
benjaminfinestone@quinnemanuel.com
mckenzieanderson@quinnemanuel.com
sarahrubin@quinnemanuel.com

*Attorneys for B.I. S.à.r.l.*