John O. Farley                                    *Return Date:* _____, *2016*
Michael T. Jones (*pro hac vice*)                         _____ *A.M./P.M.*
Jordan D. Weiss
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY
Tel:  212.459.7318
Fax:  212.355.3333

*Counsel for Diane Currier*
*(Executor of the Estate of Richard Floor)*

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LYONDELL CHEMICAL | ) | Case No.:    09-10023 (REG) |
| COMPANY, et al., | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |
| | ) | |
| EDWARD S. WEISFELNER, AS | ) | |
| LITIGATION TRUSTEE OF THE LB | ) | Adv. Proceeding No.: 09-1375 (REG) |
| LITIGATION TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORAL ARGUMENT** |
| v. | ) | **REQUESTED** |
| | ) | |
| LEONARD BLAVATNIK, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**NOTICE OF APPEAL**

By and through the undersigned counsel, Goodwin Procter LLP—counsel to Diane

Currier (Executor of the Estate of Richard Floor)—hereby appeals to the United States District

Court for the Southern District of New York, pursuant to 28 U.S.C. § 158(a) and Rules 8002 and

8004 of the Federal Rules of Bankruptcy Procedure, from the *Decision and Order on Trustee's Motion to Amend the Caption, and Motion of Diane Currier, As Executor of the Estate of Richard Floor (Deceased), to Dismiss*, dated January 4, 2016 (ECF No. 699) (the "**Order**").

A copy of the Order is annexed hereto as **Exhibit A**.

The parties to the Order appealed from, and the names, addresses, and telephone numbers of their respective attorneys are as follows:

| Party | Attorneys |
|---|---|
| Diane Currier<br>(Executor of the Estate of Richard Floor) | **GOODWIN PROCTER LLP**<br>John O. Farley<br>Michael T. Jones (*pro hac vice*)<br>Jordan D. Weiss<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY<br>Tel: 212.459.7318<br>Fax: 212.355.3333 |
| Plaintiff Edward S. Weisfelner, Litigation Trustee of the LB Litigation Trust | **BROWN RUDNICK, LLP**<br>Sigmund S. Wissner-Gross<br>Seven Times Square<br>New York, NY 10036<br>T: 212.209.4800 |

Dated: January 19, 2016
New York, New York

Respectfully submitted,

**GOODWIN PROCTER LLP**

By: /s/ John O. Farley
John O. Farley
Michael T. Jones (*pro hac vice*)
Jordan D. Weiss
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY
Tel: 212.459.7318
Fax: 212.355.3333
Email: jfarley@goodwinprocter.com
mjones@goodwinprocter.com
jweiss@goodwinprocter.com

*Counsel for Diane Currier (Executor of the Estate of Richard Floor)*

## CERTIFICATE OF SERVICE

I, John O. Farley, hereby certify that on January 19, 2016, a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class mail postage prepaid on all counsel who are not served through the CM/ECF system.

*/s/ John O. Farley*
John O. Farley

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) Chapter 11 Cases |
| | ) |
| | ) No. 09-10023 (REG) |
| LYONDELL CHEMICAL COMPANY, *et. al.*, | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |
| EDWARD S. WEISFELNER, AS LITIGATION TRUSTEE | ) |
| OF THE LB LITIGATION TRUST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adversary Proceeding |
| | ) |
| LEONARD BLAVATNIK, *et al.*, | ) No. 09-01375 (REG) |
| | ) |
| Defendants. | ) |
| | ) |

DECISION AND ORDER ON TRUSTEE'S MOTION TO
AMEND THE CAPTION, AND MOTION OF DIANE
CURRIER, AS EXECUTOR OF THE ESTATE OF
RICHARD FLOOR (DECEASED), TO DISMISS

APPEARANCES:
BROWN RUDNICK, LLP
*Counsel for Edward S. Weisfelner, Litigation Trustee of the LB Litigation Trust*
Seven Times Square
New York, New York 10036
By:     Sigmund S. Wissner-Gross, Esq.
         May Orenstein, Esq. (argued)
One Financial Center
Boston, Massachusetts 02111
By:     Steven D. Pohl, Esq.

GOODWIN PROCTER, LLP
*Attorneys for Defendant Diane Currier, Executor of the Estate of Richard Floor*
Exchange Place
53 State Street
Boston, Massachusetts 02109
By:     James S. Dittmar, Esq. (argued)
         John O. Farley, Esq.
         Michael T. Jones, Esq. (argued)

ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

In late December 2007, Basell AF S.C.A. ("**Basell**"), a Luxembourg entity controlled by Leonard Blavatnik ("**Blavatnik**"), acquired Lyondell Chemical Company ("**Lyondell**"), a Delaware corporation headquartered in Houston—forming a new company after a merger (the "**Merger**"), LyondellBasell Industries AF S.C.A. (as used by the parties, "**LBI**," or here, the "**Resulting Company**"),[1] Lyondell's parent—by means of a leveraged buyout ("**LBO**"). The LBO was 100% financed by debt, which, as is typical in LBOs, was secured not by the acquiring company's assets, but rather by the assets of the company to be acquired. Lyondell took on approximately $21 billion of secured indebtedness in the LBO, of which $12.5 billion was paid out to Lyondell stockholders.

In the first week of January 2009, less than 13 months later, a financially strapped Lyondell filed a petition for chapter 11 relief in this Court.[2] Lyondell's unsecured creditors then found themselves behind that $21 billion in secured debt, with Lyondell's assets effectively having been depleted by payments of $12.5 billion in loan proceeds to stockholders. Lyondell's assets were allegedly also depleted by payments incident to the LBO and the Merger—of approximately $575 million in transaction fees and expenses, and another $337 million in payments to Lyondell officers and employees in change of control payments and other management benefits.

---

[1]    Acronyms make understanding difficult for readers who have not been living with a case. The Court tries to minimize their use. For readability, except where acronyms appear in quotations or have acquired obvious meaning, the Court expands the acronyms out, or substitutes terms that are more descriptive of the entity's role in the transaction.

[2]    Lyondell then filed along with 78 affiliates. About three months later, the Resulting Company and another Lyondell affiliate joined them as Debtors in this Court.

Those events led to the filing of what are now five adversary proceedings—three against shareholder recipients of that $12.5 billion, one dealing with unrelated issues,[3] and one other—this action, which was originally the first of the five—against Blavatnik and companies he controlled; Lyondell's officers and directors; and certain others.

In his Amended Complaint (the "**Complaint**") in this adversary proceeding (brought, like the others, under the umbrella of the jointly administered chapter 11 cases of Lyondell, the Resulting Company and their affiliates (the "**Debtors**")), Edward S. Weisfelner (the "**Trustee**"), the trustee of the LB Litigation Trust (one of two trusts formed to prosecute the Debtors' claims), asserts a total of 21 claims against the defendants in this action. The 21 claims variously charge breaches of fiduciary duty; the aiding and abetting of those alleged breaches; intentional and constructive fraudulent conveyances, unlawful dividends, and a host of additional bases for recovery under state law, the Bankruptcy Code, and the laws of Luxembourg, under which several of the Basell entities were organized.[4] The Complaint also seeks to equitably subordinate defendants' claims that might otherwise be allowed.

The Trustee's complaint, in turn, engendered a large number of motions to dismiss. This is one of several opinions ruling on those motions.[5]

Here the Court considers the motion of Diane Currier ("**Currier**"), as Executor of the Estate of Richard Floor, to dismiss the claims asserted against the estate for whom she acts pursuant to Fed. R. Civ. P. 12(b) (2), 12(b) (6), and 25(a). The Trustee opposes

---

[3]    *See Weisfelner v. NAG Investments, LLC*, Adv. Proc. 11-01844.

[4]    A table listing all of the claims and the particular defendants against whom they were asserted appears in Appendix A. The Complaint numbers each claim using a Roman number. To make them easier to read, the Court has referred to the claims using Arabic ones.

[5]    To avoid a decision of unwieldy length, the Court's rulings on the other motions appear in separate decisions.

Currier's motion to dismiss and moves, by separate motion, to amend the caption pursuant to Fed. R. Civ. P. 25(a), or in the alternative to extend the time for substitution pursuant to Fed. R. Civ. P. 6(b)\(2).

The Court determines that the Trustee's motion to amend the caption was filed about 23 weeks late. But the Court further determines that the reasons underlying that— delays by Floor's probate court in docketing Currier's appointment; inaccurate information provided to the Trustee by the probate court; and the withholding of information as to Currier's appointment by counsel for Currier and Floor—provide more than sufficient basis for finding excusable neglect. The Trustee's motion to extend the time to amend the caption is granted, as is the Trustee's motion to amend the caption itself. Currier's motion to dismiss, to the extent based on failure by the Trustee to comply with Civil Rule 25(a), is denied.

The Court's Findings of Fact, Conclusions of Law, and bases for the exercise of its discretion on these motions follow.

<u>Facts</u>

The relevant facts, insofar as they relate to these motions, are undisputed. The original complaint in this adversary proceeding, dated July 22, 2009, named Floor as a defendant. Before the Merger, Floor was a representative of Basell AF GP S.à.r.l. (a parent of Basell), and became a representative of LBI LyondellBasell Industries AF GP S.à.r.l. (a parent of the Resulting Company) and a member of the supervisory board of the Resulting Company after the Merger.

Floor "died on or about February 18, 2010."[6]  On March 8, 2010, about three weeks later, the law firm representing Floor and Currier ("**Floor-Currier Counsel**") served and filed a Suggestion of Death notifying the parties of Floor's death.  By order dated April 9, 2010 (but as noted below, not docketed until July 23, 2010), of a Massachusetts probate court (the "**Probate Court**"), Currier was appointed Executor of Floor's Estate.[7]  Floor-Currier Counsel acknowledges that it learned that an executor had been appointed sometime before June 7, 2010[8]—a date of significance for reasons appearing below.[9]

On or about June 10, 2010—a date after Floor-Currier Counsel knew that an executor had been appointed (but the Trustee's counsel did not)—a paralegal (the "**Paralegal**") from the law firm representing the Trustee was asked to determine if an executor for Floor's estate had been appointed.[10]  The Paralegal contacted the Probate Court by phone "at least on July 1, 2010 and July 22," 2010 and *was informed that Currier had not yet been appointed*.[11]

---

[6]       *See* Suggestion of Death, filed Mar. 8, 2010 [Dkt. 367].

[7]       Declaration of Diane Currier, dated Dec. 7, 2010 ("**Currier Decl.**"), Exh. I. [Dkt. 462].

[8]       *See* 3/10/11 Hr'g Tr. at 237 [Dkt. 520].

[9]       *See* Discussion section, *infra*.

          The Trustee states that the Suggestion of Death was filed during a period when the prosecution of this action, for all practical purposes, was in abeyance, and when the focus of all parties, including the Debtors' Official Committee of Unsecured Creditors (the "**Creditors' Committee**"), was directed toward the confirmation and implementation of the Debtors' chapter 11 plan.  In addition, the Trustee points out that it was understood that the Creditors' Committee's standing to pursue the claims asserted in this adversary proceeding would be terminated, and that any claims would then be prosecuted by the Creditors' Committee's successor, a trustee, who had not yet been appointed at that time.  By reason of its knowledge of the proceedings on its watch, the Court knows all of these statements to be true.  But ultimately the Court does not rely on them, as there are several other factors causing the Trustee's late motion to be excusable.

[10]      Declaration of Nancy Tinsley, dated Nov. 11, 2010 ("**Tinsley Decl.**"), ¶ 3 [Dkt. 448-2].

[11]      *Id.* ¶ 5.

-4-

On July 2, 2010 (a date by which Floor-Currier Counsel knew that an executor had been appointed, but the Trustee's counsel did not), the Trustee circulated a draft amended complaint to counsel for defendants, including Floor-Currier Counsel, which draft replaced "Floor" with "The Legal Representative of the Estate of Richard Floor (deceased)."[12]  Further drafts of the amended complaint, sent to the parties on July 9 and July 22, referenced Currier by name, but not as a defendant in the caption.[13]  On each of those July 9 and 22 dates, Floor-Currier Counsel, once again, knew that an executor had been appointed, but the Trustee's counsel did not.

Beginning on July 9 and throughout July 2010, drafts of an amended case management order were circulated among the parties listing "the Estate of Richard Floor" as a member of the "Basell D&O Defendant Group."[14]  On July 21, 2010, a law firm acting as liaison for the defendants told the Trustee by e-mail that all defendants listed in the amended case management order had agreed to its terms.[15]

On July 23, 2010, the Trustee filed the amended Complaint.  Instead of naming as defendants Floor (who was known to be deceased) or Currier (who the Paralegal had been told, on July 1 and again on July 22, had not yet been appointed), the amended Complaint named as a defendant "The Legal Representative of the Estate of Richard

---

[12]      The original complaint was filed prior to Floor's death.

[13]      A footnote in the later drafts (and the version ultimately filed) stated: "Upon information and belief, although not yet formally appointed, Dianne [*sic*] Currier will be named as the Executrix of the Estate of Richard Floor.  It is the intention of the LB Litigation Trust to name as defendant the person who shall be appointed the legal representative of the Estate of Richard Floor."  Cmplt. ¶ 55, n.2; *see also* Declaration of Sigmund Wissner-Gross, dated Nov. 11, 2010 ("**Wissner-Gross Decl.**"), Exhs. C, ¶ 51 &. L, ¶ 55, n.2 [Dkt. 448-3].

[14]      *See* Wissner-Gross Decl., Exhs. E-G, I-K. The Basell D&O Defendant Group is defined in the Case Management Order as referring to Simon Baker, Lynn Coleman, Bertrand Duc, John Fisher Gray, Dawn Shand, and the Estate of Richard Floor.

[15]      *Id*., Exhs. J, K.

Floor (deceased)."[16]  On August 2, 2010, the Paralegal learned from a colleague that

Currier had been appointed executor for Floor's estate back on April 9, 2010, but that it

"had not been docketed in the system until July 23, 2010."[17]

Obviously, what the Paralegal had been told by the Probate Court on July 1 and

July 22 was incorrect, misleading, or both.

On September 24, 2010, Floor-Currier Counsel moved to dismiss the Amended

Complaint pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(6), and 25(a).  On October 26,

2010, Floor-Courier Counsel consented to a stipulation to further amend the case

management order.[18]  On November 16, 2010, the Trustee filed a motion to substitute the

executor Currier pursuant to Fed. R. Civ. P. 25(a), or in the alternative, to extend the time

for substitution under Fed. R. Civ. P. 6(b)(2).

<u>Discussion</u>

<u>I.</u>

<u>The Applicable Rules and Caselaw</u>

*A.  Civil Rule 25*

Fed. R. Civ. P. 25, applicable in this adversary proceeding by Fed. R. Bankr. P.

7025, provides, in relevant part:

> [i]f a party dies and the claim is not extinguished,
> the court may order substitution of the proper party.
> A motion for substitution may be made by any party
> or by the decedent's successor or representative.  If
> the motion is not made within 90 days after service

---

[16]     *Id.*, Exh. L.

[17]     Tinsley Decl., ¶ 7.

[18]     Wissner-Gross Decl., Exh. M.

of a statement noting the death, the action by or
against the decedent must be dismissed.[19]

But dismissal is not mandatory, despite the Rule's use of the word "shall," where the motion is made after the prescribed period.[20] "[T]he history of Rule 25 makes clear that the 90–day period was not intended to act as a bar to otherwise meritorious actions."[21] And where there is a showing that failure to act within the 90–day period was the result of excusable neglect, the court has discretion to enlarge the substitution period.[22]

As the Court's quotation of Fed. R. Civ. P. 25 makes clear, Civil Rule 25 is silent on what happens when—

- the plaintiff doesn't know who to name (or names the defendant's successor as best he or she can) within the time period prescribed by the Rule, and compliance with the Rule—at least in the technical sense upon which Currier relies here—is impossible;

- the plaintiff's counsel is given incorrect information by a probate court; or

---

[19]     Fed. R. Civ. P. 25(a)(1).

[20]     *Billino v. Citibank, N.A.*, 1996 U.S. Dist. LEXIS 23222, at *3; 1996 WL 1088925, at *1 (E.D.N.Y. Sept. 10, 1996) (Gleeson, J.) ("***Billino***") (citing C. Wright, A. Miller, M. Kane, *Federal Practice and Procedure* § 1955 (1986)) (quotation marks omitted).

[21]     *Billino,* 1996 U.S. Dist. LEXIS 23222, at *4**;** 1996 WL 1088925, at *2 (citations omitted); *Smith v. Thebaud*, 258 F.R.D. 207, 210 (E.D.N.Y. 2009) (Bloom, M.J.) ("***Thebaud***"). *See also Staggers v. Otto Gerdau Co.,* 359 F.2d 292, 296 (2d Cir.1966) ("***Staggers***") ("the history of the 1963 amendment to Rule 25 makes clear that the 90 day period was not intended to act as a bar to otherwise meritorious actions.").

[22]     *Billino,* 1996 U.S. Dist. LEXIS 23222, at *3; 1996 WL 1088925, at *1; *Thebaud,* 248 F.R.D. at 209.

- the defendant's counsel knows the true facts (and knows of the plaintiff's intention to proceed against the original defendant's estate), and elects not to tell the plaintiff's counsel.[23]

But these matters can be considered incident to a consideration of excusable neglect, discussed above and below.[24] "Excusable neglect is intended and has proven to be quite elastic in its application. In essence it is an equitable concept that must take account of all relevant circumstances of the party's failure to act within the required time."[25] Excusable neglect doctrine works with Rule 25(a)(1) to provide the intended flexibility in enlarging the time for substitution.[26]

### B. Bankruptcy Rule 9006

Fed. R. Bankr. P. 9006—applicable in bankruptcy cases (and hence adversary proceedings)—applies "in computing any time period specified in these rules, in the Federal Rules of Civil Procedure, in any local rule or court order or any statute that does not specify a method of computing time." Thus, like Civil Rule 6(b), which does likewise in ordinary plenary litigation,[27] Bankruptcy Rule 9006 covers the time period

---

[23]    Whether "elects not to tell" amounts to "conceals from" depends on the extent to which the defendant's counsel has a duty to make that information known. The Court does not need to decide that, as, either way, the Court concludes that the incorrect information provided by the Probate Court and the imbalance of information and resulting unfairness make the Trustee's delay excusable under Bankruptcy Rule 9006, Civil Rule 6(b), and *Pioneer* (n.28, *infra*).

[24]    *See Thebaud*, 258 F.R.D. at 209-210 (considering similar practical problems as part of an excusable neglect analysis under Civil Rule 6(b)).

[25]    *See id.* at 209 (quoting 4B Wright & Miller, *Federal Practice and Procedure: Civil 3d* § 1165 at 533–34 (3d ed. 2002)).

[26]    *Id.*

[27]    *See Billino,* 1996 U.S. Dist. LEXIS 23222, at *3; 1996 WL 1088925, at *1; *Thebaud*, 248 F.R.D. at 209.

-8-

specified in Civil Rule 25.[28]  Bankruptcy Rule 9006(b)(1), captioned "Enlargement,"

provides in relevant part, with exceptions not relevant here:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion
>
> > (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or
> >
> > (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.[29]

The Trustee did not request an enlargement of time to move to substitute Currier

before the 90-day period under Civil Rule 25(a) expired.  Thus the Court must determine

the motions under the second clause of Civil Rule 9006(b)(1)—on motion and upon a

showing that "the failure to act was the result of excusable neglect."

---

[28]    *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 389, n.4 (1993) ("***Pioneer***") ("The time-computation and time-extension provisions of Rule 9006 . . . are generally applicable to any time requirement found elsewhere in the rules unless expressly excepted."). Bankruptcy Rule 7025, which makes Fed. R. Civ. P. 25 applicable in adversary proceedings, is not expressly excepted from Rule 9006.  *See also* Advisory Committee's Notes on Fed. R. Bankr. P. 9006 (noting that subdivision (b) is patterned after Fed. R. Civ. P. 6(b) and Fed. R. App. P. 26(b).).

[29]    Bankruptcy Rule 9006(b) (reformatted for readability).  Civil Rule 6(b), titled "Extending Time" contains virtually identical language:  "When an act may or must be done within a specified time, the court may, for good cause, extend the time: (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or (B) on motion made after the time has expired if the party failed to act because of excusable neglect."

-9-

The burden of proof regarding excusable neglect rests with the party seeking to enlarge time.[30]

## C.  The Pioneer Factors

*Pioneer* is the seminal case interpreting Bankruptcy Rule 9006(b)(1) and addressing the meaning of excusable neglect.[31]  There, a creditor had failed to timely file a proof of claim.  Notice of the bar date had taken the unusual form of a "Notice for Meeting of Creditors."  Twenty days after the bar date had passed, the creditor filed his proof of claim, and with it a motion to permit the late filing based on excusable neglect— arguing that he should be permitted to file a late proof of claim because his attorney had suffered a major disruption in his professional life.

The *Pioneer* Court explained that neglect could be the result of "inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control."  To determine whether neglect is excusable, the *Pioneer* Court held, courts should evaluate "all relevant circumstances surrounding the party's omission" including "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."[32]

---

[30]     *In re Dana Corp.*, 2007 WL 1577763, *3, 2007 Bankr. LEXIS 1934, *10 (Bankr. S.D.N.Y. May 30, 2007) (Lifland, C.J.) ("*Dana*"); *In re R.H. Macy & Co., Inc.*, 161 B.R. 355, 360 (Bankr. S.D.N.Y. 1993) (Lifland, C.J.) ("*Macy*") (citations omitted).

[31]     507 U.S. at 383.  Although *Pioneer* specifically addressed "excusable neglect" as that term is used in Bankruptcy Rule 9006(b)(1), its interpretation of "excusable neglect" is not confined to the bankruptcy context.  *See United States v. Torres*, 372 F.3d 1159, 1162 (10th Cir. 2004) ("**Torres**") (stating that "absent some specific reason to depart," *Pioneer* should apply to interpretations of excusable neglect in the nonbankruptcy context).  *See also Weinstock v. Cleary, Gottlieb, Steen & Hamilton*, 16 F.3d 501, 503 (2d Cir. 1994) ("**Weinstock**") (applying the interpretation of excusable neglect from *Pioneer* to Fed. R. App. P. 4(a)(5)); *Silvanch v. Celebrity Cruise, Inc.*, 333 F.3d 355 (2d Cir. 2003 ("**Silvanch**") (same); *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248 (2d Cir. 1997) ("**Canfield**") (applying *Pioneer* to Fed. R. Civ. P. 60(b)(1)).

[32]     *Pioneer*, 507 U.S. at 395 (citations omitted).

After noting no challenges to the creditor's good faith and "the absence of any

danger of prejudice to the debtor or of disruption to efficient judicial administration

posed by the late filings," the *Pioneer* Court focused on the *reason for delay*, explaining:

> [W]e give little weight to the fact that counsel was
> experiencing upheaval in his law practice at the
> time of the bar date.  We do, however, consider
> significant that the notice of the bar date provided
> by the Bankruptcy Court in this case was outside
> the ordinary course in bankruptcy cases.[33]

Because the unusual form of notice provided an adequate reason for delay, and because

the other factors weighed in the creditor's favor, the Court found the neglect excusable.[34]

The *Pioneer* test has been consistently applied by courts in this Circuit.[35]

The *Pioneer* factors are not given equal weight.  Because the first, second, and

fourth factors "usually weigh in favor of the party seeking the extension,"[36] the third

factor—reason for delay—is "the predominant factor."[37]

The first *Pioneer* factor, danger of prejudice to the nonmoving party, "is a more

flexible and complex concept than a simple dollar-for-dollar depletion of assets otherwise

---

[33]    *Id.* at 397-398.

[34]    *Id.* at 399.

[35]    *See United States v. Hoopers*, 9 F.3d 257, 259 (2d Cir. 1993); *Weinstock*, 16 F.3d at 503; *Canfield*, 127 F.3d at 250; *Silivanch*, 333 F.3d at 355; *Midland Cogeneration Venture L.P. v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 121-22 (2d Cir. 2005) ("*Enron*"); *Dana*, 2007 Bankr. LEXIS 1934, at *10, 2007 WL 1577763, at *3; *In re Keene Corp.*, 188 B.R. 903, 908 (Bankr. S.D.N.Y. 1995) (Bernstein, C.J.) ("*Keene*").

[36]    *Silivanch*, 333 F.3d at 366.  *See also Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 415-16 (2d Cir. 2004); *Graphic Commc'ns Int'l Union, Local 12-N v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5-6 (1st Cir. 2001); *Torres*, 372 F.3d at 1159; *City of Chanute v. Williams Natural Gas Co.*, 31 F.3d 1041, 1046 (10th Cir. 1994); *In re Kmart Corp.*, 381 F.3d 709, 715 (7th Cir. 2004).

[37]    *In re Musicland Holding Corp.*, 356 B.R. 603, 607 (Bankr. S.D.N.Y. 2006) (Bernstein, C.J.).  *See also Silivanch*, 333 F.3d at 366; *Dana*, 2007 Bankr. LEXIS 1934, at *9, 2007 WL 1577763, at *4; *Enron*, 419 F.3d at 122.

Notwithstanding increased emphasis on the reason for delay, "the slightest indication of bad faith, prejudice or adverse impact on the administration of the case" is a reason to find the neglect inexcusable.  *Keene*, 188 B.R. at 908 (discussing factors that the *Pioneer* Court stated could have plausibly led to a determination that the neglect was inexcusable).

available for timely filed claims."[38]  When analyzing this factor, courts should also consider "the adverse impact that a late claim may have on the judicial administration of the case."[39]

With respect to the second factor, the length of delay and its potential impact on judicial proceedings, the Second Circuit has stated, "neither we nor—as far as our research discloses—any other court has established a bright-line rule governing when the lateness of a claim will be considered 'substantial.'"[40]  The length of delay in time is only given meaning by its effect on the administration of the case.[41]

As stated above, the third factor, reason for delay, is "the predominant factor."  To satisfy this factor, the proffered reason must have actually caused the neglect.[42]  In addition, a "failure to follow the clear dictates of a court rule will generally not constitute such excusable neglect."[43]

The fourth *Pioneer* factor is good faith, though "rarely in the decided cases is the absence of good faith at issue."[44]  There is no formal presumption of good faith, but

---

[38]    *Macy*, 166 B.R. at 802.

[39]    *Keene*, 188 B.R. at 910.  *See also In re XO Commc'ns, Inc.*, 301 B.R. 782, 796 (Bankr. S.D.N.Y. 2003) (Gonzalez, C.J.) (providing a discussion of prejudice in relation to a late filed proof of claim).

[40]    *Enron*, 419 F.3d at 128.

[41]    *Id.* (indicating that the length of delay can only be evaluated in relation to its effect on the administration of the cases).  *But see Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 188 F.3d 116, 130 (3d Cir.1999) (holding that *Pioneer* "teaches that we should consider the length of the delay in absolute terms").

[42]    *Silivanch*, 333 F.3d at 368.

[43]    *Id.*

[44]    *Id.* at 366 (citation omitted).

courts have indicated that a record lacking bad faith provides appropriate grounds for a finding of good faith.[45]

## II.

## Application to the Facts Here

On March 8, 2010, Floor-Currier Counsel filed and served the Suggestion of Death. Under the language of Civil Rule 25, that would begin the 90-day period to substitute a successor for Floor. This period closed on June 7, 2010—a date by which Floor-Currier Counsel knew that Currier had been appointed, but the Trustee's counsel did not. The Trustee's motion to substitute pursuant to Civil Rule 25(a) was filed on November 16, 2010.

That was 163 days after the 90-day period had lapsed. Thus, were it not for the potential effect of Bankruptcy Rule 9006, the similar Civil Rule 6(b), and caselaw,[46] the Trustee's motion to amend the caption would be untimely, and Currier would be entitled to dismissal.

But as noted above, the time to take action under Civil Rule 25, as with other deadlines in adversary proceedings under the umbrella of cases under the Bankruptcy Code, can be extended if requirements under Bankruptcy Rule 9006 or Civil Rule 6(b)

---

[45]    *See, e.g., In re Agway Inc.*, 313 B.R. 22, 30 (Bankr. N.D.N.Y. 2003) (Gerling, C.J.) ("The Court finds nothing in the record to the contrary and, accordingly, finds that [the movant] has submitted its motion in good faith."). *See also In re O.W. Hubbell & Sons, Inc.*, 180 B.R. 31, 35-36 (Bankr. N.D.N.Y. 1995) (McAvoy, C.J.) (finding lack of good faith where movant sought relief from judgment expunging his claim seven months after an order expunging the claim was entered, raised meritless legal arguments, and only sought such relief due to prejudice it might cause in pending state court proceedings).

[46]    *See Thebaud*, 248 F.R.D. at 208-09 (granting plaintiff's request to amend caption even though it was made over four months after the 90-day period had run, observing that "[n]otwithstanding the mandatory language in Rule 25(a), the district court has considerable discretion in addressing the timing of substitution in the event of the death of a party," and that the plaintiff had shown excusable neglect).

are satisfied.[47]  Thus the Trustee's action would be timely if, but only if, the requirements

of Bankruptcy Rule 9006(b)(1) (or the substantively identical requirements of Civil Rule

6(b)) are satisfied.  That, in turn, rests on the Trustee's showing that his neglect was

excusable, under the standards articulated by *Pioneer* and its progeny, or the lesser

requirements under cases like *Thebaud*.[48]

Three of the four *Pioneer* factors easily tip in the Trustee's favor.  The first does

so because Currier, the "nonmoving party," would not be prejudiced in the slightest from

the amendment in the caption.  She has been represented by the same counsel as Floor

was, and has been on notice of the claims against Floor (and now her) from either the

outset or near outset of this litigation.  She has had the opportunity to participate in the

litigation since her appointment.  And even if the *Trustee* didn't know that she was

already appointed and was "the Executrix of the Estate of Richard Floor," *she* did, and

*her counsel* did.  Importantly, a footnote in the later drafts of the amended complaint (and

the version ultimately filed) that was delivered to Floor-Currier counsel stated:

> Upon information and belief, although not yet
> formally appointed, Dianne [*sic*] Currier will be
> named as the Executrix of the Estate of Richard
> Floor.  It is the intention of the LB Litigation Trust
> to name as defendant the person who shall be
> appointed the legal representative of the Estate of
> Richard Floor.[49]

---

[47]     *See id.*

[48]     *See* n.53 *infra*, explaining that the Trustee must prevail under either standard.

[49]     *See* n.13 *supra*.

Of course, if the Trustee's motion were granted, Currier would lose the windfall of a

victory without judicial consideration of the claims against her on the merits.  That,

however, is not legally cognizable prejudice.[50]

The second factor also weighs in the Trustee's favor.  Although the length of

delay in *Pioneer* was only 20 days while the length of the delay here is 163 days, the

length of the delay must be evaluated in light of its effect on the administration of the

case rather than in absolute terms.  Unlike many cases in which a movant seeks an

extension of time to file a proof of claim,[51] the extension here would have no effect

whatever on the administration of the Lyondell bankruptcy cases.  Here the Debtors have

already confirmed a plan, and the claims at issue here are being asserted against a third

party, rather than against the bankruptcy estate.  In fact, the need to focus on case

administration matters was one of the reasons underlying the delay.[52]  For the same

reasons that granting the Trustee an extension of time to move to substitute would result

in little prejudice to Currier or the Floor Estate, it also would have little effect on the

administration of the litigation in this adversary proceeding.

The fourth factor, good faith, also weighs in the Trustee's favor.  There is no

indication that the Trustee acted with bad faith.  To the contrary, to the extent anyone

---

[50]    *See, e.g., Fox v. Stein (In re Perry H. Koplik & Sons, Inc.),* 2007 Bankr. LEXIS 5040, at *17, 2007 WL 3076921, at *5 (Bankr. S.D.N.Y. Oct. 18, 2007) (Gerber J.) ("while any defendant would no doubt welcome the opportunity to be spared the need to defend additional claims by reason of his opponent's misstep, the loss of the windfall of securing victory before consideration of the merits, at least in this factual context, cannot be regarded as legally cognizable prejudice").

[51]    *See Enron,* 419 F.3d at 128 ("[I]n some circumstances a claim filed six months late will be more disruptive to a reorganization process than one filed six weeks late.  Under other conditions, however, a claim filed six months late will not be disruptive at all—if, for example, the proceeding has come to a temporary halt for other reasons—while one filed six weeks late, while the proceedings are in full swing, will threaten to upset the entire process.").

[52]    *See* n.9 *supra.*

-15-

acted with bad faith, it was Floor-Currier Counsel, which remained mum on Currier's formal designation.

Requiring more discussion, however, is the issue of how the Court should address the remaining factor, the reasons for the delay—in a situation involving a perfect storm of a late filing accompanied by wrong information provided by the Probate Court and the knowledge by the defendant's counsel of the true facts and its actions in keeping the facts to itself. Here, where the latter two circumstances appear in combination, the Court determines that the neglect in the Trustee's delay in changing the defendant from the "Estate of Richard Floor" to "Dianne Currier, as Executrix of the Estate of Richard Floor" was excusable.[53]

With the benefit of hindsight, we now know that Currier was apparently appointed on April 9, but that fact was unknowable to the public,[54] with the appointment not having been docketed. Floor-Currier Counsel knew by the July 7th 90-day mark that Currier's appointment was approved (though the record does not reflect how much before that day it knew), but it failed to advise the Trustee's counsel, and the Trustee's counsel did not know that the formal designation had been made. And when the Paralegal inquired on July 1, she was told, by the Probate Court, that Currier had not yet been appointed—possibly, though not clearly, because the appointment had not been docketed. Obviously, what the Paralegal was then told was false, misleading, or both. If the appointment was effective when approved (as contrasted to when it was docketed), one

---

[53]    Thus the Court does not need to decide whether it need only find "a reasonable basis for noncompliance within the time specified" and "good faith" (as the Trustee argues, relying on *Thebaud*), or after consideration of all four *Pioneer* factors. The Court here determines that relief is appropriate after consideration of all four *Pioneer* factors in any event.

[54]    Apparently it was known by those with better access than the public—*e.g.*, Floor-Currier Counsel—and at least by June 7. But Floor-Currier Counsel elected not to share that information.

must ask how the public was supposed to know.  If the appointment was not effective

until it was docketed, one must ask how it would be insufficient for the Trustee to name,

as a defendant, "Legal Representative of the Estate of Richard Floor (deceased)"—

particularly after advising Currier and Floor-Currier Counsel that:

> Upon information and belief, although not yet
> formally appointed, Dianne [*sic*] Currier will be
> named as the Executrix of the Estate of Richard
> Floor.  It is the intention of the LB Litigation Trust
> to name as defendant the person who shall be
> appointed the legal representative of the Estate of
> Richard Floor.

Of course, the Court is aware that when the Paralegal was asked to inquire as to

Currier's status, on June 10, the 90-day marked had passed by 3 days, and when she

apparently first followed through on the request, on July 1, that was another 21 days after

that.  But when the Paralegal did inquire, she was told that Currier had not yet been

appointed, and she was told the same thing again on July 22.  So she was given wrong

information twice—at two separate times when Floor-Currier Counsel knew the true

facts, and had kept mum.  If the Paralegal had inquired on June 6, before the 90-day

period had passed, there is no reason to believe that she would have been told the true

facts then, when she was given wrong information twice therafter.

Secondly, while the Court is troubled by Floor-Currier Counsel's conduct, this is

not about imposing sanctions.  It is only about determining whether, following Floor-

Currier Counsel's actions, the Trustee's counsel's neglect was excusable.  The Court

finds that it was.

Floor-Currier Counsel (i) stayed mum when told by the Trustee of the Trustee's

belief that Currier was "not yet formally appointed"; (ii) consented to the filing of an

amended Complaint naming as a defendant the "Legal Representative of Estate of

Richard Floor"; (iii) consented to amendments in the Case Management Order including that estate as a defendant; and (iv) participated in a Court conference at which Floor-Currier Counsel raised no objections as to how the estate was named in the amended Complaint.  But Floor-Currier Counsel now contends that Currier should be let out of the litigation because naming her as the "Legal Representative of Estate of Richard Floor" wasn't good enough.  The Court will not reward that gamesmanship.  The Court finds the Trustee's neglect, in light of the Probate Court's actions, and Floor-Currier Counsel's conduct, to be excusable.

Currier also seems to argue that faced with all of this, the Trustee should have requested an extension of time before it expired.  Best practices would favor such a practice.  And if they had been followed, the Trustee's motion would have been granted in a heartbeat, and the Court would not be called upon to determine whether excusable neglect had been shown.  But in the exercise of its discretion, the Court is still of a mind to find the Trustee's actions to be excusable, given the combination of the circumstances at the Probate Court and Floor-Currier Counsel's actions in staying mum while continuing to participate in the litigation while time passed.  The Court expects better of the counsel appearing before it, and it is not at all pleased with the conduct of Floor-Currier Counsel.[55]  But once again, the Court is not imposing sanctions, nor even expressing a view as to whether conduct of this character would ever be sanctionable.

---

[55]    Currier also seems to argue that she is not bound by the acts of her counsel, contending that she was "not contemporaneously aware" of those actions.  (*See* Currier Decl. ¶¶ 23-24; Currier Opp. [Dkt. 461], at 14-15.).  The Court cannot agree.  *See*, *e.g.*, *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962) (stating client could not "avoid the consequences of the acts or omissions of this freely selected agent.  Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the client.") (internal quotation and citation omitted).

The Court is ruling only, in the exercise of its discretion—as in *Pioneer*, where the unusual form of notice provided an adequate reason for the delay, and where there was no indication of any intentional effort to withhold information from the claimant—that the neglect of the Trustee, whose counsel encountered the circumstances described in detail above, is excusable.[56]

## Conclusion

For the foregoing reasons, the Trustee's motion to extend time to move to amend the caption is granted, and the caption is hereby amended. Currier's motions to dismiss (as premised on procedural grounds and Rule 25(a) defects) are denied. The claims asserted in the Complaint against Currier, as the executor to the Floor Estate, remain alive except insofar as they have been dismissed by reason of the Court's other rulings.

SO ORDERED.

Dated: New York, New York           *s/Robert E. Gerber*
     January 4, 2016                    United States Bankruptcy Judge

---

[56]    Finally, the Court finds *Silivanch*, upon which Currier relies, easily distinguishable. *Silivanch* involved a late *notice of appeal*. It did not involve a motion under Civil Rule 25, invoking the Circuit's earlier holding in *Staggers*, *supra* n.21 (or Judge Bloom's similar holding in *Thebaud*, under modern Rule 25), that the 90-day period was not intended to act as a bar to otherwise meritorious actions. Nor did *Silivanch* involve incorrect information from an official source or an opponent with the true facts concealing them from the plaintiff—much less those facts in combination. And the causation facts were different, as here even a timely inquiry would likely have faced the same incorrect information from the Probate Court, and Floor-Currier Counsel was just as mum before the 90-day mark as it was thereafter.

# **APPENDIX A**

Weisfelner v. Blavatnik, Adv. No. 09-01375

## APPENDIX A*

| Count | Claim | Defendant Parties |
|---|---|---|
| 1 | Constructive fraudulent transfer under the Bankruptcy Code and applicable state law | Nell, Limited; AI Chemical Investments LLC; and Leonard Blavatnik |
| 2 | Intentional fraudulent transfer under the Bankruptcy Code and applicable state law | Nell, Limited; AI Chemical Investments LLC; and Leonard Blavatnik |
| 3 | Constructive fraudulent transfer under the Bankruptcy Code and applicable state law | Lyondell Pre-Merger Directors and Lyondell Pre-Merger Officers[1] |
| 4 | Intentional fraudulent transfer under the Bankruptcy Code and applicable state law | Lyondell Pre-Merger Directors and Lyondell Pre-Merger Officers |
| 5 | Breach of fiduciary duty | Lyondell Pre-Merger Directors |
| 6 | Mismanagement and breach of duty under Luxembourg law | Leonard Blavatnik[2] |
| 7 | Tort under Luxembourg law | Blavatnik;[3] the GP Managers; the Nominees; and the Successors[4] |

---

[*]    Except as to Count 6, (*see* n.2, *infra*), counts and claims listed below are based on the amended complaint dated July 23, 2010 [Dkt. 381] (the "**Complaint**"). This table does not reflect subsequent dismissals of claims or defendants by stipulation of the parties or by order of the Court.

[1]    Pre-Merger, in addition to chairman and CEO Dan Smith, Lyondell had ten outside directors on its Board of Directors: Carol Anderson, Susan Carter, Stephen Chazen, Travis Engen, Paul Halata, Daniel Huff, David Lesar, David Meachin, Daniel Murphy, and William Spivey (collectively, the "**Lyondell Pre-Merger Directors**"). The relevant Lyondell officers identified in the Complaint as named defendants are: James Bayer, T. Kevin DeNicola, Bart de Jong, Edward Dineen, Kerry Galvin, Morris Gelb, John Hollinshead, and W. Norman Philips (collectively, the "**Lyondell Pre-Merger Officers**").

[2]    This Count 6 is based upon the second amended complaint dated September 29, 2011 [Dkt. 598].

[3]    Although the Complaint did not specify whether Count 7 is asserted against Leonard Blavatnik or Alex Blavatnik, who is also a named defendant in this action, the Court understands this claim to be asserted against Leonard Blavatnik.

[4]    The "**GP Managers**" are identified in the Complaint as including: Alan Bigman, Richard Floor and Philip Kassin. The "**Nominees**" are defined in the Complaint as including: Simon Baker, Dawn Shand, and Bertrand Duc. The "**Successors**" are defined in the Complaint as including: Philip Kassin, Lincoln Benet, Lynn Coleman, and Richard Floor.

Richard Floor is deceased and Diane Currier has been appointed as the executor for the estate of Richard Floor.

Weisfelner v. Blavatnik, Adv. No. 09-01375

## APPENDIX A*

| Count | Claim | Defendant Parties |
|---|---|---|
| 8 | Breach of fiduciary duty | Subsidiary Directors[5] |
| 9 | Avoidance preference under the Bankruptcy Code and applicable state law | Access Industries Holdings LLC |
| 10 | Equitable subordination under the Bankruptcy Code | AI International, S.à.r.l. |
| 11 | Constructive fraudulent transfer under the Bankruptcy Code and applicable state law | Nell Limited; Deutsche Bank Securities Inc.; and Perella Weinberg Partners LP |
| 12 | Breach of contract | Access Industries Holdings LLC; and AI International, S.à.r.l. |
| 13 | Illegal dividends or redemption | Lyondell Pre-Merger Directors |
| 14 | Unlawful distribution and extra-contractual tort under Luxembourg law | Leonard Blavatnik; the GP Managers; BI S.à.r.l.; Alan Bigman; Alex Blavatnik; Peter Thorén; Simon Baker; and the Nominees |
| 15 | Declaratory judgment for characterization of purported loan advances under the Access Revolver as capital contributions | Access Industries Holdings LLC; and the Lyondell Post-Merger Directors[6] |
| 16 | Illegal dividends | Lyondell Post-Merger Directors |
| 17 | Constructive fraudulent transfer under the Bankruptcy Code and applicable state law | Access Industries Holdings LLC |
| 18 | Aiding and abetting breach of fiduciary duty under applicable state law and Luxembourg law | Nell Limited; Access Industries Holdings, LLC; Access Industries, Inc.; AI International, S.à.r.l.; AI Chemical Investments LLC |

---

[5]   The "**Subsidiary Directors**" are identified in the Complaint as including: Kevin Cadenhead, Charles Hall, Rick Fontenot, and John Fisher Gray.

[6]   The "**Lyondell Post-Merger Director**" are identified in the Complaint as including: Alan Bigman, Edward Dineen, and Morris Gelb.

2

Weisfelner v. Blavatnik, Adv. No. 09-01375

## APPENDIX A*

| Count | Claim | Defendant Parties |
|---|---|---|
| 19 | Constructive fraudulent transfer under the Bankruptcy Code | BI S.à.r.l. |
| 20 | Breach of fiduciary duty | Dan Smith; T. Kevin DeNicola; Edward Dineen; Kerry Galvin; and W. Norman Phillips |
| 21 | Aiding and abetting breach of fiduciary duty | T. Kevin DeNicola; Edward Dineen; Kerry Galvin; and W. Norman Phillips |