Hearing Date: July 11, 2016 at 10:00 a.m.
Objection Deadline: July 6, 2016
Reply Deadline: July 8, 2011

| | | |
|---|---|---|
| QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>(212) 849-7000<br>*Attorneys for defendants Access Industries, Inc.,*<br>*Access Industries Holdings LLC,*<br>*AI International, S.à.r.l., Nell Limited,*<br>*Len Blavatnik, Lincoln Benet, Philip Kassin, Peter Thorén, and Alex Blavatnik* | PORTER HEDGES LLP<br>1000 Main, 36th Floor<br>Houston, Texas 77002<br>(713) 226-6000<br>*Attorneys for defendants Carol A. Anderson, James Bayer, Kevin R. Cadenhead, Susan Carter, T. Kevin DeNicola, Travis Engen, Rick Fontenot, Kerry A. Galvin, Morris Gelb, Paul S. Halata, Charles L. Hall, John A. Hollinshead, Danny W. Huff, David Lesar, David J.P. Meachin, Daniel Murphy, W. Norman Phillips, Jr., Dan F. Smith, William R. Spivey* | COVINGTON & BURLING LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, New York 10018<br>(212) 841-1000<br>*Attorneys for defendants C. Bart de Jong and Edward Dineen* |
| FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP<br>801 17th Street, NW<br>Washington, DC 20006<br>(202) 639-7000<br>*Attorneys for defendant Alan S. Bigman* | DEBEVOISE & PLIMPTON LLP<br>919 Third Avenue<br>New York, New York 10022<br>(212) 909-6000<br>*Attorneys for defendant Stephen I. Chazen* | |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
In re: LYONDELL CHEMICAL            :    Case No. 09-10023 (CGM)
COMPANY, *et al.*,                  :    Chapter 11
    Debtors.                      :
                                    :    (Jointly Administered)
------------------------------------------------------------x
                                                            :
EDWARD S. WEISFELNER, AS LITIGATION :
TRUSTEE OF THE LB LITIGATION TRUST, :
                                    :
    Plaintiff,                    :    Adv. Pro. No. 09-1375 (MG)
v.                                  :
                                    :
LEONARD BLAVATNIK, *et al.*,        :
                                    :
    Defendants.                   :
------------------------------------------------------------x

**DEFENDANTS' MOTION FOR LEAVE TO USE CERTAIN
<u>DEPOSITION TRANSCRIPTS AT TRIAL IN LIEU OF LIVE TESTIMONY</u>**

The Access Defendants[1], the Lyondell D&O Defendants,[2] and defendant Alan S. Bigman respectfully submit this motion for leave to use certain deposition transcripts at trial in lieu of live testimony pursuant to Rule 32 of the Federal Rules of Civil Procedure (made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7032).

The five witnesses at issue were representatives of the so-called Financing Party Defendants ("FPDs") who—pursuant to the Court's order—submitted very detailed written direct testimony for the anticipated December 2009 trial. After the FPDs settled out of the case, plaintiff would not agree that the witnesses' written direct testimony would be admissible at trial. Each witness was then subjected to a deposition in 2011 (after having previously been deposed once before by plaintiff) to further memorialize his direct testimony and provide a full opportunity for cross-examination on that testimony.

Extraordinary circumstances make it desirable, "in the interest of justice," to permit the use of these witnesses' depositions at trial regardless of whether the witnesses may currently work or reside within 100 miles of the courthouse. Fed. R. Civ. P. 32(a)(4)(E). Despite having indisputably had every opportunity to cross-examine these witnesses on their previously memorialized trial testimony, plaintiff has refused to agree that their deposition transcripts may be used at trial. Plaintiff's refusal necessitates this motion.

---

[1] The "Access Defendants" are Access Industries, Inc., Access Industries Holdings LLC, AI International S.à.r.l, Nell Limited, Len Blavatnik, Lincoln Benet, Philip Kassin, Peter Thorén, and Alex Blavatnik.

[2] The "Lyondell D&O Defendants" are Carol A. Anderson, James Bayer, Kevin R. Cadenhead, Susan Carter, T. Kevin DeNicola, Travis Engen, Rick Fontenot, Kerry A. Galvin, Morris Gelb, Paul S. Halata, Charles L. Hall, John A. Hollinshead, Danny W. Huff, David Lesar, David J.P. Meachin, Daniel Murphy, W. Norman Phillips, Jr., Dan F. Smith, William R. Spivey, C. Bart de Jong, Edward Dineen, and Stephen I. Chazen.

## BACKGROUND

This case involves a merger transaction that occurred in December 2007. In the months preceding the merger, five major banks that provided financing for Basell's acquisition of Lyondell performed detailed financial analysis on the acquiring company (Basell), the target company (Lyondell), and the company expected to result from the merger (LBI). Plaintiff's financial experts have relied heavily upon (and we believe have fundamentally misused) certain of the banks' financial analyses.

In December 2009, pursuant to Court order, Gunter Frangenberg (Merrill Lynch), Robert Jeffries (Citibank), Douglas Lane (UBS), Anand Melvani (Merrill Lynch), and John Vaske (Goldman Sachs) each submitted written direct testimony for the then-scheduled Phase I trial. At that time, their banks were defendants in the case, and it is apparent from the declarations they submitted that enormous effort and care went into the preparation of their direct testimony. Frangenberg's statement contained 88 paragraphs, and the statements submitted by Jeffries, Lane, Melvani, and Vaske contained, respectively, 49 paragraphs, 83 paragraphs, 101 paragraphs, and 59 paragraphs. Each witness's testimony discussed in detail a number of exhibits setting forth complicated financial analysis of the proposed merger—including analyses on which plaintiff's financial experts purport to rely in support of their opinions in this case.

The December trial did not occur because the FPDs entered into a settlement. Thereafter, non-settling defendants sought to ensure that the FPD witnesses' testimony would be properly memorialized for trial given the likelihood that, over time, the witnesses would forget much of what they knew and, especially given their non-party status, have little if any incentive to re-learn what they had forgotten in preparation for the eventual trial of this matter. Plaintiff declined to agree to the admission of the witnesses' written direct testimony. Defendants

thereafter noticed the witnesses for deposition, and each one was deposed (all of them for the second time) in January and February 2011.  The witnesses' direct testimony in their 2011 depositions consisted largely of verifying the accuracy of the written direct evidence they had provided in December 2009; little if any direct testimony was adduced that was not already set forth in the witnesses' written declarations, and there can be no claim that plaintiff was surprised by the substance of any of the witnesses' testimony.  Plaintiff was, of course, fully aware of the witnesses' written direct testimony, and had virtually limitless time to prepare to cross-examine the witnesses on that testimony.  And plaintiff took full advantage of the opportunity to cross-examine the witnesses.  Plaintiff's cross-examination consumed a substantial portion of each of the depositions: Frangenberg (about 148 of 265 transcript pages), Jeffries (about 46 of 96 transcript pages), Lane (about 35 of 139 transcript pages), Melvani (about 51 of 173 transcript pages), and Vaske (about 58 of 112 transcript pages).  Plaintiff did not exhaust the time allowed for the deposition of any of the five witnesses, and could have examined them at even greater length if he had chosen to do so.

By the time this case comes on for trial in October 2016, almost nine years will have elapsed since the closing of the merger, and more than nine years will have passed since the financing banks performed the financial analyses that are the principal subject of the FPD witnesses' testimony.  Almost six years will have passed since the last of the depositions in question.  The five witnesses at issue are non-party witnesses with little or no incentive to prepare for the upcoming trial.  They are busy financial professionals who presumably have been involved in dozens or scores of transactions since the merger that created LBI.  Although defendants have not contacted the witnesses concerning potential trial testimony, it is highly likely—indeed, completely predictable—under the facts present here that any trial testimony by

3

these five witnesses will involve a time-consuming and wasteful exercise in establishing a foundation for admitting the witnesses' written direct testimony and prior deposition testimony as past recollection recorded under Federal Rule of Evidence 803(5).

This Motion seeks to avoid the need for such a time-consuming and wasteful exercise by allowing the use of these five third-party witnesses' deposition testimony instead of requiring them to appear live. This trial will pose major memory challenges even for party-affiliated witnesses who may have the incentive and opportunity to refresh their recollections on the 2007 merger before they take the stand. And it is anticipated that the witness lineup may include dozens of fact witnesses and at least ten experts. Using depositions of third-party witnesses deposed years ago in a situation where all parties had both the incentive and the opportunity to ask any questions they might have had is a fair and efficient way to reduce the enormous burdens that the long-delayed trial of this matter will otherwise pose.

## ARGUMENT

This Court has "considerable discretion" to admit deposition testimony at trial as a substitute for live testimony. *McDowell v. Blankenship*, 759 F.3d 847, 851 (8th Cir. 2014). Under Rule 32, "all or part of a deposition may be used against a party [if] (A) the party was present or represented at … the deposition … (B) [the deposition] is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and …[among other independent reasons] exceptional circumstances make it desirable—in the interest of justice and with due regard to the importance of live testimony in open court—to permit the deposition to be used." Fed. R. Civ. P. 32(a). This rule acts as an exception to the hearsay rule. *See* Fed. R. Evid. 802 advisory committee note (1972) ("The following examples illustrate the working of the exception [to hearsay] … Rule 32: admissibility of depositions ….").

4

Rule 32 does not turn on the witness's availability, and depositions can be used even if the witness could be subpoenaed for trial because he or she resides within 100 miles of the courthouse. *See* Fed. R. Civ. P. 32(a)(4)(E) (permitting any use in the "interest of justice"); *Eastman Kodak Co. v. Agfa-Gevaert N.V.*, 560 F. Supp. 2d 227, 312 (W.D.N.Y. 2008) ("courts have looked to various factors in deciding whether to allow deposition testimony to be used as a substitute for live testimony by an otherwise available witness.") (*citing Borchardt v. U.S.*, 133 F.R.D. 547, 548 (E.D.Wis. 1991) (deposition testimony was permitted due to cost considerations)).

Rather than availability, the threshold for applying the rule is fact-specific and depends on "exceptional circumstances," which can include, among other things, the length and complexity of the trial. *See Eastman Kodak*, 560 F. Supp. 2d at 312 ("Certainly the interests of justice would be served by limited use of deposition testimony supplementing trial testimony in view of the accelerated schedule."); *SCM Corp. v. Xerox Corp.* 76 F.R.D. 214, 216 n.2 (D. Conn. 1977) (in dispute over interpretation of "100-mile" rule, requiring witness's attendance but noting that portions of deposition "as to which an opportunity to assess credibility by observing the witness is not important … may be admissible under [Rule 32], since the length of this trial is itself an 'exceptional circumstance'"). Exceptional circumstances also exist where, as here, the deposition was taken for the specific purpose of being used at trial. *See Hague v. Celebrity Cruises, Inc.*, 2001 WL 546519, at *2 (S.D.N.Y. May 23, 2001) ("the prior understanding of counsel that a deposition would later be admissible was an exceptional circumstance …").

Under this flexible standard, this Court should permit the depositions of third-party witnesses Frangenberg, Jeffries, Lane, Melvani, and Vaske to be used at trial instead of requiring the witnesses to appear live.

5

*First*, this trial involves many issues and will be complex by any standard. Requiring live testimony from these five third-party witnesses will add to the length and complexity of the trial—especially since the witnesses are unlikely to prepare in a meaningful way and their live testimony will require painstaking efforts to try to refresh their memories and, failing that, to establish an appropriate evidentiary foundation for treating their written direct testimony and depositions as past recollection recorded under Federal Rule of Evidence 803(5).

*Second*, live testimony by these third-party witnesses will almost certainly be considerably less reliable than the deposition testimony that is already of record. By the time of trial, it will have been almost nine years since these witnesses worked on the 2007 transaction, over six years since the companies they were with had any involvement in this lawsuit, and over five years from when they were last deposed. Based on public information, at least three of the five witnesses are no longer affiliated with the banks they were with at the time of the merger. As a result, it is reasonable to conclude that the witnesses would not have any incentive to try and refresh their recollections, nor could they be expected do so without incurring significant costs in the form of attorneys' fees or lost time (which is far less appropriate for non-parties than it is for parties). More likely, the witnesses would, if anything, appear at trial unprepared, which will result in a tremendous waste of judicial and party resources as examinations crawl at a snail's pace in an attempt to either refresh memories or impeach the lack of it. This would not only be the case for cross examinations but for direct examinations as well since it would not be practical to require the non-parties to submit their direct testimony in the form of declarations. Because of the erosion of memory over time, live testimony would actually be less complete and reliable than the direct and cross-examination testimony elicited at the depositions. As a result,

6

the depositions are the best record of these witnesses' recollection and their responses to the plaintiff's cross examination.

*Third*, there is no reason to think that live testimony is needed to evaluate the credibility of these five witnesses' testimony. The witnesses' testimony largely concerns detailed financial analysis performed by large teams of bankers, and that analysis was fully documented in extensive reports and other exhibits. Any credibility challenges that plaintiff might have cared to mount were fully known by February 2011 when the last of the depositions was taken and—we respectfully submit—will not be materially advanced by live testimony so far after the transaction in question. In 2009, or even in 2011, defendants would have loved to have these third-party witnesses testify live at trial because they provide compelling evidence supporting defendants' case. With the passage of time, however, defendants have concluded that the written record of the witnesses' past testimony will have to suffice because there is—quite simply—no realistic possibility that live testimony today will provide a record more useful to the Court than the record that already exists.

*Fourth*, there is no prejudice to the plaintiff. Plaintiff's counsel were present at each of the witnesses' depositions, had ample opportunity to cross examine them, and in fact took full advantage of that opportunity. Moreover, the plaintiff took their depositions *twice*, the second time knowing full well what their trial testimony was going to be years ago. *See United States v. IBM*, 90 F.R.D. 377, 381 (S.D.N.Y. 1981) ("… any decision by plaintiff to limit its questioning during depositions is not a bar to admission of the depositions"). That second time was also a year and half after the plaintiff had completed document discovery of the FPDs during both Rule 2004 and Phase I fact discovery. Thus, the plaintiff has had more than enough chances to develop whatever admissions he believed he could have obtained from these witnesses, and he is

7

not prejudiced by being denied another. *See Allgeier v. United States*, 909 F.2d 869, 876 (6th Cir. 1990) (affirming district court's use of deposition even though there were no "exceptional circumstances" since party opposing use was at deposition and thus there was no prejudice). And any benefit to the plaintiff in being given a third chance to examine witnesses with memories that will predictably now be stale to non-existent does not outweigh the immense costs and inefficiencies that will result in requiring the live appearance of the witnesses.

## CONCLUSION

For the foregoing reasons, the Court should permit the use of depositions of Frangenberg, Jeffries, Lane, Melvani, and Vaske at trial.

Dated: June 17, 2016
       New York, New York

| QUINN EMANUEL URQUHART & SULLIVAN, LLP | PORTER HEDGES LLP |
|---|---|
| By: /s/ Richard I. Werder Jr. | By: /s/ John F. Higgins |
| Richard I. Werder, Jr.<br>Susheel Kirpalani<br>Rex Lee<br>Victor Noskov | John F. Higgins<br>Eric D. Wade |
| 51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>(212) 849-7000 | 1000 Main, 36th Floor<br>Houston, Texas 77002<br>(713) 226-6000 |
| *Attorneys for defendants Access Industries, Inc., Access Industries Holdings LLC, AI International, S.à.r.l., Nell Limited, Len Blavatnik, Lincoln Benet, Philip Kassin, Peter Thorén, and Alex Blavatnik* | *Attorneys for defendants Carol A. Anderson, James Bayer, Kevin R. Cadenhead, Susan Carter, T. Kevin DeNicola, Travis Engen, Rick Fontenot, Kerry A. Galvin, Morris Gelb, Paul S. Halata, Charles L. Hall, John A. Hollinshead, Danny W. Huff, David Lesar, David J.P. Meachin, Daniel Murphy, W. Norman Phillips, Jr., Dan F. Smith, William R. Spivey* |
| COVINGTON & BURLING LLP | DEBEVOISE & PLIMPTON LLP |
| By: /s/ Dianne F. Coffino | By: /s/ Joseph P. Moodhe |
| Dianne F. Coffino | Joseph P. Moddhe |

8

| | |
|---|---|
| Martin E. Beeler | Tricia B. Sherno |
| The New York Times Building<br>620 Eighth Avenue<br>New York, New York 10018<br>(212) 841-1000 | 919 Third Avenue<br>New York, New York 10022<br>(212) 909-6000 |
| | *Attorneys for defendant Stephen I. Chazen* |
| *Attorneys for defendants C. Bart de Jong and Edward Dineen* | |

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

By: /s/ James D. Wareham
James D. Wareham

801 17th Street, NW
Washington, DC 20006
(202) 639-7000

*Attorneys for defendant Alan S. Bigman*

9