**Opposition Deadline:  September 27, 2016**

QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorneys for Defendants Access Industries,
Inc., Access Industries Holdings LLC, Nell
Limited, AI International S.à.r.l., Len Blavatnik,
Lincoln Benet, and Philip Kassin*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                                  :
In re: LYONDELL CHEMICAL                      :       Case No. 09-10023 (CGM)
COMPANY, *et al.*,                                      :       Chapter 11
            Debtors.                                       :
                                                                  :       (Jointly Administered)
-----------------------------------------------------------------x
                                                                  :
EDWARD S. WEISFELNER, AS LITIGATION  :
TRUSTEE OF THE LB LITIGATION TRUST,  :
                                                                  :
            Plaintiff,                                      :       Adv. Pro. No. 09-1375 (MG)
v.                                                               :
                                                                  :
LEONARD BLAVATNIK, *et al.*,                  :
                                                                  :
            Defendants.                                    :
-----------------------------------------------------------------x

**ACCESS DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION *IN LIMINE* TO PRECLUDE
<u>CERTAIN TESTIMONY OF RALPH TULIANO, DAVID WITTE, AND H.G. NEBEKER</u>**

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ............................................................................................................................3

      A.      Tuliano's Expert Reports ........................................................................................3

      B.      The CMAI/PGI Expert Reports ..............................................................................5

ARGUMENT ..................................................................................................................................6

      A.      The Experts Should Be Precluded From Offering Factual Narratives ....................6

      B.      The Experts Should Be Precluded From Testifying About States Of Mind ............9

CONCLUSION ..............................................................................................................................10

# TABLE OF AUTHORITIES

**Page**

### Cases

*Bd. of Trustee of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
   2011 WL 6288415 (S.D.N.Y. Dec. 15, 2011) ...................................................................10

*Brown v. Mermaid Plaza Assocs., LLC*,
   2016 U.S. Dist. LEXIS 95599 (E.D.N.Y. July 20, 2016) .......................................................8

*In re Fosamax Prods. Liab. Litig.*,
   645 F. Supp. 2d 164 (S.D.N.Y. 2009)...................................................................................10

*Haimdas v. Haimdas*,
   2010 WL 652823 (E.D.N.Y. Feb. 22, 2010) ..........................................................................6

*Highland Capital Mgmt., L.P. v. Schneider*,
   379 F. Supp. 2d 461 (S.D.N.Y. 2005) ....................................................................................7

*Johns v. Bayer Corp.*,
   2013 U.S. Dist. LEXIS 51823 (S.D. Cal. Apr. 10, 2013) ......................................................7

*Levinson v. Westport Nat'l Bank*,
   2013 WL 3280013 (D. Conn. June 27, 2013) ........................................................................7

*LinkCo, Inc. v. Fujuisu Ltd.*,
   2002 WL 1585551 (S.D.N.Y. July 16, 2002) .....................................................................7, 8

*Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*,
   97 F. Supp. 3d 485 (S.D.N.Y. 2015)......................................................................................7

*Marvel Characters, Inc. v. Kirby*,
   726 F.3d 119 (2d Cir. 2013)................................................................................................7, 9

*Media Sport & Arts S.r.L. v. Kinney Shoe Corp.*,
   1999 U.S. Dist. LEXIS 16035 (S.D.N.Y. Oct. 18, 1999) ......................................................8

*Price v. Fox Entm't Group, Inc.*,
   499 F. Supp. 2d 382 (S.D.N.Y. 2007) ....................................................................................7

*Primavera Familienstiftung v. Askin*,
   130 F. Supp. 2d 450 (S.D.N.Y. 2001) ....................................................................................7

*In re Puda Coal Secs., Inc.*,
   30 F. Supp. 3d 230 (S.D.N.Y. 2014) ......................................................................................6

*In re Rezulin Prods. Liab. Litig.*,
   309 F. Supp. 2d 531 (S.D.N.Y. 2004) ..........................................................................6, 8, 9

*Ridge Clearing & Outsourcing Solutions, Inc. v. Khashoggi*,
   2011 U.S. Dist. LEXIS 91353 (S.D.N.Y. Aug. 12, 2011) ......................................................8

*State of New York v. UPS, Inc.*,
 2016 U.S. Dist. LEXIS 123115 (S.D.N.Y. Sept. 10, 2016) ....................................................... 6

*In re Thilman*,
 2016 WL 4742226 (E.D.N.Y. Bankr. Sept. 9, 2016) .......................................................... 6, 7

### **Rules / Statutes**

Fed. R. Evid. 702 ............................................................................................................... 1, 2, 6, 7, 8

Fed. R. Bankr. P. 9017 ................................................................................................................... 6

The Access Defendants[1] respectfully submit this memorandum of law in support of their motion to preclude certain testimony of Ralph Tuliano, David Witte, and H.G. Nebeker.[2]

## PRELIMINARY STATEMENT

The Trustee apparently hopes to have three of his experts play the impermissible role of storyteller at trial. Large portions of these experts' testimony are devoted to narrating and interpreting documents and testimony to weave a factual tale that—assuming the documents and testimony at issue are admissible—the Trustee's counsel is equally capable of arguing. The first witness is Ralph Tuliano, who—from the first page of his report—assembles a cherry-picked "Chronology" in which he attempts to divine the intent of Basell, the lenders, and others. The remaining two witnesses, David Witte and H.G. Nebeker, cherry-pick emails and testimony, attempt to construe them and, on that basis, assert that Lyondell's CEO, Dan Smith, and his "inner circle" reverse-engineered the company's forecasts to reach a pre-ordained result.

For the testimony that is the subject of this motion, the experts do not rely on any models or scientific methods. They apply no unique professional experience. Rather, in narrating the Trustee's theory of the case, the experts simply compile emails and other records and argue about the inferences they claim should be drawn from them. These are not expert opinions; they are closing statements.

The Federal Rules of Evidence do not permit the Trustee to substitute his experts for admissible evidence. Under Rule 702, expert testimony must be based on specialized knowledge

---

[1] The "Access Defendants" are Access Industries, Inc., Access Industries Holdings LLC, AI International S.à.r.l, Nell Limited, Len Blavatnik, Lincoln Benet, and Philip Kassin.

[2] The reports at issue are attached to the accompanying September 20, 2016 Declaration of Richard I. Werder, Jr. (the "Werder Decl.") as Exhibits A to F. These Exhibits have been highlighted to identify the portions that are the subject of this motion. The Access Defendants have additional objections to these witnesses' testimony, which will be presented at trial.

and reliable methodologies; experts cannot be used as mouthpieces to present a party's version of the facts. But that is precisely how the Trustee seeks to deploy his experts. Astonishingly, the Trustee apparently wants to have his experts testify that Dan Smith manipulated Lyondell's projections with the intent of supporting a higher sale price, without calling Smith or *any* of the Lyondell executives who were involved in preparing the "refreshed" projections to testify at trial live. Moreover, even if the Trustee were calling those witnesses at trial or had admissible deposition testimony that capably addressed the documents his experts interpret, his experts still cannot weave the Trustee's facts for him because, under Rule 702, the Trustee has to do so through the testimony of the fact witnesses, not his experts.

The challenged portions of the expert reports should be precluded for the additional reason that they are replete with the experts' speculation as to the states of mind of various parties, including what Access, Lyondell, and the lenders supposedly "recognized," "ignored," or were "concerned" about. Even if the states of mind of all parties were relevant (and they are not), this sort of testimony is improper because it has no basis in any relevant body of knowledge or expertise, and, at bottom, no expert can opine on what someone else is thinking.

It is not difficult to see why the Trustee prefers to tell his story through his experts. To tell the story through lay witnesses would require the testimony of individuals who (unlike, Tuliano, Witte, and Nebeker) have not been paid for their testimony, have percipient knowledge of the events, and who base their testimony on admissible evidence for which they (or someone else) has laid a proper foundation. And to tell the story through documents would require actually admitting them into evidence, which of course would require overcoming—among other objections—objections based on the hearsay rule. By presenting Tuliano, Witte, and Nebeker as narrators, the Trustee obviously hopes to avoid these fundamental requirements and have this

2

case decided on soundbites that he takes out of context from emails and other documents that may or may not have a foundational basis, and to force defendants to waste valuable trial time putting those soundbites into context. That turns the purpose of the trial, and the Trustee's burden of proof, on its head. Thus, the opinions of Tuliano, Witte, and Nebeker identified in Exhibits A to F should be precluded.

## BACKGROUND

Tuliano, Witte, and Nebeker submitted two sets of expert reports, in 2009 and 2011. Both times, the experts submitted moving and rebuttal reports, and Witte's and Nebeker's opinions were submitted as part of joint reports (the "CMAI/PGI reports").[3]

This motion does not concern all of the Trustee's experts or the full scope of their opinions. Rather, it is directed to the portions of each of the Tuliano reports and the 2011 CMAI/PGI reports in which the experts narrate facts in support of the Trustee's claims. On September 7, 2016, in accordance with the Case Management Order, the Trustee designated these reports in their entirety as the direct testimony for Tuliano, Witte, and Nebeker.

### A.    Tuliano's Expert Reports

Tuliano purports to be an expert on capital adequacy. Although all four of his reports include lengthy factual narrations, his first report on November 7, 2009, is notable for presenting an uninterrupted twenty-page section entitled "Chronology" that he asserts was prepared from the discovery record at that time. Ex. A (Tuliano Nov. 7, 2009 Report), 15. The "Chronology" includes carefully selected excerpts from dozens of emails authored by representatives of Lyondell, Basell, Access, and LBI's lenders, interspersed with Tuliano's interpretations of those

---

[3] Witte separately submitted a supplemental report in August 2011 relating to CIMBal, the black box model underlying his 2009 opinions.

3

emails. Tuliano's factual narration is largely gratuitous, as his "Chronology" bears no relation to the various financial metrics about which he purports to provide expert opinions.

Tuliano also opines on the states of mind of the various parties to the December 2007 acquisition. For example, he asserts that "management's financial projections … appear to have been materially distorted by deal bias derived from the decision to complete the acquisition of Lyondell at a premium price." *Id.* at 2. Bias is a classic example of state of mind. When asked at his deposition whether he was qualified to offer expert testimony on "deal bias," Tuliano admitted that he doubted anyone could be:

> Q. Are you an expert in determining—in identifying the existence of, quote, deal bias, close quote?
>
> A. ***I'm not sure deal bias is a field of study that you're performing that one would be qualified as an expert***, so I'm not sure I can answer your question ….

Ex. G (Tuliano Dec. 3, 2009 Tr.), 303:18-24 (emphasis added).

In his 2011 reports, Tuliano similarly uses emails and other discovery material to tell the Trustee's version of the facts and draw inferences as to the parties' intent, motives, and states of mind:

- "***Following are examples of evidence*** gleaned from the documents produced subsequent to my Initial Report ***that clearly demonstrate the distorted process*** used to update Lyondell's Refining and EC&D projections." Ex. D (Tuliano June 8, 2011 Rebuttal Report), 19 (emphasis added).

- "Contrary to LBI's optimistic view, ***the Lenders were 'pessimistic'*** with regard to LBI's ability to sustain itself through an economic downturn." Ex. C (Tuliano Feb. 28, 2011 Report), 24 (emphasis added).

For Tuliano, it is apparently "a matter of [his] practice to discern facts based upon documents," Ex. H (June 28, 2011 Tuliano Tr.), 417:8-10, so that his rendition of the facts supposedly are "opinions" he was "rendering … within the reports," *id.* at 518:18-519:10. His "practice" plainly does not comport with the Rules of Evidence.

4

### B. The CMAI/PGI Expert Reports

After expert reports were first exchanged in 2009, the Trustee amended his complaint to allege that Dan Smith fraudulently inflated Lyondell's projections to induce Basell to pay a higher price for Lyondell. After this amendment, Witte and Nebeker jointly submitted reports regarding Lyondell's "refreshed" projections.[4] Witte opined on the company's chemical projections, and Nebeker opined on the refining side.

Most of these 2011 CMAI/PGI reports are dedicated to telling the Trustee's story of how Lyondell executives purportedly manipulated the company's projections. Indeed, Witte's and Nebeker's "expert" conclusions are not really about the projections at all but rather are about Lyondell's actions and intent. As to Lyondell's refining operations, Nebeker opines that "Lyondell reverse-engineered its refining margins and volumes in its refreshing process." Ex. E (Feb. 28, 2011 CMAI/PGI report), 6. Similarly, Witte opines that "it appears" that Lyondell "back-calculated supporting margin and volume forecasts to match previously manufactured earnings projections" for its petrochemicals business. *Id.* at 26; *see also id.* at 5 ("Lyondell[] … *ignored* its own historical trough earnings experience … and the more conservative views of Lyondell's own external consultants." (emphasis added)).

To that end, Witte and Nebeker composed a "Chronology" similar to that created by Tuliano, and regurgitated the Trustee's allegations as to what Lyondell employees "considered," "ignored," and "understood." *See, e.g.*, *id.* at 20 ("Mr. Salvin *attempted to understand* CMAI's outlook for the olefins and polyolefin business.") (emphasis added); *id.* at 55 ("[I]t appears that Mr. Smith himself used the forward curve as well to support the 'refreshed' refining

---

[4] Witte and Nebeker also submitted joint reports in 2009. These reports are not at issue in this motion but are subject to independent objections.

5

projections."); *id.* at 24 ("Lyondell's internal understanding of the volatility of its EC&D business was clearly understood …."). Their rebuttal report is to the same effect. There, for example, Witte and Nebeker purport to comment on what various Lyondell employees did or knew. Ex. F (May 31, 2011 CMAI/PGI report), 18-20, 30-32 ("Mr. Salvin's notes also show that during the course of the conversation …"; "Mr. Salvin [was] unfamiliar with the back-up ….").

# ARGUMENT

The challenged testimony of Tuliano, Witte, and Nebeker is inadmissible as a threshold matter because their storytelling is not based on "scientific, technical, or other specialized knowledge" that "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a);[5] *see also In re Puda Coal Secs., Inc.*, 30 F. Supp. 3d 230, 251 (S.D.N.Y. 2014) ("Expert testimony must be helpful to, but not usurp the province of, the trier of fact."). The testimony should be excluded for the additional reason that the experts improperly offer "speculative inferences" and "interpretations of conduct or views as to the motivation of parties." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541, 547 (S.D.N.Y. 2004).[6]

### A.    The Experts Should Be Precluded From Offering Factual Narratives

Expert testimony should be excluded if the expert "does no more than counsel" will do in argument, namely argue the facts. *LinkCo, Inc. v. Fujuisu Ltd.*, 2002 WL 1585551, at *2

---

[5] The Federal Rules of Evidence are made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 9017.

[6] The Court has "broad discretion" in deciding whether to exclude expert testimony. *In re Thilman*, 2016 WL 4742226, at *4 (Bankr. E.D.N.Y. Sept. 9, 2016) (omitting internal quotation marks). Even though this case will be tried to the bench, exclusion is still warranted. *See State of New York v. UPS, Inc.*, 2016 U.S. Dist. LEXIS 123115, *2-3 (S.D.N.Y. Sept. 10, 2016) ("[T]he fact a matter may be tried to the bench [does not] signal[] a 'free for all' vis-à-vis expert witnesses … [improper] testimony is a waste of everyone's time."); *see also Haimdas v. Haimdas*, 2010 WL 652823, *3 (E.D.N.Y. Feb. 22, 2010) (granting motion to exclude proposed expert from testifying at bench trial).

(S.D.N.Y. July 16, 2002) (quoting *Primavera Familienstiftung v. Askin*, 130 F. Supp. 2d 450, 530 (S.D.N.Y. 2001)). This sort of testimony is inadmissible because it "supplant[s] the role of counsel in making argument at trial" and the role of the factfinder in deciding the facts. *Thilman*, 2016 WL 4742226, at *5 (quoting *Primavera*, 130 F. Supp. 2d at 529); *see also Levinson v. Westport Nat'l Bank*, 2013 WL 3280013, at *7 (D. Conn. June 27, 2013) (an expert "may not proffer opinions which do not draw on his expertise but merely restate otherwise properly admitted evidence"); *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005) (prohibiting an expert from "constructing a factual narrative based upon record evidence") (citations omitted).

Courts thus routinely exclude expert testimony similar to the factual narration attempted by the Trustee's experts. *See, e.g.*, *Price v. Fox Entm't Group, Inc.*, 499 F. Supp. 2d 382, 390 (S.D.N.Y. 2007) ("To the extent [the expert's] report and testimony addresses the chronology and evolution of defendants' script, I find that testimony should also be precluded under Rule 702."); *LinkCo*, 2002 WL 1585551, at *2 (excluding expert testimony where "expert [only] propound[ed] a particular interpretation of defendant's conduct") (quotation marks and alterations omitted); *Johns v. Bayer Corp.*, 2013 U.S. Dist. LEXIS 51823, at *96-97 (S.D. Cal. Apr. 10, 2013) (excluding expert report that "provides a 'chronological picture' of the development" of a pharmaceutical marketing campaign, "quoting extensively from both third-party market research reports and [the company's] own internal documents").[7]

---

[7] To be sure, in certain circumstances, an expert may be permitted to "synthesize" the academic literature or the prevailing science. *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 507 (S.D.N.Y. 2015). For instance, a historian could "helpfully synthesize dense or voluminous historical texts" or "offer background knowledge or context that illuminates or places in perspective past events." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 135-36 (2d Cir. 2013). But that is not what Tuliano, Witte, and Nebeker purport to do.

7

Here, in laying out their narratives, the Trustee's experts simply collect and summarize the information reflected in the underlying (hearsay) documents to spin a story about the various parties' conduct. These portions of the reports do not analyze the documents using specialized techniques. Instead, the experts reviewed emails, memos, and the like, and they simply plan to tell the Court how to read them. Yet the Trustee is free to make the same arguments to the Court, after he establishes his evidentiary record through the proper admission of exhibits and testimony. *See LinkCo*, 2002 WL 1585551, at *2 ("[T]estimony of fact witnesses familiar with those documents [is] far more appropriate … and renders [the expert witness'] secondhand knowledge unnecessary.") (quotations marks and citation omitted); *Media Sport & Arts S.r.L. v. Kinney Shoe Corp.*, 1999 U.S. Dist. LEXIS 16035, at *11 (S.D.N.Y. Oct. 18, 1999) ("[The expert's] testimony may not take the place … of the individuals who actually negotiated the deal …. [The] testimony [of defendants' chief negotiator] would be far more appropriate …").[8]

That the Trustee seeks to use his experts' factual narratives in place of admissible evidence is not in serious doubt. On September 7, 2016, the parties exchanged "mark-ups" of the other side's expert reports to identify those opinions they believed were improper. The Trustee had argued that, at least as to Tuliano, his recitation of the facts is merely "background." But if that were true, and the Trustee otherwise planned to lay the foundation for this background at trial, then there would be no need for it and the Trustee would have readily agreed to remove

---

[8] *See also Brown v. Mermaid Plaza Assocs., LLC*, 2016 U.S. Dist. LEXIS 95599, at *36 (E.D.N.Y. July 20, 2016) ("[I]t is far more appropriate for [the fact witness] to provide testimony as to the paving proposal he created, rather than have [his expert] provide a 'secondhand' opinion …") (citation omitted); *Rezulin*, 309 F. Supp. 2d at 551 (rejecting portions of expert's testimony that were "a narrative reciting selected regulatory events" because "[s]uch material, to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence"); *Ridge Clearing & Outsourcing Solutions, Inc. v. Khashoggi*, 2011 U.S. Dist. LEXIS 91353, at *5 (S.D.N.Y. Aug. 12, 2011) ("Simply rehashing evidence about which an expert has no personal knowledge is impermissible under Rule 702.") (citations omitted).

8

the disputed portions of Tuliano's report. Instead, he designated all of it as part of Tuliano's direct testimony. With respect to Witte and Nebeker, their narration of how Lyondell prepared the "refreshed" projections is virtually all they have to offer in their 2011 reports. The importance of their storytelling to the Trustee's case at trial is apparent from the fact that the Trustee is not calling live any fact witness to corroborate Witte and Nebeker's secondhand story.[9] The bottom line is, this case involves billions of dollars, and the Trustee must present his case as required by the Federal Rules, not through the use of shortcuts such as his experts.

### B. The Experts Should Be Precluded From Testifying About States Of Mind

Tuliano, Witte, and Nebeker also purport to form conclusions about the parties' intent and state of mind. *See., e.g.*, Ex. A (Tuliano Nov. 7, 2009 Report), 2 ("[M]anagement's financial projections … appear to have been materially distorted by deal bias …"); *id.* at 19 ("Internally, senior members of Mr. Blavatnik's team … expressed concern in response to the possible acquisition of Lyondell"); Ex. D (Tuliano June 8, 2011 Rebuttal Report), 24 ("[B]ased upon my review of the record, it appears the Access Revolver was intended to provide an appearance of liquidity …").

But the question of a party's intent or state of mind (assuming state of mind is even relevant) is quintessentially the province of the trier of fact. *See Rezulin*, 309 F. Supp. 2d at 546 ("[T]he opinions of [expert] witnesses on the intent, motives, or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise.");

---

[9] To the extent that the Trustee does ***not*** intend to call the authors of the documents cited in his report, he cannot use his experts as a means to introduce improper hearsay. *See, e.g.*, *Marvel*, 726 F.3d at 136 ("Although the Rules permit experts some leeway with respect to hearsay evidence, … a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony…. The appropriate way to adduce factual details of specific past events is, where possible, through persons who witnessed those events.") (quotation marks and citations omitted).

*In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (granting motion to exclude expert testimony "as to the knowledge, motivations, intent, state of mind, or purposes of the [defendant and] its employees," and noting that the expert conceded that her regulatory expertise "does not give her the ability to read minds"); *Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 2011 WL 6288415, at *8 (S.D.N.Y. Dec. 15, 2011) ("There is no dispute that opinions concerning state of mind are an inappropriate topic for expert opinion."). The testimony of Tuliano, Witte, and Nebeker should be excluded for this reason as well.

## CONCLUSION

The Court should preclude the Trustee from proffering the highlighted sections of Exhibits A to F.

Dated: September 20, 2016
       New York, New York

                                    QUINN EMANUEL URQUHART
                                     & SULLIVAN, LLP

                                    By: /s/ *Richard I. Werder, Jr.*

                                    Richard I. Werder, Jr.
                                    Susheel Kirpalani
                                    Rex Lee
                                    Nicholas Hoy

                                    51 Madison Avenue, 22nd Floor
                                    New York, New York 10010
                                    (212) 849-7000

                                    *Attorneys for Defendants Access Industries, Inc., Access Industries Holdings LLC, Nell Limited, AI International S.à.r.l., Len Blavatnik, Lincoln Benet, and Philip Kassin*

10