**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LYONDELL CHEMICAL COMPANY, *et al.*,<br><br>　　　　　　　　　　　　　Debtors. | <u>**FOR PUBLICATION**</u><br><br>Chapter 11<br><br>Case No. 09-10023 (GCM)<br><br>(Jointly Administered) |
| EDWARD S. WEISFELNER, AS TRUSTEE OF THE LB LITIGATION TRUST,<br><br>　　　　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>LEONARD BLAVATNICK, *et al.*,<br><br>　　　　　　　　　　　　　Defendants. | Adv. Pro. No. 09-1375 (MG) |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART ACCESS DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE CERTAIN TESTIMONY OF RALPH TULIANO, DAVID WITTE, AND H.G. NEBEKER**

Before the Court is the *Access Defendants'*[1] *Motion in Limine to Preclude Certain Testimony of Ralph Tuliano, David Witte, and H.G. Nebeker*, filed on September 20, 2016 (the "Motion," ECF Docs. ## 823, 828). The Motion is supported by the Declaration of Richard I. Werder Jr. (the "Werder Declaration," ECF Doc. # 828), which attaches highlighted copies of the expert reports of Tuliano, Witte, and Nebeker. Edward S. Weisfelner, as Litigation Trustee of the LB Litigation Trust (the "Trustee") filed an opposition to the Motion on September 27, 2016 (the "Opposition," ECF Doc. # 827).

---

[1] The "Access Defendants" are Access Industries, Inc., Access Industries Holdings LLC, AI International S.à.r.l, Nell Limited, Len Blavatnik, Lincoln Benet, and Philip Kassin.

For the reasons explained below, the Motion is **GRANTED IN PART** and **DENIED IN PART.**

## I. BACKGROUND

### A. This Adversary Proceeding

Judge Gerber provided a summary of the facts of this case in his January 4, 2016 decision dismissing Count VII of the Amended Complaint:

> In late December 2007, Basell AF S.C.A. ("Basell"), a Luxembourg entity controlled by Leonard Blavatnik ("Blavatnik"), acquired Lyondell Chemical Company ("Lyondell"), a Delaware corporation headquartered in Houston—forming a new company after a merger (the "Merger"), LyondellBasell Industries AF S.C.A. (as used by the parties, "LBI," or here, the "Resulting Company"), Lyondell's parent—by means of a leveraged buyout ("LBO"). The LBO was 100% financed by debt, which, as is typical in LBOs, was secured not by the acquiring company's assets, but rather by the assets of the company to be acquired. Lyondell took on approximately $21 billion of secured indebtedness in the LBO, of which $12.5 billion was paid out to Lyondell stockholders. In the first week of January 2009, less than 13 months later, a financially strapped Lyondell filed a petition for chapter 11 relief in this Court. Lyondell's unsecured creditors then found themselves behind that $21 billion in secured debt, with Lyondell's assets effectively having been depleted by payments of $12.5 billion in loan proceeds to stockholders. Lyondell's assets were allegedly also depleted by payments incident to the LBO and the Merger—of approximately $575 million in transaction fees and expenses, and another $337 million in payments to Lyondell officers and employees in change of control payments and other management benefits. Those events led to the filing of what are now five adversary proceedings—. . . [and] this action, which was originally the first of the five—against Blavatnik and companies he controlled; Lyondell's officers and directors; and certain others.

*Weisfelner v. Blavatnik (In re Lyondell Chemical Co.)*, 543 B.R. 428, 432–33 (Bankr. S.D.N.Y. 2016) (footnotes omitted). Trial is scheduled to begin on October 17, 2016.

### B. The Expert Reports

Tuliano, Witte, and Nebeker (the "Experts") each submitted two sets of moving and rebuttal expert reports, first in 2009 and then in 2011 (the "Expert Reports"). Both times, Witte's and Nebeker's opinions were submitted in joint reports (the "CMAI/PGI Reports"). Tuliano opines on corporate solvency, Witte opines on Lyondell's chemical projections, and Nebeker opines on Lyondell's refining projections. All four of Tuliano's reports are at issue in this Motion, while only the 2011 CMAI/PGI Reports are at issue. (Motion at 5.)

### C. The Parties' Contentions

#### 1. The Access Defendants' Contentions

The Access Defendants now move to preclude portions of the Experts' testimony on the grounds that the challenged testimony (i) "weave[s] a factual tale that—assuming the documents and testimony at issue are admissible—the Trustee's counsel is equally capable of arguing" and/or (ii) contains "speculation as to the states of mind of various parties." (Motion at 2–3.)

First, the Access Defendants contend that the challenged testimony merely "argue[s] the facts" and is therefore inadmissible. (*Id.* at 6–7.) Expert testimony that constructs a "factual narrative" is inadmissible, the Access Defendants argue, because it "supplant[s] the role of counsel in making argument at trial" and "the role of the factfinder in deciding the facts." (*Id.* at 7.) The Access Defendants argue that the Experts "simply collect and summarize the information reflected in the underlying (hearsay) documents," rather than "analyz[ing] the documents using specialized techniques." (*Id.* at 8.) The Access Defendants further argue that the Trustee may make the same argument to the Court after properly admitting the underlying factual evidence, and that "secondhand" expert testimony is inappropriate. (*Id.*)

Second, the Access Defendants argue that the Experts make conclusions about the parties' states of mind and intentions, which are inadmissible because "the question of a party's

3

intent or state of mind . . . is quintessentially the province of the trier of fact." (*Id.* at 9.) The Access Defendants cite sections of the challenged testimony opining, for example, that "[M]anagement's financial projections . . . appear to have been materially distorted by deal bias" and "it appears the Access Revolver was intended to provide an appearance of liquidity." (*Id.*) These conclusions, the Access Defendants contend, concern the parties' state of mind and are therefore "an inappropriate topic for expert opinion." (*Id.* at 10.)

        2.     *The Trustee's Contentions*

The Trustee argues that Federal Rule of Evidence (the "Rules") 703 permits an expert to "base an opinion on facts or data in the case that the expert has been made aware of." (Opp. at 9.) The Trustee contends that the challenged testimony is not a mere conduit for hearsay because the "vast majority" of the evidence on which the Experts rely is admissible. (*Id.* at 9.) But even if the evidence were inadmissible, the Trustee argues, Rule 703 permits an expert to rely on hearsay "[i]f experts in the particular field would reasonably rely on those kinds of facts or data." (*Id.*) The Trustee contends that because this case concerns "complex and highly technical industries," expert analysis "*must* acknowledge the facts surrounding relevant financial projections." (*Id.* at 13 (emphasis in original).)

Although the Trustee concedes that "states of mind and the credibility of witnesses are not a subject for expert testimony," the Trustee contends that the Experts are merely "drawing inferences from the facts and documents," not opining on parties' states of mind. (*Id.* at 16–17.) The Trustee argues that "where the record does not reflect a process of formulating reasonable assumptions, an expert may appropriately draw the inference that that relevant data was 'ignored.' Furthermore, when relevant data is not relied upon and where disregarding that data serves the interests of parties to a deal, an expert may appropriately draw an inference of 'deal bias.'" (*Id.*)

4

The Trustee makes two additional arguments: first, the Rules' approach to expert testimony should be construed particularly liberally in a bench trial like this one, where the risk of prejudice is "minimal or non-existent." (*Id.* at 10.) Second, the Motion should be denied for lack of specificity because the Access Defendants' objections are "inconsistently applied" and highlight all contested portions of the Experts' reports, without noting which objections are based on "storytelling" and which on state of mind testimony. (*Id.* at 18–19.)

## II. LEGAL STANDARD

### A. Motions *in Limine*

"The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 467 (S.D.N.Y. 2005) (quoting *Palmieri v. Defaria,* 88 F.3d 136, 141 (2d Cir.1996)). "However, evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, No. 09 CIV. 3255, 2012 WL 2568972, at *2 (S.D.N.Y. July 3, 2012) (internal quotation marks and citations omitted). Further, the Court may reserve judgment on the motion until the appropriate factual context is developed at trial. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996).

### B. Admission of Expert Testimony

Rule 702 governs the admission of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or

5

>
> data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court tasked trial judges with "ensur[ing] that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. This responsibility emanates from Rule 702's requirement that "*scientific*, technical, or other specialized *knowledge will assist the trier of fact* to understand the evidence or to determine a fact in issue." *Id.* (quoting FED. R. EVID. 702) (emphasis in original). The Supreme Court extended the trial court's "gatekeeping" role to "technical" and "other specialized" knowledge in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting FED. R. EVID. 702).

The "fundamental" requirement that expert testimony must "assist the trier of fact," *id.* at 540, obligates the Court to "determine whether the testimony 'usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it.'" *Highland Capital Mgmt.*, 379 F. Supp. 2d at 468 (quoting *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999)). "Examples of 'expert' testimony that courts have excluded on this basis include factual narratives and interpretations of conduct or views as to the motivation of parties." *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004); *see, e.g., Taylor v. Evans*, No. 94 CIV. 8425 (CSH), 1997 WL 154010, at *1–2 (S.D.N.Y. Apr. 1, 1997) (affirming preclusion of expert report "replete with . . . speculations on defendants' state of mind" and addressing "factual issues which could be understood without the aid of expert testimony"). An expert report that serves as a mere "conduit" for hearsay likewise infringes the role of the factfinder because "the job[] of judging [the hearsay] witnesses' credibility and drawing inferences from their testimony belongs to the factfinder." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) (affirming exclusion of expert report

6

"undergirded by hearsay statements"). "Although the Rules permit experts some leeway with respect to hearsay evidence, FED. R. EVID. 703, a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *Id.*

The upshot of Rule 702's helpfulness requirement is that the proffered expert testimony must actually help the factfinder "understand facts that are *outside common understanding*." *LinkCo, Inc. v. Fujitsu Ltd.*, 2002 WL 1585551 at *1 (S.D.N.Y. July 16, 2002) (emphasis added). An expert thus may not merely recite a factual narrative that does not draw technical or scientific conclusions. In *LinkCo*, the court excluded in its entirety an expert report that offered an extended factual narrative, because it did "not address technical questions that may be difficult for a juror to comprehend. Instead, it contain[ed] arguments and conclusory statements about questions of fact masquerading behind a veneer of technical language." *Id.* at *1–2. The report, which was "based on an independent examination of documents, . . . deposition transcripts and exhibits," was inadmissible for the additional reason that firsthand "testimony by fact witnesses familiar with those documents would be far more appropriate." *Id.* at 2 (quoting *Media Sport & Arts s.r.l. v. Kinney Shoe Corp.*, No. 95 CIV. 3901 (PKL), 1999 WL 946354, at *3 (S.D.N.Y. Oct. 19, 1999)). *See also, e.g., In re Fosamax Prod. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (excluding in part expert's report because experts may not "regurgitate the evidence") (internal quotation marks omitted); *Highland Capital Mgmt.*, 379 F. Supp. 2d at 468–69 (stating that "to the extent that [the expert] is simply rehashing otherwise admissible evidence about which he has no personal knowledge, such evidence—taken on its own—is inadmissible."); *In re Rezulin*, 309 F. Supp. 2d at 551 (excluding in part expert testimony because the testimony was "merely a 'narrative of the case which a juror is equally capable of

7

understanding'") (quoting *Taylor*, 2012 WL 154010, at 2); *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 530 (S.D.N.Y. 2001) (concluding that expert who offers factual conclusions dependent on his own interpretation of deposition testimony "does no more than counsel for the [plaintiff] will do in argument, *i.e.,* propound a particular interpretation of [the defendant's] conduct").

Additionally, Rule 702's "requirement of 'knowledge' guards against the admission of subjective or speculative opinions." *In re Rezulin*, 309 F. Supp. 2d at 541 (citing *Daubert*, 509 U.S. at 590 (stating that "the word 'knowledge' connotes more than subjective belief or unsupported speculation")). Therefore, no expert may opine on parties' states of mind or intent. *See, e.g., id.* at 546 ("[T]he opinions of [expert] witnesses on the intent, motives, or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise."); *In re Fosamax*, 645 F. Supp. 2d at 192 (granting motion to preclude expert from "testifying as to the knowledge, motivations, intent, state of mind, or purposes" of parties because "[t]his is not a proper subject for expert or even lay testimony"); *Highland Capital Mgmt.*, 379 F. Supp. 2d at 469 (excluding expert report narrative that contained the expert's "own speculation regarding the state of mind and motivation of certain parties," such as an assertion that an individual was "likely aware" of certain facts); *LinkCo*, 2002 WL 1585551, at *3 (excluding expert testimony that "Fujitsu recognized the importance of entering the electronic disclosure market" based on review of deposition testimony and expert's own factual timeline). While the risk of prejudice from expert reports containing improper narrative and speculation about motives and states of mind is less in a bench trial, the Rules and case law discussed above nevertheless apply, perhaps with some leeway, but not to the extent contained in the challenged expert reports.

8

### III.  ANALYSIS

As a preliminary matter, this Court declines to rule on potential hearsay objections to the documents underlying the Expert Reports at the current time.  Documents may be introduced in their appropriate context at trial, and the Court will consider any objections at that time.  *See Nat'l Union Fire Ins. Co.*, 937 F. Supp. at 287.

#### A.  The Experts' Factual Narratives Are Inadmissible

Tuliano's November 2009 report begins with a 21-page "Chronology" (Motion Ex. A at 15–35) which Tuliano explains was "prepared based primarily upon contemporaneous communications between and among the parties to the LBO, as well as various contemporaneous documents, summaries and analyses prepared by the parties"—in other words—the discovery record.  (*Id.* at 15.)  The Access Defendants seek to exclude the Chronology (among other sections of the Expert Reports) because it intersperses excerpts from e-mails and other documents in the discovery record with Tuliano's own interpretations and "bears no relation to the various financial metrics about which he purports to provide expert opinions."  (Motion at 3–4.)  The Access Defendants also seek to exclude the section of the February 2011 CMAI/PGI Report entitled "Basic Chronology of the Refresh Process" for substantially the same reasons. (*See* Motion Ex. E at 6–11.)

The Court agrees.  Tuliano's and CMAI/PGI's chronologies quote numerous cherry-picked examples from the discovery record, including among other things internal Access and Basell e-mails and presentations, external press releases, and board minutes.  (*See, e.g.,* Motion Ex. A at 19 (e-mails), 20 (presentations), 21 (press release), 22 (board minutes); Motion Ex. E at 8 (e-mails and depositions), 9 (handwritten notes).)  Tuliano weaves these examples into a timeline along with his own characterizations of the record: observing, for example, that "[b]y mid-November 2007, it was apparent that the Lenders would be unable to successfully syndicate

9

Lyondell's term debt" (*id.* at 24) and "LBI's liquidity situation led to urgent negotiations with the Lenders and Access to infuse the Company with additional liquidity and modify its financial covenants." (*Id.* at 27.) This selection, organization, and characterization of excerpts from the discovery record is "no more than counsel . . . will do in argument." *Primavera*, 130 F. Supp. 2d at 530. Such cherry-picking and editorializing is exactly the type of "factual narrative" that courts routinely exclude because it invades the province of the factfinder by merely "regurgitat[ing] the evidence." *In re Fosamax*, 645 F. Supp. 2d at 192. And although the CMAI/PGI chronology contains less editorializing and characterization than Tuliano's, this type of extended factual narrative based on the record is not helpful to the factfinder because "testimony by fact witnesses familiar with those documents would be far more appropriate." *LinkCo*, 2002 WL 1585551 at *1.

To the extent the reports contain additional factual narratives and cherry-picking of evidence, those sections must also be excluded. For example, on page 91 of the November 2009 report, Tuliano opines that "[a]s of March 11, 2008 LBI was estimating it could have a $155 [million] shortfall in cash in the coming weeks absent immediate action." (Motion Ex. A at 91.) Tuliano follows this opinion with excerpts selected from four internal Access e-mails, along with Tuliano's own interpretation and commentary. (*Id.*) And on page 6 of his February 2011 report, Tuliano again quotes extensively from e-mails in the discovery record and adds his own color, describing LBI's April 2008 request to draw from the Access Revolver as "met with incredulity." (Motion Ex. C at 6.) Like the chronologies, this type of narrative is inappropriate for expert testimony. If the Trustee wishes to bring these documents into evidence, he may seek to introduce them at trial through appropriate fact witnesses.

10

The Trustee's comparison of the Expert Reports with the Examiner's Report of Arthur J. Gonzalez (the "Examiner") in *In re Residential Capital*, Case No. 12-12020, is inapposite. The Examiner was appointed by the Court to conduct a detailed investigation, not to testify as an expert witness. *See* Order Approving Scope of Investigation of Arthur J. Gonzalez, Examiner (Case No. 12-12020, ECF Doc. # 925). And the Trustee cites no authority holding that extended factual narratives, unrelated to technical or specialized conclusions, constitute appropriate expert testimony. *See, e.g.*, *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, No. 09 Civ. 3255, 2012 WL 2568972, at *16 (S.D.N.Y. July 3, 2012) (acknowledging in general terms that experts may make assumptions, but not considering an extended factual narrative); *Feinberg v. Katz*, No. 01 Civ. 2739 (CSH), 2007 WL 4562930, at *4 (S.D.N.Y. Dec. 21, 2007) (same).

However, the request to exclude testimony because the underlying documents are potentially hearsay, or where the experts' record reliance is closely tied to technical conclusions, must be denied. The Access Defendants object to multiple sections of the Expert Reports for no other apparent reason than that the experts briefly quote from or cite to deposition testimony and internal e-mails in the context of technical testimony. (*See, e.g.,* Motion Ex. A at 39; Motion Ex. B at 13; Motion Ex. E at 29–30.) Experts receive some "leeway" regarding hearsay evidence. *Marvel*, 726 F.3d at 136. A report is not merely a "conduit for hearsay" when the expert's reliance on the record is closely tied to the formation of his opinions or conclusions: for example, quoting briefly from deposition testimony regarding volatility in crude oil prices to support his conclusion that the petrochemical and refining industries were "[k]nown" to be cyclical and highly volatile is admissible. (*See* Motion Ex. A at 36–39.)

11

### B. The Experts May Not Opine as to Parties' State of Mind, Intent, or Motivations

The parties agree that state of mind is not an appropriate subject for expert testimony. (*See* Opp. at 17.) The question, then, is what testimony is rightfully excluded as opinion on state of mind, and which testimony merely constitutes "inferences from the facts and documents in a case" as the Trustee contends. (*Id.*) The Court applies the following guidelines in determining what portions of the reports should be excluded:

- *Testimony that documents or information were "ignored" or otherwise not considered*: inadmissible, because without supporting evidence, a conclusion that a document was "ignored" is impermissible speculation on state of mind. *See Highland Capital Mgmt.*, 379 F. Supp. 2d at 469 (excluding assertion that an individual was "likely aware" of certain facts). The only way an expert could know if a document was considered is if there is evidence or testimony from the fact witness stating whether he or she actually ignored or considered the document.

- *Testimony that certain witnesses "expressed concern" or were "optimistic" or "pessimistic"*: admissible, if merely characterizing documentary evidence such as e-mails. The Court notes that such characterizations may carry less weight than the actual text of the underlying documents.

- *Statements of parties' motivations, bias, and intent*: inadmissible as state of mind opinion. Any testimony about a party's motivation, reason for acting, or intent without supporting evidence is speculation and therefore an inappropriate subject for expert testimony. *See In re Rezulin*, 309 F. Supp. 2d at 546 ("[T]he opinions of [expert] witnesses on the intent, motives, or states

12

  of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise.").

- *Testimony that projections were "backed into" or "reverse-engineered"*: admissible, if based on documentary evidence, industry practice, or other appropriate technical analysis. Such testimony concerns the parties' actions, not states of mind.

Applying the above principles, the Court finds that testimony that parties ignored, "appear[ed] not to have incorporated" (*see* Motion Ex. E at 24), "made [a characterization] without a critical assessment" (*see* Motion Ex. A at 52), or otherwise did not consider certain information in forming Lyondell's projections should be excluded. Without factual evidence that a party was aware of information but chose to ignore it, any testimony about what a party ignored or did not consider is mere speculation. Likewise, testimony that Lyondell managers were affected by "bias" or that Lyondell projections were "prepared with . . . bias" (*see, e.g.,* Motion Ex. A at 2, 43, 50) is inappropriate because it speculates on parties' states of mind. The Access Defendants' other objections on the basis that the Expert Reports opine on state of mind, including that parties were "optimistic" or "pessimistic" and that Lyondell's projections were reverse-engineered, are without merit. Experts are entitled to draw inferences and conclusions from facts, and as long as this testimony is grounded in the factual evidence, it is not impermissibly speculative.

## IV. CONCLUSION

For the reasons discussed above, the Motion is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** to the extent that the following testimony shall be excluded: (i) factual narratives and chronologies; (ii) testimony that documents or information were "ignored" or otherwise not considered; and (iii) statements of parties' motivations, bias, and

13

intent. The remainder of the Motion is **DENIED**. Because this is a bench trial, the Court will not create a blackline striking the portions of testimony to be excluded, nor is the Trustee required to submit amended expert reports. In considering the evidence, the Court will disregard those portions of the Expert Reports that are not properly admitted in evidence.

**IT IS SO ORDERED.**

Dated:  October 11, 2016
       New York, New York

                                                             **/s/Martin Glenn**
                                                             MARTIN GLENN
                                       United States Bankruptcy Judge