**BROWN RUDNICK**

SIGMUND S. WISSNER-GROSS
direct dial: (212) 209-4930
fax: (212) 938-2804
swissnergross@brownrudnick.com

Seven
Times
Square
New York
New York
10036
tel 212.209.4800
fax 212.209.4801

October 13, 2016

**VIA ECF**

The Honorable Martin Glenn
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004-1408

**RE:    Weisfelner v. Blavatnik, et al., Adv. Pro. No. 09-1375 (MG)**

Dear Judge Glenn:

      We submit this letter to address the admissibility of 210 Lyondell or LBI documents that are certified by declarations of Douglas J. Pike. The defendants have lodged hearsay objections as to some (but not all) of these documents, ostensibly on the grounds that they are emails and that emails can never satisfy the business records exception to the hearsay rule. The defendants' argument is both factually and legally incorrect. Factually, among the documents included in the Pike declarations are various classic business records, such as annual reports, financial presentations, and tax returns; as well as emails that consist of communications regarding business matters among high-level managers and other knowledgeable personnel. As to the emails, many are not assertions of fact at all, or are otherwise relevant regardless of their truth. Legally, even for the subset of emails that contain assertions of fact offered for their truth, there is no *per se* rule disqualifying emails from satisfying the business records exception to the hearsay rule. Of course, neither is the converse true—emails on business servers are not automatically business records, and the Trustee has never claimed otherwise. Rather, emails may qualify as business records, and they may not, depending on the foundation laid and the nature of the record embodied in the email. The Pike declarations lay the proper foundation, and the documents are admissible.[1]

**Description of the Documents at Issue**

      As discussed with the Court on September 9, 2016, the Trustee intends to offer certain documents pursuant to declarations of Douglas J. Pike. LBI selected Mr. Pike as the declarant due to

---

[1] Certain documents are also admissible pursuant to deposition designations that the Trustee intends to offer in evidence. To the extent it is necessary to offer such documents pursuant to that alternate ground, the Trustee will do so after offering the deposition designations. Moreover, even if certain of the documents are not independently admissible, to the extent they are relied upon by experts, that reliance is permitted for at least two reasons. First, the Trustee's experts may point to certain of these documents in order to explain what he did in reaching his opinions. In this circumstance, the explanation is not a hearsay purpose for using the document. Second, Fed. R. Evid. 703 and 803(18) expressly provide that experts may rely on materials that would not themselves be admissible. In other words, even if the documents are not independently admitted, the portion of an expert report discussing the document is nevertheless admissible.

his long and senior tenure at Lyondell and LBI. Mr. Pike is the Director of Investor Relations for Lyondell Chemical Company and other affiliated companies of LyondellBasell ("Lyondell"), and he has been employed at Lyondell or its predecessor companies since 1977. He has signed two declarations, which are substantively nearly identical, but which relate to two separate sets of documents. The first, dated September 21, 2016, and attached hereto as Exhibit A, relates to pre-merger Lyondell documents. The second, dated October 3, 2016 and attached hereto as Exhibit B, relates to post-merger LBI documents (collectively, the "Pike Declarations"). Each declaration attaches a list of documents that are the records of Lyondell or LBI.[2]

There are a total of 210 documents referenced in the Pike Declarations.[3] Three of those documents are joint exhibits, and the defendants have only asserted objections to 121 of the remainder. Most of the documents and emails that the Defendants object to were created by legacy-Lyondell employees in the critical time period between May 2007, when Len Blavatnik acquired the toe-hold position in Lyondell and filed the 13D, and December 2007, when the Merger closed. Of these 121 objected-to documents, thirty-five (35) are not emails at all, but rather are tax returns, annual reports, or financial presentations. Thirty-four (34) are non-substantive emails that merely transmit internal presentations or documents without commentary. Thirty-three (33) are emails that are (i) not hearsay, because they do not contain statements of fact, but rather pose questions or provide instructions, or (ii) are relevant regardless of the truth of any matters asserted and thus are not barred by the rule against hearsay. Finally, twenty-nine (29) are emails that, at least in part, contain assertions of fact offered for their truth (many of which are also relevant regardless of the truth of the assertion). In other words, to the extent the defendants' argument relates to the purported inability of emails to satisfy the business records exception to the hearsay rule, their argument applies only to these twenty-nine (29) emails that contain assertions of fact, and then only to those assertions. A listing of the objected-to documents, color coded to identify the above group that each document falls into, is attached as Exhibit E.

**The Pike Declarations**

As expressly contemplated by Rule 803(6) and 902(11), the Trustee has elected to save trial time by establishing by declaration that the documents referenced in the Pike Declarations were made and kept in the ordinary course of business. In particular, Mr. Pike states that he is "familiar with internal business-related financial reporting and forecasting activities at Lyondell, both prior to the merger in December 2007, and post-merger." Pike Declarations at ¶ 2. Mr. Pike declared that "it was and is a regularly conducted activity of Lyondell (and its corporate development, corporate finance, and treasury personnel) to collect, analyze and generate financial information and reports about Lyondell and its business units," and "Lyondell personnel regularly and routinely requested and provided (and request and provide) such information and report to each other by email." Id. at ¶ 3 ("Those emails were and are made and kept as a regular practice."). Moreover, Mr. Pike

---

[2] Attached hereto as Exhibits C is the Declaration of Barbara Heimann, which certifies that the documents covered by the first Pike Declaration, dated September 19, 2016, were retrieved from Lyondell's records and produced in this litigation. Because Defendants have repeatedly stated that they are not challenging the authenticity of these documents, the Trustee does not understand this certification to be the subject of Defendants' challenge to the admissibility of the documents covered by the Pike Declarations.

[3] Attached hereto as Exhibit D is a list of all 210 documents referenced in the Pike Declarations, cross-referenced to their current PX or JX number, and indicating Defendants' admissibility objections (see Joint Pre-Trial Order, Ex. C [Dkt. No. 836]).

declared that "Lyondell personnel regularly provided and provide those reports to managers, executives, and others involved in the management or operation of the company, and in certain cases to others such as banks and ratings agencies." Id. at ¶ 3. Mr. Pike reviewed each of the 210 documents listed on the schedules attached to the Pike Declarations. Id. at ¶ 4; Ex. B at ¶ 4. Mr. Pike declared that the documents listed "comprise financial reports and forecasts prepared by Lyondell personnel, tax returns, and business-related emails authored and received by Lyondell personnel in the regular course of Lyondell's business," and they "constitute examples of the above-described regularly conducted activity of Lyondell personnel as described in paragraph 3." Id. Thus, the listed documents "were made at or near the time period to which they relate," "were made by, or from information transmitted by, a person with personal knowledge of the matters set forth therein," "were kept in the regular course of Lyondell's business," and "were made as part of the regular practice of Lyondell." Id. at ¶ 5.

### The Documents Listed in the Pike Declarations Are Admissible

The documents listed in the Pike Declarations are admissible, either for various non-hearsay purposes, or pursuant to the Pike Declarations' business records foundation establishing that they are admissible under Fed. R. Evid. 803(6). Rule 803(6) provides that a "record of an act, event, condition, opinion, or diagnosis" is "not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness," if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). The Second Circuit "has adopted 'a generous view' of the business records exception, 'construing it to favor [] the admission of evidence . . . if it has any probative value at all.'" United States v. Strother, 49 F.3d 869, 874 (2d Cir. 1995) (quoting United States v. Freidin, 849 F.2d 716, 722 (2d Cir. 1988) (alterations in original); see Phoenix Assocs. III v. Stone, 60 F.3d 95, 101 (2d Cir. 1995) (same). The custodian laying the foundation for the business record exception to apply "need not have personal knowledge of the actual creation of the document," nor "is there any requirement under Rule 803(6) that the records be prepared by the party who has custody of the documents and seeks to introduce them into evidence." Phoenix Assocs. III, 60 F.3d at 101 (quoting 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence, at 803-201-04 (1994)). "Rather, all that is required is proof that 'it was the business entity's regular practice to get information' from the person who created the document." Id. (quoting Saks Int'l v. M/V 'EXPORT


CHAMPION', 817 F.2d 1011, 1013 (2d Cir. 1987)); see United States v. Stein, No. S1 05 Crim. 0888 (LAK), 2007 WL 3009650, at *1 (S.D.N.Y. Oct. 15, 2007) ("regularity of making such records and of the business activity is all that is required").

"Rule 803(6) focuses on the regularity of the record keeping process, not on its form"; thus, that the records are "written in an irregular and shorthand manner" or are characterized as "erratic" is "simply irrelevant." Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd. (In re Japanese Electronics Products Antitrust Litig.), 723 F.2d 238, 290 (3d Cir. 1983), rev'd on other grounds by Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). "Case law holds "that conventional letters, memos, or notes are admissible under the business records exception if they are regularly made in furtherance of the employer's needs and not for the personal purposes of the employee who made them." Penberg v. Healthbridge Mgmt., 823 F. Supp. 2d 166, 187 (E.D.N.Y. 2011) (quoting Canatxx Gas Storage Ltd. v. Silverhawk Capital Partners, LLC, No. H-06-1330, 2008 WL 1999234, at *12 (S.D. Tex. May 8, 2008)). "Courts have applied a similar approach to emails." Id. (quoting Canatxx Gas Storage Ltd., 2008 WL 1999234 at *12); see Stein, 2007 WL 3009650 at *1. In Penberg, for instance, the testimony relied on to support the admission of emails was not from "the person actually preparing the email"; the person who prepared the email had "not testified regarding the preparation of the email." 823 F. Supp. 2d at 188. Rather, the Court admitted the emails based on testimony of the CEO that "indicated that it was the regular business practice of [a division of the company] for [the person who prepared the email] to share the type of information contained in the email with [the CEO] and that it was their regular business practice and [the email preparer's] duty to email clients with information such as that included in the email." Id. at 189; see Canatxx Gas Storage Ltd., 2008 WL 1999234 at *13 (finding affidavit sufficient to lay business records foundation where it stated "that the email was made and maintained in the normal course of [the entity's] business by a person with knowledge right after the matters set forth in the email," which was "sufficient to show that [the entity] maintained the email as a regular part of its business activities").

Among the requirements of Rule 803(6), "the principal precondition to admissibility is that the record has sufficient indicia of trustworthiness to be considered reliable." Phoenix Assocs. III, 60 F.3d at 101 (internal quotation marks and modifications omitted) (quoting Saks Int'l, 817 F.2d at 1013). It has been noted that emails offer additional indicia of trustworthiness:

> E-mail messages are usually accompanied by transmittal information which contains the names of the sender and receiver, as well as the time and date the record was created. The time and date information provides a valuable tool for judges in determining whether the record was made in a timely fashion as required by FRE 803(6). The name of the sender helps establish that the record was made by someone 'with knowledge,' a further requirement of FRE 803(6). Such a feature also makes the recordmaker accountable for the information contained within the record, which in turn assures e-mail's trustworthiness. E-mail's unique features also serve to avoid the problems of misperception that cause hearsay documents to be disfavored. With e-mail, the substance of the record, as well as its transmittal information, is electronically memorialized. While these factors alone may not be dispositive in establishing e-mail as a

> record under FRE 803(6), they may serve as added assurances of the document's accuracy.

Andrew J. Dreyer, When the Postman Beeps Twice: The Admissibility of Electronic Mail Under the Business Records Exception of the Federal Rules of Evidence, 64 Fordham L. Rev. 2285, 2323 (Apr. 1996).[4]

It should be noted that certain courts, including Penberg, have also stated that an email may qualify for the business records exception if "the employer imposed a business duty to make and maintain" the emails. Penberg, 823 F. Supp. 2d at 187. However, as Judge Kaplan explained, in rejecting a blanket objection to the admission of emails as business records:

> Although the phrase "business duty" appears frequently in Rule 803(6) cases, the defendants read the phrase too narrowly. The phrase "business duty" is used interchangeably with phrases such as "being part of a business routine" or "acting in the regular course" to describe the requirement that the declarant be someone inside the business, not a third party.

Stein, 2007 WL 3009650, at *1 (internal brackets omitted). Accordingly, a "specific showing" that "e-mails at issue were created pursuant to established company procedures for the systematic or routine making of company records" is "not required"; rather "regularity of making such records and of the business activity is all that is required." Id.; see Parker v. Reda, 327 F.3d 211, 214 (2d Cir. 2003) ("Business records are made reliable by 'systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by duty to make an accurate record as part of a continuing job or occupation.'" (quoting Fed. R. Evid. 803(6) Advisory Comm. Note)).

Under these standards, the documents listed in the Pike Declarations are admissible. First of all, the three joint exhibits and the eighty-six (86) exhibits the defendants have not objected to should be admitted. Second, the thirty-five (35) documents comprising tax returns, projection documents, annual reports, and other non-email documents fall outside the defendants' expressed argument (that emails cannot be business records), are classic business records, and are admissible

---

[4] Indeed, at least one court has admitted an email under the residual hearsay exception, despite finding that there was no business records foundation established for the email. Stamm v. New York City Transit Auth., No. 04-CV-2163 (SLT) (JMA), 2013 WL 244793, at *10 (E.D.N.Y. Jan. 22, 2013) (rejecting argument that emails were "obviously . . . records maintained by NYCTA in the ordinary course of business"). The Court reasoned that the sender of the email "was attempting to be precise and knew his co-workers would rely on his statements," and thus that "there are circumstantial guarantees of trustworthiness equivalent to those underlying the business records exception." Id. The Stamm court also found that the email evidence was "more probative on the material issue of [when the defendant was notified of a critical fact] than any other evidence the Defendants were able to obtain." Id. This reasoning is equally applicable here, and provides another ground for admitting the challenged documents. The emails in question are the contemporaneous records of Lyondell personnel informing each other of important facts that they knew would be relied upon, and those records are more probative than deposition testimony years later that did not recall the events in question or that attempted to reinterpret the contemporaneous emails.

pursuant to the Pike Declaration.[5] Likewise, the thirty-four (34) emails that do not contain assertions of fact (or that contain assertions of fact that are immaterial), should be admitted because they are relevant regardless of the truth of any statements therein.[6] For example, PX55 is an email dated October 4, 2006, the entire substance of which is "Final package for Board"; which attaches a 156-page presentation for the Board's October 2006 strategic review." Similarly, PX65 is a December 5, 2006 email the entire substance of which is "In case you want to run through again tonight"; the email attaches a 61-page presentation for the Board's December 7, 2006 strategic review.

Third, emails that do not contain assertions of fact, or are relevant even if the assertions contained within them are not true, are admissible for the fact that they were sent, and thus the defendants' hearsay objection is unfounded.[7] For example, PX133 is a May 11, 2007 email from Robert Salvin to Kimberly Foley posing a series of questions to Ms. Foley, such as "Is there one or two packages that contains the high level 2007 LRP assumptions C2=margins, refining, etc.?" (Attached hereto as <u>Exhibit F</u>). Questions are not assertions of fact at all, so the defendants' hearsay objection is no barrier to admitting those questions. Two portions of the email are arguably statements of fact: (1) "I suspect the LRP BOD presentation may have it, yes," which is relevant regardless of its truth, and in any event, is admissible under Rule 803(3) because it is a statement of the declarant's then existing state of mind (suspecting); and (2) "In the Strategy Presentation, we presented the results without too much explanation," which is relevant regardless of its truth—the point is that as of May 11, 2007, the email participants apparently did not know what the assumptions were underlying certain long range plan numbers.

As to the remaining 29 documents, the Pike Declarations more than adequately lay the business records foundation for the parts of them that are assertions of fact, and they are therefore admissible.[8] For example:

- PX56 is an October 8, 2006 email from Mario Portela to, *inter alia*, Joseph Tanner, Kim Foley, and Robert Salvin, outlining the agenda for an upcoming discussion and

---

[5] These exhibits are: PX12, PX13, PX15, PX16, PX17, PX18, PX19, PX21, PX24, PX25, PX26, PX27, PX29, PX32, PX60, PX62, PX72, PX73, PX82, PX103, PX104, PX178, PX183, PX187, PX202, PX232, PX256, PX 269, PX324, PX510, PX630, PX635, PX745, PX746, PX762.

[6] These exhibits are: PX54, PX55, PX64, PX65, PX127, PX150, PX151, PX154, PX160, PX163, PX166, PX169, PX175, PX184, PX188, PX196, PX198, PX200, PX201, PX208, PX227, PX231, PX236, PX237, PX246, PX249, PX250, PX255, PX247, PX258, PX263, PX301, PX33, PX334

[7] These exhibits are: PX133, PX135, PX139, PX140, PX142, PX143, PX144, PX145, PX148, PX152, PX156, PX158, PX165, PX179, PX199, PX238, PX240, PX251, PX207, PX297, PX298, PX310, PX390. Certain of the emails are admissible for an additional non-hearsay purpose—to lend context to the admissible deposition testimony of various individuals. For example PX248 is an email from Kevin DeNicola to Dan Smith and Kerry Galvin dated July 13, 2007. The email states that he is "at BB office" and "finalizing mgmt. presentations and final projections." Mr. DeNicola testified about his work at the offices of Baker Botts on July 13, 2007, partially in reference to this email. DeNicola 135:4-138:16. Thus, regardless of whether the email is admissible for its truth, it is admissible to lend context to the deposition designation of Mr. DeNicola. The deposition testimony about Mr. DeNicola's activities at Baker Botts is admissible for its truth because it satisfies the requirements of Rule 32 of the Federal Rules of Civil Procedure.

[8] These exhibits are: PX56, PX61, PX77, PX136, PX146, PX147, PX149, PX155, PX157, PX159, PX162, PX168, PX170, PX172, PX173, PX174, PX186, PX221, PX239, PX248, PX296, PX311, PX313, PX318, PX319, PX331, PX338, PX378, PX628. Some of these exhibits are even independently admissible under another exception to the rule against hearsay. For example, the statements in PX146, PX313, and PX338, which are statements of what the declarant intends to do in the future, are admissible under Fed. R. Evid. 803(3) ("then-existing mental, emotional, or physical condition").


analysis of "Stress Scenarios for our LRP [Long Range Plan]." (Attached as <u>Exhibit G</u>)  Among other things, Mr. Portela describes the appropriate criteria for a "Stress Test," and states that "Kevin Goodwin is developing a model for Lyondell's LRP consistent with the most recent Financing case for use in the Cleveland Project."  This is a business-related record providing instructions to a responsible team of fellow employees, and providing certain background facts necessary to the project.  It is not idle chit-chat, and the fact that this message was conveyed by email, rather than by inter-office memorandum, does not prevent it from being admitted as a business record pursuant to Mr. Pike's Declaration expressly satisfying the foundational requirements of the Rule.

- PX61 is a November 28, 2006 email from Corry Lang to Ed Dineen, Mario Portela, copying Kimberly Foley, Joseph Tanner, and Koy Schoppe recording the assumptions behind a "Alternate View or Consultant Case for the 07LRP" (Attached as <u>Exhibit H</u>).  For example, the document states "For PO& Derivatives we've made the assumption that a slowdown will occur in 07/08 as a result of high energy costs and a weakening housing market."  Mr. Pike's Declaration establishes the foundational requirements to admit the document as a business record, and nothing about its substance or form indicates any lack of trustworthiness or regularity of the business record.

- PX77 contains a compilation of emails spanning the period January 26, 2007 to November 16, 2016, each to a large distribution list and each providing "Houston Refining Weekly Update" (Attached as <u>Exhibit I</u>).  Mr. Pike's Declaration establishes that, consistent with the substance of the repeated weekly or near-weekly emails providing the "Houston Refining Weekly Update," these email updates satisfy the foundational requirements of the Rule.

- PX296 is an email from Joseph Tanner to, *inter alia*, Dan Smith, Kevin DeNicola, Ed Dineen, Kerry Galvin, Morris Gelb, and Karen Twitchell, summarizing the attached "Business Performance Update" (Email, but not attachments, attached as <u>Exhibit J</u>).  As an example of the formality of this record, the first line reads: "This Business Performance Package reviews our 3rd quarter LE compared with the 7/26 package and rolls out the 4th quarter for the first time."  Again, the Pike Declarations establish the foundational requirements of the business records exception, and nothing about the mode in which the record was created or transmitted (*i.e.*, by email) undermines that conclusion.

As stated in the Pike Declarations, and exemplified by these emails, it was the regular business practice of Lyondell employees to collect, analyze, and generate financial information for various business units and then report this information to executives, management, and other employees involved in the operation and management of the company.  These emails qualify as business records because they embody routine, contemporaneous exchanges of business-related information that were generated in the ordinary course of business of Lyondell and/or LBI by persons with knowledge of the contents.

Mr. Pike's deposition on October 4, 2016 does not change the result. During the deposition, perhaps seizing on language in cases relating to a "business duty" to send emails (which, as explained in the Stein decision discussed above, is not a requirement), defendants posed to Mr. Pike a false dichotomy as follows:

> Q. (BY MS. CASSIDY) Yeah, sure. So I'm focusing on the second sentence and it says, 'Lyondell personnel regularly and routinely requested and provided, and request and provide, such information and report to each other by e-mail.' And my question is, are these – the e-mails that are generated, are they for the convenience of the employees to facilitate communication or is there an obligation imposed by the employer to generate these e-mails?
>
> MR. WEDDLE: Objection.
>
> A. Okay. It's – it's part of – it's the ease of communication within the organization.

Pike Tr. 10:19-11:8. This answer to an improper question does not undermine the admissibility of any emails. Mr. Pike made clear that Lyondell personnel created emails like those listed in his declarations as part of their work and that they relied on them in performing their work. Pike Tr. 32:4-15 ("Q. . . . [A]s a general matter, at Lyondell if people are asking questions and responding to them about financial information about the business, would people at Lyondell rely on the answers that they receive, even though they get them in e-mail form, or would they be more formal about it and, for example, require a paper memorandum before they rely on the answer? A. Typically I think an e-mail form would be adequate."). In addition, although the defendants' questioning of Mr. Pike suggested otherwise (see Pike Tr. 19:21-20:6), Rule 803(6) imposes no requirement that the custodian speak with the authors of business records, and, in any event, Mr. Pike testified in response to defendants' question "How were the e-mails kept at Lyondell?" that it is "his understanding that by policy within our IT and under guidance of our legal organizations, that backup files were kept. And there are also policies for employees for retention of information" (Pike Tr. 11:14-20).[9]

For the foregoing reasons, the documents referenced in the Pike Declarations should be admitted pursuant to such Declarations.

> Respectfully submitted,
>
> /s/ Sigmund S. Wissner-Gross
> Sigmund S. Wissner-Gross

Encls.

---

[9] Mr. Pike also testified concerning the safeguards in place to protect Lyondell's electronic data, such as computer passwords and other "standard procedures" to protect documents. See Pike Tr. 22:23-23:13.

cc:   Counsel of Record (via electronic mail)