1                       UNITED STATES BANKRUPTCY COURT
                        SOUTHERN DISTRICT OF NEW YORK
2
   IN RE:                               :
3  LYONDELL CHEMICAL COMPANY,           :Chapter 11
   and MILLENNIUM CUSTODIAL TRUST,:
4              Debtors.                  :Case No. 09-10023-mg
   .................................:
5  EDWARD S. WEISFELNER,                :
   as Litigation Trustee,               :
6              vs.                       :
   THE LEGAL REPRESENTATIVE OF          :Adv. Proc. 09-01375-mg
7  THE ESTATE OF RICHARD.               :
   .................................:
8  WEISFELNER, ET AL.                   :
               vs.                       :Adv. Proc. 10-04609-mg
9  CIBC World Markets, et al.           :
   .................................:
10 EDWARD S. WEISFELNER,                :
   as Litigation Trustee,               :Adv. Proc. 10-05525-mg
11             vs.                       :
   ALFRED R. HOFFMANN, CHARLES          :
12 SCHWAB & CO, INC. CUST IRA,          :
   .................................:
13 EDWARD S. WEISFELNER, as             :
   Litigation Trustee,                   :Adv. Proc. 11-01844-mg
14             vs.                       :
   NAG INVESTMENTS, LLC, et al.         :
15 .................................:
   WEISFELNER,                           :
16             vs.                       :Adv. Proc. 12-01570-mg
   REICHMAN, et al.                     :
17 .................................:
                   Case Management Conference
18                 New York, New York
                   September 12, 2016
19                 2:03 - 3:23

20 Audio Operator:        Electronically Recorded
                          by R. Liell, ECRO
21
          BEFORE THE HONORABLE MARTIN GLENN
22          UNITED STATES BANKRUPTCY JUDGE

23          AudioEdge Transcription, LLC
             23 Vreeland Road, Suite 204
24            Florham Park, NJ 07932
        (973) 618-2310, (973) 618-2311 (Fax)
25         www.audioedgetranscription.com

```
 1   09-01375-mg - TRANSCRIPT OF MOTION
     TO DISMISS ADVERSARY PROCEEDING; (Doc No. 748)
 2   (Motion to Dismiss Count VII of the Second Amended
     Complaint) Filed by Michael Alexander Kleinman
 3   on behalf of Alan S. Bigman; HEARING RE: (Doc #750)
     Motion to Dismiss Adversary Proceeding Filed by
 4   John O. Farley on behalf of Diane Currier, Estate
     of Richard E. Floor; (Doc #801) Case Management
 5   Conference

 6   10-04609-mg (Doc #2422) Case Management
     Conference
 7
     10-05525-mg (Doc #928) Case Management
 8   Conference
     11-01844-mg (Doc #40) Scheduling Case
 9   Management Conference

10   12-01570-mg (Doc #124) Case Management
     Conference
11
     A P P E A R A N C E S
12

13   LITIGATION TRUSTEE      BROWN RUDNICK
     & CREDITOR TRUSTEE:     7 Times Square
14                           New York, New York 10036
                             BY:  SIGNMUND S. WISSNER-GROSS, ESQ
15                           BY:  JUSTIN WEDDLE,ESQ
                             BY:  STEVEN D. POHL, ESQ.
16                           BY:  MAY ORENSTEIN, ESQ.

17   ACCESS DEFENDANTS:      QUINN EMANUEL URQUHART &
                             SULLIVAN, LLP
18                           51 Madison Avenue, 22nd Floor
                             New York, New York 10010
19                           BY:  SUSHEEL KIRPALANI,ESQ.
                             BY:  RICHARD T. WERDER, JR., ESQ.
20
     VARIOUS SHAREHOLDER     WILMER CUTLER PICKERING HALE
21   DEFENDANTS:             & DOOR, LLP
                             7 World Trade Center
22                           250 Greenwich Street
                             New York, New York 10007
23                           BY: PHILIP ANKER, ESQ.
                             BY: ROSS E. FIRSENBAUM, ESQ.
24

25
```

```
 1    A P P E A R A N C E S:   (Via Telephone)

 2    DEFENDANT(S)
      CORPORATION 32:        ULMER & BERNE, LLP
 3                           1660 West 2nd Street
                             Suite 1100
 4                           Cleveland, Ohio 44113-1406
                             BY:   TODD A. ATKINSON, ESQ.
 5
      CREDITOR -             MINTZ, LEVIN, COHEN, FERRIS
 6    WINCHESTER HOSPITAL:   GLOVSKY & POPEO, PC
                             One Financial Center
 7                           Boston, Massachusetts 02111
                             BY:  ERIC BLYTHE, ESQ.
 8
      DEFENDANT(S)           OTTERBOURG, P.C.
 9    BANK 10:               230 Park Avenue
                             New York, New York 10036
10                           BY:   JOHN BOUGIAMAS, ESQ.

11    CREDITOR,              PRYOR CASHMAN, LLP
      FIFTH THIRD:           7 Times Square
12                           New York, New York 10036
                             BY:    CONRAD CHIU, ESQ.
13
      INTERESTED PARTY,      COLUMBUS HILL CAPITAL
14    COLUMBUS HILL          MANAGEMENT, L.P.
      CAPITAL MANAGEMENT     51 John F. Kennedy Parkway
15    L.P.:                  Short Hills, NJ 07078
                             BY:  GRENVILLE DAY
16
      DEFENDANT(S)           B. LANE HASLER, PC
17    UNKNOWN 64:            1016 West Jackson, St 100
                             Chicago, Illinois 60607
18                           BY:   LANE HASLER, ESQ.
      INTERESTED PARTY-      OWL CREEK ASSET
19    OWL CREEK ASSET:       MANAGEMENT, LP
                             640 5th Avenue, #20
20                           New York, New York 10019
                             BY:   STEVEN C. KRAUSE
21
      CREDITOR, CORRE        CORRE PARTNERS
22    PARTNERS:              1370 6th Avenue
                             New York, New York 10019
23                           BY:   STEPHEN LAM

24

25
```

```
 1   A P P E A R A N C E S: (cont'd)
     (Via telephone)
 2   INTERESTED PARTY-      WILLKIE FARR & GALLAGHER,
     WILLKIE FARR &         LLP
 3   GALLAGHER:             787 Seventh Avenue
                            New York, New York 10019-6099
 4                          BY:   JOSEH F. MINIAS, ESQ.

 5   INTERESTED PARTY-      PROSKAUER ROSE, LLP
     TRUST 15:              11 Times Square
 6                          New York, New York 10036-8299
                            BY:   DAVID S. MORDKOFF, ESQ.
 7
     INTERESTED PARTY-      ARROWGRASS CAPITAL PARTNERS,
 8   ARROWGRASS CAPITAL     U.S. LLP
     PARTNERS U.S. L.P.:    1330 6th Avenue
 9                          New York, New York 10019
                            BY:   JON PRUCHANSKY
10
     INTERESTED PARTY-      REORG RESEARCH, INC.
11   REORG RESEARCH,INC.:   11 East 26th Street, 12th Fl
                            New York, New York 10010
12                          BY: JASON B. SANJANA, ESQ.

13   INTERESTED PARTY-      JEFFERIES GROUP, LLC
     JEFFERIES GROUP,       520 Madison Avenue, 10th Fl
14   LLC:                   New York, New York 10022
                            BY:   GEORGE BRICKFIELD
15
     INTERESTED PARTY-      APPALOOSA MANAGEMENT
16   APPALOOSA MANAGEMENT:  51 JFK Parkway
                            Short Hills, NJ 07078
17                          BY:   KENNETH MAIMAN, ESQ.

18   ALEJANDRO MORENO:      QUINN EMANUEL URQUHART &
                            SULLIVAN, LLP
19                          51 Madison Avenue, 22nd Floor
                            New York, New York 10010
20                          BY:   ALEJANDRO MORENO

21   INTERESTED PARTY-      CANTOR FITZGERALD
     CANTOR FITZGERALD:     110 East 59th Street
22                          New York, New York 1002
                            BY:   ANDREW M. THAU
23
     DEFENDANT(S),SPARTAN   GRAY REED & MCGRAW, P.C.
24   TX SIX CAPITAL         1601 Elm Street, St 4600
     PARTNERS:              Dallas, Texas 75201
25                          BY:   MICHEAL E. BISHOP, ESQ.
```

```
 1   A P P E A R A N C E S (CONT'D)
 2   (Via Telephone)
 3
     INTERESTED PARTY-      WINSTON & STRAWN, LLP
 4   TRUST #10:             200 Park Avenue
                            New York, New York 10166-4193
 5                          BY:  CARRIE V. HARDMAN, ESQ.
 6   INTERESTED PARTY-      TROUTMAN SANDERS, LLP
     ZLP MASTER            875 Third Avenue
 7   OPPORTUNITY FUND:      New York, New York 10022
                            BY: SCOTT E. KOERNER, ESQ.
 8
     DEFENDANT(S)           K&L GATES, LLP
 9   STATE STREET:          State Street Financial Center
                            One Lincoln Street
10                          Boston, MA 02111-2950
                            BY:  DAVID A. MAWHINNEY, ESQ.
11
     DEFENDANT(S)           SCHULTE ROTH & ZABEL, LLP
12   HOFFMAN, ET AL:        919 Third Avenue
                            New York, New York 10022
13                          BY:  MATTHEW J. MOSES, ESQ.
                            BY:  FRANK OLANDER, ESQ.
14
     DEFENDANT(S)           DELBELLO DONNELLAN WEINGARTEN
15   MUTUAL FUND 8,         WISE & WIEDERKEHR, LLP
     ET AL.:                1 North Lexington Avenue
16                          White Plains, NY 10601
                            BY:  STEVEN R. SCHOENFELD, ESQ.
17
     DEFENDANT(S)           NORTON ROSE FULBRIGHT US, LLP
18   FARMERS INSURANCE      1301 Avenue of the Americas
     GROUP INC. EMPLOYEE    New York, New York 10019-6022
19   PENSION PLAN:          BY:  DAVID B. SCHWARTZ, ESQ.
20   DEFENDANT(S)           MEYER SUOZZI ENGLISH & KLEIN, PC
     SUN AMERICA:           990 Stewart Avenue, Suite 300
21                          Garden City, New York 11530
                            BY:  THOMAS SLOME, ESQ.
22
     DEFENDANT(S)           ICE MILLER, LLP
23   PENSION FUND 38:       Arena District
                            250 West State, Suite 700
24                          Columbus, Ohio 43215
                            BY:  DANIEL R. SWETNAM, ESQ.
25
```

```
1   A P P E A R A N C E S: (cont'd)
    (Via Telephone)
2
    WOLVERINE                WINSTON & STRAWN, LLP
3   ASSET MANAGEMENT:        35 W. Wacker Drive
                             Chicago, Illinois 60601-9703
4                            BY:  SARAH A. KRAJEWSKI, ESQ.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                         I N D E X
 2                        09/12/16
 3                                                    Page
 4       ON STATUS CONFERENCE
 5      By Mr. Wissner-Gross                   8,31,60,63
 6      BY Mr. Kirpalani                       4,43,47,56
 7      Mr. Weddle                                37
 8      Mr. Werder                                65
 9      COURT DECISION
10      On Timetable for Declaration/Deposition    40
11      On Letter Briefs re Authority to Compel    61,62
12      Deadline on Mr. Kirpalani's Motion in Limine  67
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1                    (On record at 02:02:45 p.m.)

2                    JUDGE ROBERT DRAIN:  All right.  Please

3      be seated.

4                    All right.  In connection with Lyondell,

5      this is a case management conference, status conference

6      in the following adversary proceedings, Weisfelner vs.

7      Bovadnik(phonetic), 09-1375; Weisfelner vs. 11, 10-04609;

8      Weisfelner vs. Reichman, 12-01570; Weisfelner vs. NAG

9      Investments, LLC, 11-01844 and Weisfelner vs. Hoffman,

10     10-05525.

11                   All right, let me hear from Plaintiff's

12     counsel first.  I have a list of appearances in front

13     of me, so --

14                   SIGMUND WISSNER-GROSS:  Good afternoon,

15     Your Honor.  This is Sigmund Wissner-Gross, Counsel to

16     Ed Weisfelner, Trustee of the LB Litigation Trust and

17     Trustee of the Glattiter(phonetic) Trust.

18                   But, Your Honor, with me today are my

19     partner May Orenstein, Justin Weddle and Steve Pohl.

20     Depending upon issues that you will focus on, they may

21     address some of those points.

22                   Your Honor, I think there are three

23     basic matters that originally were scheduled to be heard

24     today.  The first, pursuant to Your Honor's August 11th,

25     2016 scheduling order will be -- dealt with the

1    implications of Judge Cote's (phonetic) ruling in the

2    Hoffman matter she reinstated the intentional

3    fraudulent transfer claim.

4                 And in your August 11th order

5    scheduling case management conference, Your Honor

6    published three discreet questions for the parties

7    to address and both the Trustee and both counsel to the

8    Defendants, remaining Defendants, in the Bovadnik action,

9    as well as Mr. Anker on behalf of certain show,

10   the Defendants have submitted letters addressing a

11   response to those questions.

12                We all seem to agree that Hoffman is for

13   another day.  I know I had seen Judge Cote's order

14   scheduling the briefing on the Motion for Reconsideration.

15   I guess that main thing is completed now.

16                And in there the Plaintiffs were -- the

17   Defendants' counsel, you seemed to agree that -- again to

18   Judge Cote's order on the Motion for Reconsideration,

19   there's really nothing that should be done at this point

20   and Mr. Anker's letter certainly lays out at some length

21   all of the motions he intends to make or wants to make

22   if Judge Cote denies the Motion for

23   Reconsideration or reaffirms, which is the same

24   result.

25                I know you said something about asking

1   her to certify it or it's certainly not a final order

2   that she's entered, that's clear, but I guess

3   that's -- you agree --

4              JUDGE MARTIN GLENN:  No, I think this is

5   one of those rare cases where I think all counsel

6   are in agreement that the case of Hoffman, it should be

7   for another day.

8              The question I guess I have, I didn't

9   see in a number of the status letters that were filed,

10  is what -- and this is what I was mulling over when

11  I set the October 17th trial date

12  and I'm certainly prepared to stick by the October

13  17th trial date.

14             The question in my mind was well, is

15  the intention of filing a condensed claim in Bovadnik

16  or it might have been Bovadnik, does the Motion for

17  Reconsideration in Hoffman Industries, on the basis of

18  Hoffman, Judge Golding's ruling that he dismissed the

19  actual trial and condensed claim in Bovadnik?

20  I didn't, I might have missed it, but I didn't see

21  in your letter or the Defendants' letter what good the

22  seminal -- what should happen while that Motion for

23  Reconsideration is pending.

24             SIGMUND WISSNER-GROSS:  Well, we suggest

25  in our papers --

1        JUDGE MARTIN GLENN:  Well, I mean this

2   is ready to go to trial.

3        SIGMUND WISSNER-GROSS:  Ready to go to

4   trial and I believe my friends at Quinn Emanuel are

5   ready to go to trial and as Your Honor is aware, we'd

6   settle with the Lyondell directors and officers.

7   We advised chambers on Friday that we reached an agreement

8   in principle to settle with Mr. Bigman and Mr. Floor

9   and Your Honor adjourned the Motion to Dismiss --

10       JUDGE MARTIN GLENN:  Right.

11       SIGMUND WISSNER-GROSS:  -- that

12  otherwise was to be heard today.  So all that

13  is left in the Bovadnik action, significant though

14  it be, the claims against the Access Defendants,

15  we're ready to go to trial, they're ready to go to

16  trial.  We believe that --

17       JUDGE MARTIN GLENN:  And the discovery

18  that anybody  wanted with respect to actual fraudulent

19  conveyance was done --

20       SIGMUND WISSNER-GROSS:  Completed --

21       JUDGE MARTIN GLENN:  -- it's the same

22  discovery.

23       SIGMUND WISSNER-GROSS:  Completed years ago.

24       JUDGE MARTIN GLENN:  Okay.

25       SIGMUND WISSNER-GROSS:  And in fact we've

1  been going through a pretty rigorous exercise with the

2  Access Defendants' counsel to try see what exhibits the

3  parties can agree on.   We've given them a comprehensive

4  list of trial exhibits.   Those trial exhibits include

5  evidence that relates both Count I and Count II.

6  Relates to actual, intentional fraudulent transfer

7  claim.

8              The same evidence is going to relate

9  to some of the other claims, such as the Luxemburg claim.

10 So from our perspective, the same evidence is going in

11 at trial.  Many of the facts relating to --

12             JUDGE MARTIN GLENN:  The Luxemburg claim

13 that couldn't go away.  I don't know if you wish to side

14 with Bigman and Floor, but I guess --

15             SIGMUND WISSNER-GROSS:  Well, Your Honor,

16 you'll probably find that those are the most interesting

17 claims at trial.

18             JUDGE MARTIN GLENN:  I'm not so sure about

19 it.  I've read the expert affidavits or reports on

20 Luxemburg law, some of the times, actually.  So anyway.

21             SIGMUND WISSNER-GROSS:  But, Your Honor,

22 from our perspective, the same facts will be presented

23 at trial, whether Count II were reinstated or not.

24 As best as I can discern from the position from the Access

25 Defendants, they're articulating some legal grounds that

1  they think is a bar to Count II.  Some of those legal

2  grounds have already been rejected by Judge

3  Gerber.

4            JUDGE MARTIN GLENN:  You set that out in

5  your letter.

6            SIGMUND WISSNER-GROSS:  Right.  So, Your

7  Honor, we don't see any basis for a delay.  We cited

8  authority for why, in light of Judge Gerber's explicit

9  reliance on the Hoffman ruling on intentional fraudulent

10 transfer to dismiss the intentional fraudulent transfer

11 claim in Count II in the Bovadnik action, now that

12 that's been vacated by Judge Cote, we think it follows

13 pretty clearly that Count II should be reinstated.

14            Count II, in our original complaint,

15 consisted of four paragraphs.  In the second amended

16 complaint, which is the operative complaint here, we have

17 place holders for those four paragraphs.

18 There's no motion practice that needs to occur.

19 Those four allegations could just be --

20            JUDGE MARTIN GLENN:  You certainly didn't

21 raise a -- I do want to hear from Quinn Emanuel on

22 this issue, because I know in their letter that they

23 seem to be saying there were a host of legal issues

24 raised, but I must say, when I read Judge Cote's

25 opinion and saw the basis on which she dismissed the

1    actual fraudulent conveyance claim in Bovadnik, my

2    reaction was, okay, the actual fraudulent

3    conveyance, you know, unless somebody told me

4    that there was discovery that hadn't been done

5    and needed to be done, maybe if there was, it

6    would happen very quickly, but I didn't see a

7    license for not including the claim back in and

8    if there -- I guess Count II, and if there

9    are legal arguments why the Defendants believe

10   the claim is necessarily deficient and they're

11   raising a defense, we'll hear

12   it.

13           I don't have any more patience for

14   motions before we go to trial, let me put it that

15   way.  I'm -- you know, I carved out time and am certainly

16   prepared to go to trial.  And I was concerned about

17   the discovery issue, because I didn't know, but you've

18   answered my question about that.  Mr. Werder or one of

19   his colleagues is going to address the Court on it, so

20   I'm not ruling it.  But that was my initial reaction,

21   it was okay, Judge Cote decided the claim is back in.

22           And unless it altered the evidence that

23   was going to come in at trial and how quickly she's

24   going to rule on the Motion for Reconsideration,

25   I don't think it's going to dramatically alter what

1  evidence comes in.  And, you know, before the end of

2  the trial she's re-thought her ruling, we'll

3  -- I'll deal with that accordingly at the time.

4            SIGMUND WISSNER-GROSS:  So we agree

5  the evidence will not be altered in terms of the

6  form of the evidence that comes in, whether Count

7  II is reinstated or not.  As we see it, Quinn

8  Emanuel advanced really three basic arguments,

9  legal arguments, that it should not be reinstated.

10  And to the extent it's necessary to get into this

11  further, Ms. Orenstein will address that.

12            But they argue that

13  imputation -- the imputation ruling by Judge

14  Cote does not apply to the claims against Bazell

15  (phonetic).  We think that Judge Gerber rejected that.

16  We --

17            JUDGE MARTIN GLENN:  Yeah, you

18  addressed in your letter the collapsing

19  doctrine of --

20            SIGMUND WISSNER-GROSS:  Right.

21            JUDGE MARTIN GLENN:  -- Judge Gerber's

22  ruling.

23            SIGMUND WISSNER-GROSS:  Correct.  And,

24  Your Honor, if necessary we can cite to other

25  authority that's out there supporting what Judge Gerber

16

1   held on that.  They argue and they advance an argument

2   on the contention guarantee theory.  That's again a legal

3   issue.  We have a footnote saying I think

4   they're completely wrong on that.

5            Again, it's a legal issue.  And they

6   argue that it will be most efficient from a judicial

7   perspective to not try Count II as part of this trial.

8   We think the exact opposite.

9            JUDGE MARTIN GLENN:  Yeah, I just

10   want to do this once.

11            SIGMUND WISSNER-GROSS:  Right.

12   And we agree with that, Your Honor.

13            Your Honor, I'm happy to cede the

14   podium to Quinn Emanuel, unless you --

15            JUDGE MARTIN GLENN:  No, why don't you

16   do that.  Why don't you cede the podium and then,

17   you know, your letter had the joint statement.

18            SIGMUND WISSNER-GROSS:  Correct.

19            JUDGE MARTIN GLENN:  You identified

20   issues where parties haven't entirely agreed yet

21   and we'll come back and we'll talk about that.

22   Okay?

23            SIGMUND WISSNER-GROSS:  Very good,

24   Your Honor.

25            JUDGE MARTIN GLENN:  All right.

1    Mr. Kirpalani.

2                SUSHEEL KIRPALANI:  Good afternoon,

3    Your Honor.   Susheel Kirpalani from Quinn Emanuel

4    on behalf of the Access Defendants.

5                We wrung our hands for several days

6    as to whether we should try and explain why we thought

7    Judge Cote's decision has no bearing or in fact it

8    has any bearing. It actually bears that there is no

9    intentional fraudulent transfer claim that could be

10   stated in the Bovadnik action, because the transfer

11   was not even a Lyondell entity.

12               However after realizing that it's going

13   to be an uphill battle, because I don't think I

14   want to do this twice.  We talked about it at

15   length before taking the time to prepare

16   the brief and all of that.  We still thought

17   it was important just to outline.  No, it's not

18   about a discovery issue, but it is about a real trial

19   issue and I know, Judge, that you care

20   about that.

21               We had meets and confers at my

22   urging, way before they were due, with counsel

23   for the Trustee to try to understand how are you

24   going to put on your case as a Plaintiff.  You can't

25   string together a bunch of e-mails and

1  have your expert sit up there like a fact

2  witness.  They disagreed with that.  They think

3  they can and that will come to you at the right time.

4              You have alleged perpetrators of

5  a fraud.  The fraud is allegedly through -- perpetrated

6  against my client, Mr. Bovadnik and it's $6 billion

7  of equity in the sale.  But we just learned that

8  you're not going to call Mr. Smith, you're not going

9  to call Mr. Dinacola (phonetic), you're not going to

10  call any of the inner circle people that are allegedly

11  the perpetrators of your master mind fraud.

12              So it's disingenuous to tell the Court

13  that it's the same type of evidence that would go in

14  on Count I versus Count II.  I would beg to differ with

15  that.  If counsel feels they can meet a clear an --

16              JUDGE MARTIN GLENN:  This could be

17  answered if they, you know, if they --

18              SUSHEEL KIRPALANI:  That is our understanding

19  and we do have their witness lists as of -- it's just

20  preliminary, but this was after we filed our brief, so

21  they clearly know that we've joined this issue.

22  I don't know how a Plaintiff in an intentional fraudulent

23  transfer action meets a clear and convincing evidentiary

24  burden without calling the witnesses.

25              And you're going to hear in a moment when

1    I put the podium back to Mr. Wissner-Gross that we

2    are taking a hard line on a bunch of internal e-mails

3    at Lyondell, for which no proper foundation was ever

4    laid during discovery, that they think are just all

5    going to come in.  And then they can spin them any way

6    they want.  That's not way -- at least we're not going to

7    willingly do that.

8                And it's different, of course, on the

9    Access side.   If there are e-mails, if there are Owen

10   Cardence (phonetic) e-mails, we're not making a fuss about.

11               JUDGE MARTIN GLENN:  You're talking

12   about Lyondell e-mails before the merger?

13               SUSHEEL KIRPALANI:  Yes, Your Honor.

14   Yes, Your Honor.

15               So yeah, the alleged intentional

16   fraudulent scheme relates to a period of a few weeks

17   before my client met with the principal of -- or the CEO

18   of Lyondell Chemical Company and the allegation is that

19   Mr. Smith, along with an inner circle, the so-called inner

20   circle, which I don't believe actually exists in terms of

21   being an alleged bad actor, but that's their

22   theory that they are alleged bad actors.  And that

23   they somehow did something with projections that were

24   inappropriate and that my client relied on these things,

25   all of which we'll have time to explain to you over a few

1    weeks, and to start don't hold any water.

2              But in terms of the going forward

3    of the evidence, we're just scratching our heads trying

4    to understand how is that you are taking the position

5    that this is an intentional fraud claim and you're not

6    even going to call the witnesses that you say perpetrated

7    this scheme.

8              JUDGE MARTIN GLENN:  I think his -- you

9    said in your letter Judge Cote set a high bar for an

10   intentional fraudulent conveyance claim.  You know, I --

11   Smith was obviously deposed I assume.

12             SUSHEEL KIRPALANI:  Oh, yeah.  His

13   deposition can come in, I mean --

14             JUDGE MARTIN GLENN:  Was it a video

15   deposition?

16             SUSHEEL KIRPALANI:  I don't believe that

17   they videoed Mr. Smith.

18             JUDGE MARTIN GLENN:  Is he in subpoena

19   range of the Court?

20             SUSHEEL KIRPALANI:  No.  He lives in Texas, I

21   believe.  In fact all the Lyondell management, they were from

22   Texas.

23             JUDGE MARTIN GLENN:  Yes.

24             SUSHEEL KIRPALANI:  The cell management was in

25   Europe.  We pointed out the issues we pointed out in terms of

1   why we think legally --

2            JUDGE MARTIN GLENN:  It sounds like you'd be

3   happy if you're correct. You should be happy that they're

4   not going to call the alleged wrongdoers.

5            SUSHEEL KIRPALANI:  Actually, I think the

6   best way for this case to be conducted and Mr. Smith and

7   Mr. Bovadnik explain the whole thing and Your Honor can

8   decide and then you'll see all the holes in the theory.

9   That's what I think, but the Plaintiff doesn't seem to

10  agree with that.

11           JUDGE MARTIN GLENN:  Well, I can't force

12  them to come.  You can't force them to come.  Whether

13  with Mr. Wissner-Gross has an agreement that he will come

14  testify if they want him, I don't know.  But he'll either

15  come and sit in the witness stand or he won't.  And if

16  he's not there, since he's not, you know, they can use his

17  deposition, you can use his deposition, too.

18           SUSHEEL KIRPALANI:  And we may.  If an

19  intentional fraud claim is being brought in this case and

20  that my client is somehow liable as a fraudulent transferee

21  of that claim, we may seek to ask people to come and explain

22  what happened, even though we don't control those witnesses.

23           JUDGE MARTIN GLENN:  I mean it's -- you

24  know, because it's the intent of the transferor --

25           SUSHEEL KIRPALANI:  Right.

1          JUDGE MARTIN GLENN:  -- transferees can often

2    find themselves in a difficult position with an actual

3    fraudulent conveyance claim, because it's the intent of

4    the transferor.  You may have defenses, factual defenses

5    as well as legal defenses, but I guess the Plaintiff is

6    going to have the burden.

7          SUSHEEL KIRPALANI:  And like I said we may

8    seek to ask them to come and testify voluntarily, if in

9    fact these issues are going to be issues to be tried.

10   We can't live with a world where someone is going to try a

11   case based on e-mails out of context, we just can't do that.

12         JUDGE MARTIN GLENN:  Look, I, from reading

13   the letters, whether you're able to work these issues out

14   or not, it's obvious that there are business records,

15   evidentiary foundation issues, about Lyondell documents.

16   It was unclear to me what those documents were.

17         SUSHEEL KIRPALANI:  These are e-mails.

18   Internal banter type e-mails.

19         JUDGE MARTIN GLENN:  Okay.

20         SUSHEEL KIRPALANI:  That's our view.

21   So they're not business records.  I mean they can

22   bring a custodian in and say you pulled this off an

23   electronic server, that's not the law, you know.

24   E-mails between people off an electronic server

25   doesn't make them business records.

1              And since -- unlike on our side, on

2     the Access side, if there are e-mails of ours, well

3     obviously they would be for evidentiary purposes,

4     it goes to weight.  For evidentiary purposes, they're

5     admissions.  That's not true for Lyondell.

6              JUDGE MARTIN GLENN:  So this is sort of

7     aimed at everybody.  Certainly you can stand on

8     rights -- on foundation grounds.  This has come up

9     before me before, some combination in terms of the

10    parties -- how -- are doing, frivolous motion objections,

11    frivolous isn't a legal standard anymore.  If there

12    aren't very serious foundation objections, I'm willing

13    to take trial time to inquire it.

14             So I'm doing one of a couple of things.

15    I have a sponsoring party, you'll know which -- I've

16    already identified, which -- agreed to and the

17    sponsoring party, if they can get an affidavit,

18    that would be a proper foundation on which you could

19    depose them.  And trying to resolve this, I'm willing

20    to take trial time to do it.

21             Once I actually told a party that

22    it was the time to trial and so fine, but I'm just

23    telling you that I've been hearing in this, and you

24    laid a proper foundation, I concluded that this is

25    objection that never should have been made.  I'm

1   charging the time to the objecting party, never a

2   responsory party.  And I did not know it, the objections

3   got looked at and it didn't happen.

4                    But one other thing, I thought they

5   were serious motion issues, particularly the ones in

6   terms of the exhibits. I set a deadline for the sponsoring

7   party to put it in, if they thought they would get any

8   affidavit or declaration to establish the foundation.

9   It might be an objector going in to depose them.

10  Just to find out if you want to test them and the

11  subject and find out during these aren't an issue

12  and this some -- depositions.

13                   But I'm not saying -- what I mean is

14  I don't have any lists of exhibits.  Is it five,

15  is it 100?

16                   SUSHEEL KIRPALANI:  Yeah, let me try to

17  give a little bit of context.

18                   JUDGE MARTIN GLENN:  Okay.

19                   SUSHEEL KIRPALANI:  Okay?  Because it's

20  really -- it does --

21                   JUDGE MARTIN GLENN:  I don't want to

22  decide -- I want to make it absolutely clear.  You've

23  got a sort of foundational objection.  I'm not telling

24  -- you know, you're going to make it and I'm going to

25  decide it on the merits of it.  So I'm not

1    trying to browbeat you out of an objection, but I'm

2    not a big fan of taking trial time to do it.

3              SUSHEEL KIRPALANI:  Right.  So okay,

4    here's the situation.  It does dovetail with this

5    intentional fraudulent transfer issue.

6              Allegedly there's an inner circle of

7    people at Lyondell Chemical Company who are not within

8    our control.  These people were deposed.  The Trustee

9    chose, during the deposition, it was actually the

10   predecessor, it the Creditors Committee, not to ask

11   questions about e-mails that the sound bites

12   sounded good to them for purposes of filing the

13   complaint where they have to seek to understanding.

14             I live in this world.  I know how it

15   works.  But the time for that and the discovery is past.

16   So having not asked any questions about those e-mails,

17   we didn't either.  So now comes the time to prove

18   the case.

19             If you say, Judge, that well, Mr.

20   Kirpalani, you're playing hard ball by not letting

21   them put these e-mails in.   But wait a second,

22   they're not even bringing the witnesses in

23   because they just settled with them, for whatever

24   they settled with them for, and they're saying they

25   just want to get a bunch of e-mails in so they can string

26

1  them along with some expert who had no first hand

2  knowledge of what actually people meant,

3  what they were saying, what was the context, what

4  was going internally at Lyondell.  And these are not

5  even admissions of

6  ours.

7           So this is the actual practical real

8  world issue that we're --

9           JUDGE MARTIN GLENN:  How many e-mails

10  are we talking about?

11          SUSHEEL KIRPALANI:  I think it's quite a

12  bit.  About a hundred.  Or more, I'm told by another

13  colleague.

14          We have legal arguments, but I know we'll

15  save those for trial.  Okay?  The legal arguments, just to

16  be clear, have to do with the fact that Judge Cote said

17  Mr. Smith, on an agency principle, can tag Lyondell

18  Chemical Company.

19          Count I and II, the toehold transfers,

20  which Your Honor will remember from July and the

21  summary judgment.  These are transfer from his cell to

22  my client.

23

24          So I don't think whatever Mr. Smith

25  and his inner circle knew had anything to do with the

1   transfer of cash from Bazell (phonetic), from the

2   Bazell bank account to my client.  They had some odd

3   collapsing theory that they managed to convince Judge

4   Gerber in a dicta footnote, don't worry about

5   it, it's going to work out once we get up at trial.

6   It was a long time ago.  Discovery is over.  We still

7   don't understand how this theory works.

8            JUDGE MARTIN GLENN:  Uh-huh.  A very long

9   time ago.

10           SUSHEEL KIRPALANI:  Yes.  I guess I've

11   taken up more that my share of time.

12           JUDGE MARTIN GLENN:  No, that's okay.

13           SUSHEEL KIRPALANI:  I just think it's

14   difficult for us to deal with issues like will you

15   consent to the admissibility of this exhibit, which by

16   the way we're going to use to prove an intentional

17   fraudulent transfer claim against you and no, we're not

18   going to bring the person who wrote the e-mail to court

19   so you can have an opportunity to --

20           JUDGE MARTIN GLENN:  Let me answer this.

21   As I suggested, I'm not a big fan of taking an amount of

22   trial time over -- it's an important issue, I'm not

23   disputing that.  What's your view about requiring a

24   sponsor to -- as for the competent evidence or declaration,

25   not hearsay, but competent evidence or declaration in

1   regard to deposing him?  You know trial is slated for

2   October 17th, there's not a lot of time.

3             SUSHEEL KIRPALANI:  That's true.

4   I don't think there's any rational way for me to

5   oppose that.  That is exactly -- so you're not sitting

6   here to call balls and strikes in a deposition room,

7   but yeah, if that's what they want to do bring in e-mails

8   that are not admissions of any party in this case,

9   hundreds of them, and expect we're just going to let

10  them come in so that they can string a story along,we

11  can't do that.  We'd be --

12            JUDGE MARTIN GLENN:  I'm not -- I

13  don't -- go ahead.

14            SUSHEEL KIRPALANI:  But so of course,

15  if they want to prepare a declaration with sufficient

16  time for us to read it and then look at the other

17  e-mails from the time. we have to do all the work,

18  because we're going to need -- that period and

19  then go and depose him, of course we'll do that.

20            JUDGE MARTIN GLENN:  Well, the -- I do

21  enforce the evidence rules.

22            SUSHEEL KIRPALANI:  I know.

23            JUDGE MARTIN GLENN:  And if it's more a

24  burden, a declaration, you want to set a deadline for

25  doing it, fine.  I mean, you know, if there's evidence

```
 1   that establishes the necessary foundation, I'll rule

 2   on the objection.  If they're right, it will come in.

 3   But it's going to be a risk on them.

 4              I just don't know, if it's 100 exhibits,

 5   I don't want to have a string of witnesses that come in

 6   whose only purpose is to attempt to lay a foundation

 7   for 100 e-mails.

 8              SUSHEEL KIRPALANI:  Right.  This is not an

 9   authenticity fight.  It's not like we're saying we don't

10   believe those e-mails came off of Lyondell's server.

11   Rather    we're saying they're not business records,

12   not meeting minutes or something

13   like that that's a business record.

14              This is, you know, me talking to Rex

15   about how I think so and so feels about it.  That's

16   not a business record.

17              JUDGE MARTIN GLENN:  So you're, at the

18   end of day, it sounds like you may have multiple per se

19   objections to an e-mail --

20              SUSHEEL KIRPALANI:  Right.

21              JUDGE MARTIN GLENN:  -- and establishing

22   the foundations for that as can be pre-trial.

23              SUSHEEL KIRPALANI:  True.  Although there

24   may be other e-mails that don't have any hearsay, not

25   second level hearsay, just first level hearsay.  I
```

1  personally haven't looked at all 100 and so, but

2  I'm certain that we can do that.

3              And if they want to submit

4  declarations -- I just want to be clear.  This is not

5  like we're saying no, we disagree that that's the

6  10K of Lyondell Chemical Co.  Or no, we disagree that

7  those are the meeting minutes of the Board of Lyondell

8  Chemical.

9              JUDGE MARTIN GLENN:  You're not -- I'm not

10  pinning you down as to specific exhibits, but your problem

11  isn't about minutes and things like that.

12              SUSHEEL KIRPALANI:  It's about spin.

13              JUDGE MARTIN GLENN:  They not

14  self-authenticating, they're easily authenticated.

15              SUSHEEL KIRPALANI:  Right.  It's about

16  e-mails, communications between people that are cherry

17  picked from a period of time where there are many others

18  and many conversations that I'm sure happened around those

19  e-mails.  I think that's what we're dealing with.

20              JUDGE MARTIN GLENN:  So what -- let's assume

21  those e-mails are admissible, that they sell it, do you

22  have additional exhibits you're going to mark as a result?

23              SUSHEEL KIRPALANI:  It could be.  Yeah, I

24  would say -- I would say definitely.  Because I'm sure

25  there's plenty of Lyondell internal e-mails that

1  say opposite things of what they think, I'm certain

2  of it.

3              JUDGE MARTIN GLENN:  Okay.  All right.

4  Let me hear from Mr. Wissner-Gross about this issue,

5  okay?

6              SIGMUND WISSNER-GROSS:  Your Honor --

7              JUDGE MARTIN GLENN:  What's your theory

8  of admissibility of e-mails not between any parties?

9              SIGMUND WISSNER-GROSS:  I'm going to let

10  Mr. Weddle, who's been in charge of that, so I'm going

11  to defer to Mr. Weddle to do a better job that I would

12  addressing that point, Your Honor.

13              But if I could just put this a little

14  bit in context.  We have given the other side a list

15  of deponents that we want to -- that we think should --

16              JUDGE MARTIN GLENN:  Are you really not

17  calling Mr. Smith as a witness?  He was part --

18              SIGMUND WISSNER-GROSS:  Your Honor, Mr.

19  Smith was --

20              JUDGE MARTIN GLENN:  -- part of the whole

21  case.

22              SIGMUND WISSNER-GROSS:  Mr. Smith was

23  deposed.  Mr. Salvan (phonetic) was deposed, was

24  videotaped and I anticipate that we'll give you all

25  or most of the chunk of Mr. Salvan's videotape.

1               JUDGE MARTIN GLENN:  Hopefully it's not

2   going to be all.  I mean I --

3               SIGMUND WISSNER-GROSS:  We'll give you --

4               JUDGE MARTIN GLENN:  Just so I'm clear, I

5   think I probably said this already, I don't want

6   people to put, you know, dope on deposition on the

7   record.  It's going to be page and line number.

8               SIGMUND WISSNER-GROSS:  That's what we're

9   doing.

10              JUDGE MARTIN GLENN:  Okay.

11              SIGMUND WISSNER-GROSS:  But by my count,

12   there are 43 witnesses that we're going to be doing

13   selective deposition designations for 43.  And every

14   person that was involved in this refreshing process

15   was deposed.

16              Quinn Emanuel was present at every

17   deposition.  They had an opportunity to ask any and

18   every question they wanted.  He had opportunities to

19   ask the questions we wanted.  There was full discovery

20   on the subject.

21              Given where we are in the case, it's our

22   assessment, with the number of expert witnesses we have

23   and other witnesses we're going to question live, in

24   the trial climate live, that the most efficient way of

25   proceeding is to get the record in through deposition

1   designation.

2           JUDGE MARTIN GLENN:  Look, if the witnesses

3   are not within the subpoena power of the Court, you're

4   entitled to a deposition.

5           SIGMUND WISSNER-GROSS:  Virtually all of

6   them are in Texas.

7           JUDGE MARTIN GLENN:  Okay.  So I mean --

8           SIGMUND WISSNER-GROSS:  And by the way --

9           JUDGE MARTIN GLENN:  There's nothing

10  magical about this --

11          SIGMUND WISSNER-GROSS:  But --

12          JUDGE MARTIN GLENN:  Stop.  Stop.

13  When I was in practice and I used to train our young

14  litigation associates about taking depositions, one of

15  the points I always made was if there are any exhibits

16  that you're going to want to use a trial, you need to

17  establish a foundation for them, if you can't get the

18  witness at trial and either that or send out a

19  request for admissions early on and, you know, if

20  they refuse to admit, take the deposition and

21  establish the foundation.

22          It's kind of late to -- you don't get much

23  traction from me saying well, they were at the

24  deposition, they could have asked about those exhibits.

25  You were at the deposition, you could have asked about them.

1   Having somebody show up for the deposition and asking

2   him questions about a document doesn't necessarily

3   establish the foundation for the exhibits.

4              So, you know, this has come up a bunch of

5   times and on this case, when its' come up, I told you

6   it's been approaches I've taken, because I like to allow

7   parties to try and prove their case, but I'm not going

8   tell you how to put your case on.  You think you've got

9   competent evidence to establish the foundation or

10  letting -- so to speak and establish a foundation

11  for the exhibits you want to have.   Fine.  You can

12  take your shot at and if you don't get it in,

13  then you haven't gotten in.  It's, you know.

14             But what I've done before and I told Mr.

15  Kirpalani is say okay, I don't want to have to have a

16  stream of witnesses testifying, the sole purpose of which

17  is to establish foundation for exhibits and so I said,

18  because I take written direct, I take -- I go off and get

19  your declarations and let the other side cross, you know,

20  depose them and cross examine them and then I rule on them.

21             So it's up to you.  I mean if you think

22  you've got the evidence to overcome any objection from

23  Mr. Kirpalani, fine.  Go for that and you'll get it in

24  or you won't get it in.   I can't -- I'm not going to

25  do any favors.  I'm not going to do any Mr. Kirpalani

```
 1    any favors.  I'm going to decide it based on if there
 2    are objections to lack of foundation, I'm ruling on them.
 3    If you believe you've got the evidence to support the
 4    admissibility of the documents, fine.  But we're
 5    going to have to decide whether you are allowed to
 6    put the declaration, because trial is really upon us.
 7              I'm going to give you a week to do
 8    the -- to get the declarations to lay a foundation and
 9    then Mr. Kirpalani can then -- then his colleagues go
10    take the depositions if they want.
11              SIGMUND WISSNER-GROSS:  Well, Your Honor,
12    I can tell you that getting declarations from former
13    Defendants, as well as people that were affiliated
14    later on, represented by common counsel with former
15    Defendants, is not realistic.  These
16    are people that included --
17              JUDGE MARTIN GLENN:  Under cooperation
18    agreements maybe?
19              SIGMUND WISSNER-GROSS:  Well, I can't
20    comment on, you know, a confidential settlement
21    agreement, but getting -- the notion of getting a
22    declaration is not feasible.
23              And this really isn't a case of stringing
24    together e-mails, as Mr. Kirpalani said.  We're talking
25    about quite a number of people, some of whom who have
```

1   already submitted declarations previously in the case

2   and were deposed about their declarations.

3         So from our perspective, we do think --

4         JUDGE MARTIN GLENN: Let me ask you this

5   then, Mr. Wissner-Gross. Rather than have a -- you're

6   offering the exhibits, you're going to have the burden

7   of establishing the proper foundation for them. If you

8   think you've got devices for it, fine. If you don't,

9   you say you won't be able to get declarations.

10         I accept your statement as true. I'm

11   surprised you don't have -- the people who settled

12   with you, you don't have some cooperation agreement

13   with, but how do you want to proceed? You know, you

14   don't have much time. You can -- if you want to chase

15   them down, subpoena them, take their depositions.

16   Say there's an issue of -- I'm not going to open up

17   depositions again on the merits, but if you got exhibits

18   that you want to get in, Mr. Kirpalani

19   says 100 plus e-mails, I'll let you -- I'll give you a

20   very short period of time to, you know, get subpoenas

21   if they're in Texas or as mentioned here, you want to

22   get them served in Texas and take their

23   depositions, it's your call.

24         SIGMUND WISSNER-GROSS: Justin Weddle

25   will address some of these points.

1          JUDGE MARTIN GLENN:  Okay.

2          JUSTIN WEDDLE:  Thank you, Your Honor.

3   Justin Weddle from Brown Rudnick.

4          There are two separate issues here, as

5   Your Honor, I think, indicated.  There's an issue of

6   proper business records foundation, but the rules

7   expressly say can be laid by any proper custodian, right?

8          And in fact Your Honor's -- what Your Honor

9   was discussing about a potential means of proceeding is

10  actually more complex than the rules of evidence require,

11  because the rules of evidence say two important things.

12  One is they say under 803.6 that any proper custodian

13  can lay the business records foundation.  So it doesn't

14  have to be the author of an e-mail for example.

15         And they also say that, under 902.11 that

16  business records foundation can be laid by declaration

17  and that declaration suffices unless the party objecting

18  demonstrates an unreliability.

19         JUDGE MARTIN GLENN:  Let me ask you this

20  though.  Let's say there's about 100 plus e-mails among

21  these people.  How do you establish whether an e-mail

22  is a business record?  It typically doesn't satisfy

23  the test of the business records exception.

24         JUSTIN WEDDLE:  Certainly they do,

25  Your Honor.  There's no rule that business records

1  -- that e-mails can't be.

2              JUDGE MARTIN GLENN:  I understand that.

3  If you decide that you have a proper -- that you can

4  lay a proper foundation and those are within the

5  limits -- and I hear an objection, I'll hear it.

6              If the proper foundation has been laid

7  for it, it sounds like you've got an issue of whether

8  e-mail -- the e-mail specifically in that satisfies

9  the business records exception, yes, if we would have

10  a declaration from a custodian who was not involved,

11  there's not -- it's e-mails.  Those come all the

12  time, you know.  Business records are accounting records,

13  they're loan servicing records, they're things of

14  that nature.

15              If you think -- I'm not pressuring to do

16  anything.

17              JUSTIN WEDDLE:  I think we have the

18  foundation, Your Honor.

19              JUDGE MARTIN GLENN:  You take your

20  chances.

21              JUSTIN WEDDLE:  I think we have the

22  foundation, Your Honor and you'll see it.  But you know,

23  just to sort of add a little color to this, these are not

24  idle chit chat e-mails, you know.  It's like an e-mail

25  that says here are the numbers that we just made or

1    something like that.

2             So it's pretty clear from the fact -- these

3    are e-mails that are business related.  They're

4    substantive discussions about business related issues

5    among Lyondell people.

6             JUDGE MARTIN GLENN:  You know,

7    contemporaneous records that record an act or event

8    at or about the time that it's reflected in a business

9    record and it's the practice of the business to maintain

10   the record, I don't -- you know, I don't want to

11   doing anything -- but the business records

12   exception has got a number of very specific

13   requirements.

14            I'm not forcing you to do anything.

15   You're on notice from Mr. Kirpalani that he'll object

16   and you're on -- it sounds like you've got -- you know,

17   you reject declarations and you don't want to

18   depose the people, fine.  You'll offer the

19   exhibits and they'll come in or they won't come in.

20            I don't do anybody any favors.  If

21   there's a serious objection to these exhibits,

22   I will rule on it.  If the evidence is in the record

23   to establish that there is a foundation, they'll get

24   admitted.  If it's a question of well, we've got

25   a witness scheduled for next week, it's sometimes

1  conditionary to admit subject to a motion to

2  strike if the foundations isn't subsequently laid,

3  because there's not a jury, okay.

4           You've got the burden, okay?

5  -- declarations and you  have your depositions,

6  that's fine, that's your best shot.

7           JUSTIN WEDDLE:  All I'm saying is we can

8  lay the foundation with a custodian.  We don't have to do

9  that Mr.  Kirpalani is saying which is to call the people

10  involved in the chain to discuss what --

11           JUDGE MARTIN GLENN:  -- what you're going

12  to have to do.  The issue's been raised.  Are you calling

13  a custodian?

14           JUSTIN WEDDLE:  So what we propose to

15  do is either reach agreement as to a custodian, call

16  the custodian, or proceed by this 902.11 rule which is --

17           SIGMUND WISSNER-GROSS:  I thought you just

18  told me you couldn't get declarations.

19           JUSTIN WEDDLE:  We can get a custodian

20  declaration, Your Honor.  So the -- it's a difference

21  between asking the people who are writing and receiving

22  the e-mail, you know, what else is going on around here,

23  can you explain this.  That's additional.  That's external

24  to the e-mail itself.  The e-mail itself could be a

25  business record --

1              JUDGE MARTIN GLENN:  All right.

2              JUSTIN WEDDLE:  -- and then someone could

3     explain it.

4              JUDGE MARTIN GLENN:  That's fine.  When

5     are we going to give them the custodian declaration.

6     One week.

7              JUSTIN WEDDLE:  Okay.

8              JUDGE MARTIN GLENN:  And then Mr. Kirpalani,

9     schedule a deposition probably on the eve of trial.

10    If you've established the required foundation, the

11    exhibits will come in evidence.  If they don't -- if you

12    don't, they won't come in.  So it's really as simple as

13    that.

14             JUSTIN WEDDLE:  I fully understand, Your

15    Honor.

16             JUDGE MARTIN GLENN:  What I don't want to

17    do, if you have a week to do the custodian declaration

18    and Mr. Kirpalani is not able to take the deposition, well

19    both sides can brief the issue on whether the foundation

20    has been properly laid andI'll rule before an October 17th

21    trial --

22             JUSTIN WEDDLE:  The only point is we

23    don't have to call Dan Smith to explain --

24             JUDGE MARTIN GLENN:  I'm not telling you

25    who to call.

1              JUSTIN WEDDLE:  Right.

2              JUDGE MARTIN GLENN:  I'm just telling -- you

3    want to offer the exhibits.  If you lay the foundation,

4    they'll come in.  If you don't, they're not.  Okay?

5              JUSTIN WEDDLE:  I've got that, Your Honor.

6              JUDGE MARTIN GLENN:  So one week from today

7    for the declarations.  Mr. Kirpalani, it's  going to be

8    one witness, how quickly can you take the deposition?

9              SUSHEEL KIRPALANI:  I'm sure we can do it in a

10   week, if that.

11             JUDGE MARTIN GLENN:  So a week for the

12   deposition, whether it's going to be your declarant, your

13   custodian.  Take a deposition, okay?

14             JUSTIN WEDDLE:  Thank you, Your Honor.

15             JUDGE MARTIN GLENN:  So what other issues --

16   just so it's clear, subject to any further ruling or

17   judgment -- in the complaint and we'll proceed to trial,

18   as to the other claims in the complaint, you can bring

19   forth defenses in light of Mr. Kirpalani, that's fine.

20             And if Judge Cote changes her mind and it

21   affects the outcome, well, we'll know that in due course.

22   Okay?

23             So let me see, I had some other notes with

24   some other issues I wanted to address.  Okay.  I do have

25   opening statements, that was flagged as an issue.  I think

43

1    90 minutes is -- should be more than sufficient for

2    each side.

3                    SUSHEEL KIRPALANI:  And, Your Honor, if not

4    all of it is used, then it doesn't count against --

5                    JUDGE MARTIN GLENN:  It's whatever you use.

6    I allow 90 minutes, okay.  Shorter may be better, okay,

7    but I'll give each side up to 90 minutes.

8                    I do like pre-trial briefs.

9                    SUSHEEL KIRPALANI:  Judge, I'm sorry to

10   interrupt you.  I had a question about this.

11                   JUDGE MARTIN GLENN:  Sure.

12                   SUSHEEL KIRPALANI:  We're happy to do that,

13   obviously, working.

14                   JUDGE MARTIN GLENN:  I suspected you would

15   be without my doing it.

16                   SUSHEEL KIRPALANI:  The issue is some

17   pre-trial briefs they're written sort of as almost

18   summary judgment briefs, which, you know, you have this

19   citation and that document and this depo transcript and

20   this case law.

21                   Is that what you're looking for or do you

22   just want what are your legal contentions, what's the

23   governing law on standard of proof, solvency, reasonable

24   value, forget about the facts.  Okay, that's what I thought.

25                   JUDGE MARTIN GLENN:  What I usually ask for

1    is a brief that includes -- it's a memorandum of the

2    elements of the claims and the constants.  And very brief,

3    you know, discussion of the facts, not detailed discussion

4    of the facts, but what your side believes are the elements

5    of the claims and defenses.

6            So as we go through the trial I have what

7    is, you know, in my own mind is a checklist of okay, here

8    are the claims, this is the element of the claim the

9    Plaintiff has the burden of proving one, two, three, four

10   five.  The Defense has raised an objection by his defenses.

11   Okay?  And that's what I like to see.  I mean it's along

12   the lines of what we described.

13           SUSHEEL KIRPALANI:  Yes.  That's what we

14   thought, we just wanted to make sure.

15           JUDGE MARTIN GLENN:  Yeah, that's fine.

16           SUSHEEL KIRPALANI:  There's no disagreement,

17   just to be fair, he just didn't know either.

18           JUDGE MARTIN GLENN:  No, it's discussed

19   with both sides.  That's what I'm -- I find most helpful

20   not 100 page trial brief, but a brief that -- it's hard

21   for me to keep track of each cause of action that's in

22   this case.  I've worked with this case

23   for a long time, okay?  And it's a checklist for me

24   and my law clerks, okay?

25           These are the claims, this is the law

1   that's in the claims and these are the defenses that

2   are being asserted.  You may disagree as to what the

3   elements are to be shown.  Really post trial briefs.

4            SUSHEEL KIRPALANI:  Okay.  That was the

5   second thing. Ms. Orenstein and I discussed a couple

6   of weeks ago whether this dovetails with the contentions

7   of fact.  Should it be these are the checklist facts that

8   are in dispute and then there would be proposed findings

9   of back and post conclusion of law that detailed, okay,

10  there's how we established or didn't establish that

11  particular --

12           JUDGE MARTIN GLENN:  Well, are you going

13  to have a daily transcript, have you discussed that?

14  Are we doing to have a reporter in here for a daily --

15           SUSHEEL KIRPALANI:  We haven't discussed.

16           SIGMUND WISSNER-GROSS:  I'm sure we

17  could agree.

18           JUDGE MARTIN GLENN:  Okay.  For a long

19  trial it's helpful, because you can't get read backs

20  and I just find -- you know, you have to have a reporter

21  come in and things like a lot of microphones and things

22  like that are usually set up near the witness box.

23  So I think -- I'm not forcing you to do it,

24  but I think it would be helpful.

25           SUSHEEL KIRPALANI:  We'll do it.

1              SIGMUND WISSNER-GROSS:  We'll do it.

2              JUDGE MARTIN GLENN:  Okay.  I guess I have

3    to say, the Court -- it's not the official transcript.

4              SUSHEEL KIRPALANI:  Right.

5              JUDGE MARTIN GLENN:  But it's helpful.

6              SUSHEEL KIRPALANI:  So I mean it's a

7    similar question.  So on these contentions of fact,

8    you know, for example the entity was rendered insolvent.

9    That's a contention of fact.  Or is it the entity was

10   rendered insolvent because on such and such day so and so

11   said this and such and such day so and so said that and

12   we're going to bring in all these things and exhibits.

13             I was envisioning the streamlined

14   version for the pre-trial contentions of fact and the

15   chock full of support version when we have the support --

16             JUDGE MARTIN GLENN:  Mr. Wissner-Gross.

17             SIGMUND WISSNER-GROSS:  We're probably

18   looking to go a little more detailed, but what I'll

19   do is whatever format Your Honor would like it in,

20   that's the way we'll present it.  We can go either way.

21             Our only concern was that the conclusory

22   presentation might get so conclusory as to not really be

23   informative to Your Honor about the basic --

24             JUDGE MARTIN GLENN:  But I think what I --

25   look, I'm going to look at the disputed issues, elements

1   of the claims and the defenses in the statement of what

2   the issues or the facts are and then at the end of the

3   case, I'll make the --

4                SIGMUND WISSNER-GROSS:  For example on

5   inadequate capitalization, it's one thing to say that

6   the company was inadequately capitalized.  As another

7   thing, we might give you sort of -- even at a high

8   level, an overview of some of the basic facts that

9   we're going to --

10               JUDGE MARTIN GLENN:  That's helpful.

11  You can -- but it's not 100's of pages of --

12               SIGMUND WISSNER-GROSS:  I understand.

13               JUDGE MARTIN GLENN:  Okay.

14               SIGMUND WISSNER-GROSS:  That's fine.

15  So we can the same counter story.

16               JUDGE MARTIN GLENN:  Yes, I'm sorry.

17               SIGMUND WISSNER-GROSS:  Okay.

18               JUDGE MARTIN GLENN:  Okay.  Mr.

19  Kirpalani, do you have other questions?

20               SUSHEEL KIRPALANI:  Well, yeah, I did.

21  I didn't mean to interrupt your flow, but the other

22  issues we have, we did the fact contentions, we did

23  the pre-trial brief.  I think opening arguments.

24               JUDGE MARTIN GLENN:   -- your issue.

25  Mr. Wissner-Gross.

1              SUSHEEL KIRPALANI:  Proposed findings of

2     fact, conclusions.  Okay.  Time allocation.

3              JUDGE MARTIN GLENN:  Yes.

4              SUSHEEL KIRPALANI:  We had a couple of

5     meet and confers on this and our position was 50/50.

6              JUDGE MARTIN GLENN:  That sounds fine to

7     me.  Mr. Wissner-Gross, you're okay with the 50/50?

8              Let me just stop?  At least as to how

9     I've -- we had this discussion about foundation issues

10    on e-mails and I don't want to take trial time to do it.

11    I mean the trial time will be objection and I'll rule.

12              I generally don't hear, you know, I might

13    ask you briefly tell me what the foundation for this

14    exhibit is.  I don't do it as to 100 exhibits.  But

15    if you got a custodian -- if ou're resting on a

16    custodian's declaration, it isn't going

17    to change from exhibit to exhibit probably.

18              SIGMUND WISSNER-GROSS:  We're fine with a

19    50/50 split.  Our concern was --

20              JUDGE MARTIN GLENN:  I mean you said you --

21    you don't control of these witnesses.

22              SIGMUND WISSNER-GROSS:  And we don't

23    control a lot of these non-party witnesses or former

24    Defendants.  And being we're concerned with the way the

25    dialogue with Quinn Emanuel has been going, we made

1    progress on their exhibits,

2    but on our exhibits somehow we didn't see reciprocity and

3    what I was concerned with is that we'd be spending half

4    of our trial time trying to establish a foundation with

5    respect to what we think are fairly obvious business records.

6    And there was my, you know, concern of a 50/50 split.

7              But it sounds like Your Honor is giving

8    guidance as to how he'd like to proceed, so a 50/50 split

9    is fine with us.   That was the reason for my concern about

10   just whether committing to it.

11             JUDGE MARTIN GLENN:  What's going to happen

12   is that we have foundation objections and you're each

13   going to spend amounts of time.  I shall -- both sides.

14   What I didn't want to do is have a string of witnesses

15   doing the foundation and a string of exhibits and trying

16   to deal with that.

17             SIGMUND WISSNER-GROSS:  Very good, Your

18   Honor.

19             JUDGE MARTIN GLENN:  Okay.  I see you're

20   satisfied with -- your witnesses as well?

21             SIGMUND WISSNER-GROSS:  Yes.

22             JUDGE MARTIN GLENN:  Okay.  Are there any

23   issues we missed?

24             SIGMUND WISSNER-GROSS:  Some, Your Honor,

25   include what your view is on experts.  We've heard about

1   your fondness for Luxemburg law and Luxemburg experts.

2   Our expert would be available to be present if Your

3   Honor has any questions or there is cross of him on

4   his expert issues.  But I think both sides don't know

5   what your preference is in that regard.

6             So if would be helpful to get your

7   guidance as to whether you would prefer to have our

8   experts available.

9             JUDGE MARTIN GLENN:  That's a good point.

10  Mr. Kirpalani, why don't you go first.

11            SUSHEEL KIRPALANI:  Your Honor, this is

12  something that we wanted raise as well.

13            JUDGE MARTIN GLENN:  Who's your expert?

14  He's -- expert.

15            SUSHEEL KIRPALANI:  Yeah, it's Alex

16  Schmidt of LaBon (phonetic) Schmidt.  And we have

17  Dutch law expert too.

18            But, Judge, these Luxemburg claims, we

19  had attempted at one point in our lifetimes to move to

20  dismiss on form, on convenient grounds, that was denied

21  because Judge Gerber felt that even though it's not a

22  country where story (phonetic) decises (phonetic)

23  is followed, nevertheless that he could opine as to

24  what a Luxemburg jurist might do on this situation.

25            Putting that to the side for a moment,

1    I'm not trying to say anything more than what I just

2    did.  And I think that's an accurate recitation.

3                    JUDGE MARTIN GLENN:  Do you agree, Mr.

4    Wissner-Gross?

5                    SUSHEEL KIRPALANI:  That's okay.  I'll

6    buy him a beer.

7                    But with respect to the Luxemburg claims,

8    we were actually looking forward to hearing today's

9    arguments.  We haven't taken the time to worry about

10   this, spend another $50,000 working on Luxemburg

11   translations.

12                   Would the Court entertain -- I know -- I

13   realize the magnitude of what I'm asking.  Would the

14   Court entertain a motion along the lines of what you

15   undoubtedly and your clerks undoubtedly prepared for

16   anyway for today, along the lines of that, because

17   from our perspective these Luxemburg block things

18   are out of left field. And I think it will help the

19   trial.

20                   If Your Honor says no, everything is

21   staying in, and we think it's as good as any other

22   option to just read the competing written things.

23                   JUDGE MARTIN GLENN:  -- two motions, I'm at

24   two trials between now and trial in this case.  One's

25   a re-trial and one's that -- a day, but the other

1    is a re-trial.  I have things stuck that I've got

2    to get done, so I'm not anxious to have any motions.

3                    SUSHEEL KIRPALANI:  Written submissions.

4                    JUDGE MARTIN GLENN:  Both -- on experts?

5                    SUSHEEL KIRPALANI:  Well, it's just like

6    two other treatises, I guess.

7

8                    JUDGE MARTIN GLENN:  Yeah.

9                    SUSHEEL KIRPALANI:  On prior law.

10                   (Court's microphone has a lot of static)

11                   JUDGE MARTIN GLENN:  I spoke with Judge

12   Gerber and I thought he summarized the law on -- I guess

13   it is, I don't know -- I guess originally he dismissed

14   a -- to amend the claims against them.  I thought he

15   accurately saw as to how it's done.  What -- answering

16   your question -- to me.  Mr. Wissner-Gross, Mr. Kirpalani?

17   Maybe to try to -- on how you might typically -- the

18   declarants I required didn't -- for

19   cross examination.

20                   And another thing that -- solutions on

21   Luxemburg law, without the persons here for cross

22   examination, I am -- to compare the -- questions

23   about -- is also an issue.

24                   If one of you has the opportunity to ask

25   them or -- person -- have to be here.  Okay, just -- it is

1   evolving soon.

2            I must say it's not that I have -- I'm

3   just saying in Harris and completing the -- Place, that

4   was shipping, I had English law and that was under -- side

5   were -- to cross examine.  They asked them, the expert,

6   questions that were just -- that's how they were --

7   but I'm not -- if either one of you has a chance to

8   examine, the other's expert doesn't have to be here.

9            SIGMUND WISSNER-GROSS:  I'll explain to him.

10           SUSHEEL KIRPALANI:  Yes, I just have two more

11  issues, Judge.  The first one is in the Trustee's

12  additional statement of issues that up for status

13  conference.

14           JUDGE MARTIN GLENN:  Yes.

15           SUSHEEL KIRPALANI:  They did a broad

16  statement that if they don't control the witness, then

17  they may not be able to bring in a declaration for them.

18  That may be or may not be, because we don't control

19  some witnesses, but they may be willing to give us

20  declarations, but that is what it is.

21           But then he wants the right to

22  immediately start cross examining even what is not

23  an Access side witness, just a neutral witness.

24  Take for example someone who worked at  Lyondell,

25  okay, who has nothing to do us.  I think the Trustee

1    is saying that they want the immediate ability to start

2    cross examining them and we think that the appropriate

3    rule for someone that they call in their direct case

4    would be to elicit direct testimony.  And only if it

5    becomes a hostile witness and of course they revert.

6            And I just wanted to make it clear that we

7    weren't agreeing with their formulation.  If they don't

8    control the witness such that they can have a declaration

9    from them, then they can immediately start with cross.

10   I didn't think that that was right.

11           JUDGE MARTIN GLENN:  Control of a witness does

12   not go to treating the witness as a hostile witness.  And

13   so you don't control the witness, you can't get a

14   declaration, you can say to them you can begin your

15   examination with direct questions like -- leading questions

16   on foundation subjects rather than dragging things out.

17   But after one or two objections on a segment, I'm not

18   going to object on things that are foundational, but

19   things that matter, you're going to object.

20           SUSHEEL KIRPALANI:  Okay.

21           JUDGE MARTIN GLENN:  But it's leading and it

22   you can establish that somebody is -- on this premise, then

23   you're entitled to questions --leading questions, I'll

24   permit it, but it's not automatic.

25           SUSHEEL KIRPALANI:  Thank you, that's

1   clarified. Again, there are witnesses that we don't

2   control either, but we're picking up the phone and we're

3   talking them and would you be willing to come and talk

4   about what happened in those day.  And if they're going to

5   be willing to put a declaration together, we'll try and

6   do it that way.  Okay.

7               JUDGE MARTIN GLENN:  Maybe the best --

8   issue some letters to witnesses and call once or twice.

9               SUSHEEL KIRPALANI:  Yes.

10                  (Static at Court's microphone)

11              JUDGE MARTIN GLENN:  What I usually say

12  is when you submit it, like general -- witnesses are

13  either going to -- it depends, I generally prefer

14  witnesses being called only once.  There's no jury.

15  So cross examination means coming back, I permit, I ask

16  either counsel bring them into court, this is not

17  avoided.

18              In the case of a lot of witnesses, they're

19  going to have scheduling problems and then -- the trial

20  to cooperate.  I'm generally -- of the other side --

21  who are not only  witnesses, so they have time to

22  prepare, you know, pull out the  depositions and do

23  it -- in which the -- it's what I consider a courtesy

24  in cooperation.

25              You know I think I can run very

1   harmonious since we're in -- system.  No one -- question

2   a witness until they're crowding the other side's case.

3   And some of the questions they're going to ask, I said -- I

4   say out of bounds and they say fine.  Okay?

5            But they're still other times -- every witness

6   wants, everyone's different.  The problem is they get

7   into subjects and they can't -- when you're planning on

8   their testimony, that's certainly --.  That was

9   addressed in the letter.  That's a little --

10            SUSHEEL KIRPALANI:  That's helpful.

11            JUDGE MARTIN GLENN:  If what I just said,

12   there are going to be a couple, one or two witnesses

13   for -- additional witness that might have said no as

14   to witness X, but we're not examining them in the course

15   of your -- you know, on that case, but that's come up

16   more than --

17            But I want -- if your witness is

18   going to be -- I'm just getting exhibits here and --

19            SUSHEEL KIRPALANI:  Understood, we'll look

20   that up.

21            JUDGE MARTIN GLENN:  Okay.

22            SUSHEEL KIRPALANI:  The last item that

23   I had, I don't know if Mr. Wissner-Gross has any more,

24   was if the -- the Trustee's counsel has talked about

25   how there's so many witnesses that are going to come

1   live and this may be why they're not going to call the

2   star, Dan Smith, to trial

3               But that aside for a second, but if

4   that's really their position, there were three witnesses

5   that were Access people.  One lives in London, Lincoln

6   Benet (phonetic).  He was deposed at length by the Trustee.

7   The other is Alex Bovadnik, Lin's brother, who lives

8   in Florida, not in New York.  And the other one is Peter

9   Ferrane (phonetic), who is a mid-level

10  employee at Access.  All three were deposed at

11  length.

12              And putting Mr. Ferrane aside just for

13  a second, the other two are outside -- they're far

14  from the Court.  And we haven't been able to make

15  any headway with the Trustee's counsel and why these

16  people are needed live in the courtroom.

17              Mr. Bovadnik, the younger brother who

18  lives in Florida, he's not a party in this action

19  and so we're not going to bring him here from Florida

20  to have questions -- I mean to try to get him here,

21  I guess we could try to get him here.

22              Lin Bovadnik, the Defendant, of course

23  he's going to be here.  Of course he's going to

24  testify.  And then as for Mr. Benet, who lives in London,

25  while he is a party, I just for the life of me can't

1    understand --

2            JUDGE MARTIN GLENN:  My view -- my

3    advice, but I think I have the authority to order another

4    party to be here.

5            SUSHEEL KIRPALANI:  But I can't persuade --

6                (Static at Court's microphone)

7            JUDGE MARTIN GLENN:  A non-party -- hold on,

8    I'll give you a chance Mr. Wissner-Gross.  A

9    non-party -- going to know I can't -- if they're

10   outside -- range.

11           SUSHEEL KIRPALANI:  I just think if

12   we're talking about -- and of course with parties, it's

13   all about compelling

14   their attendance.  Where is -- you have to compel their

15   attendance.  Third party, you can call them up and say

16   the Judge wants to have you in court or a detective wants

17   to have you in court.

18           What we're talking about is we have over

19   20 witnesses.  Over 20 witnesses between us.  And I'm

20   including Overlock (phonetic), so between 20 and 25.

21   The true number could be 20, 25.

22           If we're trying to streamline and get

23   this case done in three weeks, you would think that

24   someone who was deposed for seven hours, who they're not

25   going to get anything more than what they're already

1   asked and substantiated with testimony before.

2            And even though we night not have asked

3   witnesses, questions of our own witness, we're just not

4   troubled by their deposition.  They can just designate

5   the portions of the deposition that they want.  Mr.

6   Wissner-Gross said that he's not 40 something deposition

7   designations, so I don't understand why some people who live

8   far away from here, other than just to drag them or

9   try to drag them here, you would want to have them

10  here.

11           JUDGE MARTIN GLENN:  Well, as to Mr. --

12           SUSHEEL KIRPALANI:  You don't need to do that.

13  We're talking about frank -- and let's do anybody --

14           JUDGE MARTIN GLENN:  I didn't -- at this

15  point everybody that -- trying to go over the evidence,

16  it's often the case that I simply say any questions and

17  they say I have no -- which is a signal time to move on.

18           I don't want to take the time to make --

19  demonstrate -- to make a point to death, okay?  And

20  so if we find out -- what happens in the case, with

21  cross examination -- always can use effective cross

22  examination and short cross examination to

23  make your points, you can actually make it -- to

24  be paid money.

25           I want to hear from Mr. Wissner-Gross

1   about the witnesses outside of New York.

2              SIGMUND WISSNER-GROSS:  Your Honor,

3   with respect to these three witnesses, Mr. Benet is

4   the CEO of Access who is not --

5              JUDGE MARTIN GLENN:  I've already said,

6   we've about out of time now.  He's a party, you want him,

7   he's here.

8              SIGMUND WISSNER-GROSS:  And Mr. Alex

9   Bovadnik, aside from having the distinction of

10  being Linda Bovadnik's younger brother, was an officer of

11  Access, one of the parties.

12             JUDGE MARTIN GLENN:  But he's not anymore.

13             SIGMUND WISSNER-GROSS:  No, the thing is I

14  believe he's still an officer.  He and Mr. Ferrane

15  were originally made Defendants on -- in the case.  When

16  we amended the complaint, we dismissed some of the claims,

17  so they're -- they're not, but both Mr.

18  Alex Bovadnik and Ferrane were deeply involved with

19  respect to the total transactions.

20             So I'd argue that there are some credibility

21  issues respectfully and that Your Honor would benefit,

22  even though there will be short cross, by having them live.

23             JUDGE MARTIN GLENN:  Let me ask.  If you want

24  to put in a short letter away from my authority and

25  call the appearance of officers who are not parties,

1    I'll look at that.

2              SIGMUND WISSNER-GROSS:  We'll do that,

3    Your Honor.

4              JUDGE MARTIN GLENN:  Try and work it out

5    again.  It may -- it may not be worth fighting about.

6              SUSHEEL KIRPALANI:  It's not my life, it's

7    other people's lives that I'm trying to deal with.  I'm

8    going to be here anyway, but if there are credibility

9    points that Mr. Wissner-Gross feels that he's gotten,

10   presumably he's gotten them in the deposition.  So that's

11   what I don't understand.

12             JUDGE MARTIN GLENN:  I'm not --

13             SUSHEEL KIRPALANI:  But okay, we'll try to

14   work it out.

15             JUDGE MARTIN GLENN:  if you can work it out,

16   fine, otherwise you can each put in letter briefs about

17   the Court's authority to compel the attendance of a

18   non-concernable party to appear at trial.

19             SUSHEEL KIRPALANI:  And just to be clear,

20   we've offered to stipulate facts to avoid people having

21   to be dragged in.

22             JUDGE MARTIN GLENN:  Yes.  And what I'll ask,

23   because we're talking about under a week from today -- those

24   arguments and a motion.  Okay?

25             SIGMUND WISSNER-GROSS:  That's fine.

```
 1              SUSHEEL KIRPALANI:  Thank you, Judge.
 2              The last item, a little housekeeping.
 3    Those pre-trial briefs, there's currently no deadline,
 4    because they weren't contemplated before.  Is it the
 5    same, October 3rd, which is when everything else is?
 6              JUDGE MARTIN GLENN:  If you want them --
 7              SUSHEEL KIRPALANI:  Yeah, that's what we
 8    were talking about.
 9              JUDGE MARTIN GLENN:  Well, hold on.  Stop.
10              SIGMUND WISSNER-GROSS:  For some people
11    October is the first day of Rosh Hashanah, but --
12              JUDGE MARTIN GLENN:  Yeah, I would, in full
13    disclosure, I'm out of the country from the night of
14    October 4th until sometime during the day on October 10th,
15    but my law clerks will be here and they can get to work
16    on it all.
17              SUSHEEL KIRPALANI:  I want to get it in by
18    that time.
19              JUDGE MARTIN GLENN:  I'll be out of the
20    country during those days.
21              SUSHEEL KIRPALANI:  And the last
22    housekeeping, truly housekeeping items, but you haven't
23    seen these proposed lists, but there was 30(b)(6)
24    representative from Gibraltar for Non-Limited,
25    which is a Gibraltar company.  Mr. Wissner-Gross and
```

1   his colleagues designated portions of his deposition,

2   which  makes perfect sense, because we both had

3   opportunities to ask him questions, we plan to do the

4   same thing, rather than bring the person from Gibraltar

5   here.  I just want to make sure that was okay and that you

6   knew about that.

7                   JUDGE MARTIN GLENN:  Did Mr. Wissner-Gross

8   know about that?

9                   SUSHEEL KIRPALANI:  Yeah, I just noticed

10  it was on your list and we just put it on our list for

11  the depo designations.  I just wanted to --

12                  SIGMUND WISSNER-GROSS:  We'll work it

13  out.

14                  JUDGE MARTIN GLENN:  Okay.

15                  SUSHEEL KIRPALANI:  Thank you, Judge.

16                  JUDGE MARTIN GLENN:  All right, thanks a lot.

17  Mr. Wissner-Gross.

18                  SIGMUND WISSNER-GROSS:  We only have one

19  other point and that was that the in limine motions

20  under the current schedule I think are due on the 10th

21  and we wonder whether it would be more helpful for Your

22  Honor to get those in a week earlier.  October 3rd is a

23  bad day for many of us, it may be that we could get them

24  in even before then, but our thinking was perhaps if we

25  got the in limine motions or briefs in earlier that we

1    could get over -- prior to the trial, so we can get

2    more in the last part of the trial.  And that would

3    be helpful I think.

4              JUDGE MARTIN GLENN:  Can you tell me

5    how many in limine motions you anticipate?

6              SIGMUND WISSNER-GROSS:  Justin, you

7    want to --

8              MR. WEDDLE:  I think it's some of the

9    same issues that we've talking about, Your Honor, like

10    one of the problems that are at first and can be

11    asking questions --

12              JUDGE MARTIN GLENN:  I find this very

13    hard to deal with in an in limine motion.  But I'm not

14    saying don't file it as a in limine motion, but --

15              MR. WEDDLE:  And Mr. Kirpalani alluded

16    to this, but they have some objections to some of

17    the material in our expert reports, we have objections

18    to theirs, so there's some things that I think it's

19    helpful to at least compile the law for Your Honor,

20    rather than doing it on the fly.

21              JUDGE MARTIN GLENN:  Sure.

22              MR. WEDDLE:  And to the extent it's

23    helpful to get them earlier, we think that it makes sense

24    to freeze it a little bit earlier.  We're talking

25    about the -- so we really haven't had an chance to

1  confer with the other side on it.  But I was thinking
2  if we filed around October 3rd, then people would
3  know around the 10th, then you had it fully completed,
4  it would be before trial.  If you wanted to deal
5  with them before trial you could and if you wanted
6  to wait for trial, you could, but if we're filing
7  them for the first time on the 10th, it's going to be
8  hard to get them fully briefed before trial.
9           RICHARD WERDER:  Your Honor, Rich
10  Werder for Quinn. I actually don't think there's
11  very much disagreement here.  I believe that there
12  may be just a misinterpretation of when the
13  deadlines are.
14           My understanding from Your Honor rules
15  is that Motions in Limine are due two weeks prior to
16  trial, so that's already October 3rd.  I think that
17  the confusion of the date is that at the summary
18  judgment hearing I believe Your
19  Honor said that October 3rd would be also the day on
20  which the -- any party would submit their witness
21  direct declarations and one week from that would
22  be Motions in Limine as to that testimony.
23           So I think there are two different
24  MIL deadlines, one would be October 3rd for general
25  issues and then one would be October 10th

1  relating specifically to the direct testimony.

2            JUDGE MARTIN GLENN:  I don't know what

3  he said. That's sounds reasonable.  I honestly

4  don't remember.

5            MR. WEDDLE:  And that's reasonable to us.

6            SUSHEEL KIRPALANI:  I think we only had one

7  motion in limine, it's on this expert as fact witness issue.

8  That's it.

9            JUDGE MARTIN GLENN:  Well, interesting, yes.

10  Okay. I will see them.  Anything else,

11  Mr. Wissner-Gross?

12            SIGMUND WISSNER-GROSS:  I don't think we

13  have anything else, Your Honor.

14            JUDGE MARTIN GLENN:  Okay.  Can we

15  schedule another hearing before the trial date?

16  Do we have one?

17            SUSHEEL KIRPALANI:  We need one, but no,

18  we don't have one.

19            JUDGE MARTIN GLENN:  Okay.  What I'd like

20  to do is schedule a telephone hearing for 10:00 a.m.

21  October 11th.  That evening is the start of Yom Kippur,

22  it may affect -- it certainly affects me and others.

23  So we'll do it as a telephone hearing in the morning.

24            And I really just want, hopefully, a pretty

25  final update on where things stand for trial.  All of your

1  briefs and motions should be in and we'll have somebody

2  do a quick call hook up for the hearing.  I get back into

3  the control room the day I come in you know before, so I

4  may not be entirely with it, but hopefully it won't be very

5  long and we can cover whatever open issues.

6          SUSHEEL KIRPALANI:  Your Honor, you want a

7  written submission about that?  Like a letter?

8          JUDGE MARTIN GLENN:  I think it would be

9  helpful if you could do it, what motions were filed.

10 With respect to Motions in Limine, I generally try to

11 resolve those before the start of trial.  It's going to hard

12 for me to do because of my schedule both from the time those

13 motions are put in until the start of trial, but I recognize

14 that it's helpful, it does affect your trial planning to know

15 the answers to those, but I can't assure you that I'm going

16 to be able to do that.

17          And if I do, I generally decide versus -- I

18 decided solely on the papers and sometimes, not surprising,

19 I deny them without prejudice because I just concluded I

20 wanted to hear evidence or argument at trial to deal with it,

21 decide whether it's --

22          SUSHEEL KIRPALANI:  Judge, on the issue of

23 the one Motion in Limine that I mentioned that we plan

24 on filing which has to do with what I call expert as fact

25 witness, I think you understand what I mean when I say that.

1    Would it change that -- would it change your
2  ability to rule on it before trial if we filed it early?
3  If we filed it like -- what deadline would we have to file
4  it such that you might have enough time to look at it
5  before you leave?
6    JUDGE MARTIN GLENN:  When can you file it
7  Mr. Kirpalani?
8    SUSHEEL KIRPALANI:  One week from today.
9  We can do it earlier, my partner is telling me, which
10  definitely means that I'll be working even harder.
11    JUDGE MARTIN GLENN:  You know, I have a trial
12  on the 19th that I've forgotten about.  So if you get it in
13  by Tuesday the 20th, okay?  And I'll give the other
14  side one week to respond to it.  Tuesday the 27th.
15    SIGMUND WISSNER-GROSS:  Very good,
16  Your Honor.
17    JUDGE MARTIN GLENN:  Okay.  And I'm in
18  trial all the week of the 26th, but I will try my best
19  to see if I can rule on it then.  Just file the motion
20  and opposition to it.
21    SUSHEEL KIRPALANI:  This is not one that
22  has novel issues.  So it's going to be --
23    JUDGE MARTIN GLENN:  Okay.  All right.
24    SUSHEEL KIRPALANI:  Thank you.
25    JUDGE MARTIN GLENN:  Okay.  Everybody

1    satisfied for today?

2              SIGMUND WISSNER-GROSS:  Yes, Your Honor.

3              JUDGE MARTIN GLENN:  All right.  Thanks

4    very much everybody.

5              SUSHEEL KIRPALANI:  Thank you,

6    Your Honor.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    CERTIFICATION

3              I, JENNIFER WILSON, the assigned

4    transcriber, do hereby certify the foregoing

5    transcript of proceedings before the U.S. Bankruptcy

6    Court, Southern District of New York, on

7    September 12, 2016, on CD, index number from 02:02:45

8    to 03:19:52; is prepared in full compliance with the

9    current transcription format for Judicial Proceedings

10   and is a true and accurate non-compressed transcript of

11   the proceedings as recorded to the

12   best of my knowledge and ability.

13

14

15

16

17

18   _____    September 14, 2016
          Jennifer Wilson

19   JENNIFER WILSON, AD/T #623          Date

20

21

22

23

24

25