| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | |
| In re:<br><br>LYONDELL CHEMICAL COMPANY, *et al.*,<br><br>         Debtors. | **NOT FOR PUBLICATION**<br><br>Chapter 11<br><br>Case No. 09-10023 (GCM)<br><br>(Jointly Administered) |
| EDWARD S. WEISFELNER, AS TRUSTEE OF THE LB LITIGATION TRUST,<br><br>         Plaintiff,<br><br>    v.<br><br>LEONARD BLAVATNICK, *et al.*,<br><br>         Defendants. | Adv. Pro. No. 09-1375 (MG) |

**MEMORANDUM OPINION AND ORDER OVERRULING IN PART AND SUSTAINING IN PART THE ACCESS DEFENDANTS' HEARSAY OBJECTIONS TO <u>CERTAIN EMAIL EXHIBITS</u>**

*A P P E A R A N C E S*:

BROWN RUDNICK LLP
*Attorneys for Edward S. Weisfelner,*
*as Litigation Trustee of the LB Litigation Trust*
Seven Times Square
New York, NY 10036
By: Sigmund S. Wissner-Gross, Esq.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
*Attorneys for the Access Defendants*
51 Madison Avenue, 22nd Floor
New York, NY 10010
By: Richard I. Werder, Jr., Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court are two letter briefs regarding 210 emails and other documents (the "Exhibits") offered as trial exhibits by Edward S. Weisfelner, as Trustee of the LB Litigation Trust (the "Trustee"). The Trustee's letter brief (the "Trustee's Brief," ECF Doc. # 850) and the Access Defendants'[1] letter brief (the "Access Defendants' Brief," ECF Doc. # 851) were both filed on October 13, 2016. The Trustee has also submitted two declarations by Douglas Pike: one signed on September 21, 2016, concerning pre-merger Lyondell documents (the "Lyondell Pike Declaration," ECF Doc. # 850-1), and one signed on October 3, 2016, concerning post-merger LyondellBasell Industries AF S.C.A. ("LBI") emails (the "LBI Pike Declaration" and, together with the Lyondell Pike Declaration, the "Pike Declarations," ECF Doc. # 850-2).

For the reasons below, the Access Defendants' objections to the Exhibits are **SUSTAINED IN PART** and **OVERRULED IN PART**.

## I.  BACKGROUND

At a hearing on September 12, 2016, the Trustee's counsel said he intended to offer into evidence internal Lyondell and Access emails under the business records exception to the hearsay rule. The Access Defendants objected to the admission of the emails on hearsay grounds. The Court (i) permitted the Trustee to submit a declaration of a custodian seeking to establish that the emails are admissible as business records; (ii) permitted the defendants' counsel to depose the custodian; and (iii) directed the parties to submit letter briefs by October 13, 2016. The Trustee submitted two declarations by Douglas Pike, Director of Investor Relations for Lyondell and LBI. (Lyondell Pike Decl. ¶ 1.)

---

[1] The "Access Defendants" are Access Industries, Inc., Access Industries Holdings LLC, AI International S.à.r.l, Nell Limited, Len Blavatnik, Lincoln Benet, and Philip Kassin.

The Access Defendants object to the admission of 121 of the Exhibits, 85 of which are emails. (Trustee's Br. at 2; Access Defendants' Br. at 1.) The exhibits to which the Access Defendants object fall into the following categories:

- 33 are emails that either do not contain factual assertions or that the Trustee represents are not offered for the truth of the matter asserted (the "Non-Assertive Emails").[2] (Trustee's Br. at 2.)

- 34 are "non-substantive emails that merely transmit internal presentations or documents without commentary" (the "Transmittal Emails").[3] (*Id.*)

- 35 are not emails. The Trustee describes these documents as "tax returns, annual reports, [and] financial presentations" (the "Non-Email Documents").[4] (*Id.*)

- 29 are emails that contain assertions of fact the Trustee intends to offer for the truth of the matter asserted (the "Assertive Emails").[5] (*Id.*)

## II.  LEGAL STANDARD

Federal Rule of Evidence (the "Rules") 803(6) provides that records of regular business activity are not hearsay if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

---

[2]  These exhibits are listed in footnote 7 of the Trustee's Brief.
[3]  These exhibits are listed in footnote 6 of the Trustee's Brief.
[4]  These exhibits are listed in footnote 5 of the Trustee's Brief.
[5]  These exhibits are listed in footnote 8 of the Trustee's Brief.

3

>    (E) the opponent does not show that the source of information or
>    the method or circumstances of preparation indicate a lack of
>    trustworthiness.

"To lay a proper foundation for a business record, a custodian or other qualified witness must testify that the document was kept in the course of a regularly conducted business activity and also that it was the regular practice of that business activity to make the record." *United States v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014) (internal quotation marks and citations omitted), *cert. denied*, 135 S. Ct. 1579 (2015); *see also United States v. Freidin*, 849 F.2d 716, 719–20 (2d Cir. 1988) ("[A]dmissibility under Rule 803(6) requires *both* that a memorandum have been kept in the course of a regularly conducted business activity *and also* that it was the regular practice of that business activity to make the memorandum.") (internal quotation marks and citations omitted; emphasis added). While the custodian "need not have personal knowledge of the actual creation of the document," the party offering the document into evidence must nevertheless prove that "it was the business entity's regular practice" to create the record. *Phoenix Associates III v. Stone*, 60 F.3d 95, 101 (2d Cir. 1995).

"An e-mail created within a business entity does not, for that reason alone, satisfy the business records exception of the hearsay rule." *Morisseau v. DLA Piper*, 532 F. Supp. 2d 595, 621 n.163 (S.D.N.Y. 2008) (citing FED. R. EVID. 803(6)). Accordingly, courts apply a similar approach to emails as they do to any other business memoranda. *See Penberg v. HealthBridge Mgmt.*, 823 F. Supp. 2d 166, 187 (E.D.N.Y. 2011) (concluding that "[c]ourts have applied a similar approach to emails" as to "conventional letters, memos, or notes") (internal quotation marks and citations omitted); *United States v. Stein*, No. S1 05 Crim. 0888 (LAK), 2007 WL 3009650, at *1 (S.D.N.Y. Oct. 15, 2007) (concluding that "it is impossible to determine in the abstract which of the documents defendants have in mind satisfy the Rule and which do not").

4

Therefore, each email must satisfy each element of the Rule 803(6) test. To be admissible, an email must have been written "at or near the time" of the occurrence of the facts described in the email. FED. R. EVID. 803(6). Importantly, Rule 803(6) requires both that the activity recorded in the email be a "regularly conducted" business activity, *and* that sending the email be a regular part of that activity. *Id.* "[I]t is not enough to say that as a general business matter, most companies receive and send emails as part of their business model," *In re Oil Spill,* No. MDL 2179, 2012 WL 85447, at *3 (E.D. La. Jan. 11, 2012); the email record must be "regularly made in furtherance of the employer's needs." *Penberg*, 623 F. Supp. 2d at 187. The party offering the document into evidence must provide a custodial witness to prove "all" of the conditions required by Rule 803(6). Finally, the party objecting to admission of the documents may show that despite satisfaction of the other elements, the emails "indicate a lack of trustworthiness." FED. R. EVID. 803(6).

### III.     ANALYSIS

The Court will not currently address the admissibility of the Non-Assertive Emails because the Trustee argues that they will not be offered for the truth of the matters asserted. If there is an objection to relevance when these documents are offered in evidence, the Court will consider and rule on the objection at that time.

Likewise, the Trustee contends that the Transmittal Emails are not offered for the truth of the matters asserted. (The documents are offered "regardless of the truth of any statements therein" (Trustee's Br. at 6)). Again, if there is an objection to relevance when these documents are offered in evidence, the Court will consider and rule on the objection at that time. To the extent the Trustee seeks to rely on the documents attached to the Transmittal Emails for the truth

5

of the matters asserted, the Trustee must separately establish a hearsay exception or other basis to admit the attachments.

Additionally, the Non-Email Documents are outside the scope of the issue raised by the parties at the September 12, 2016 hearing, and on which the Court requested briefing—namely, whether the *emails* the Trustee seeks to introduce are appropriately categorized as business records. The Court will reserve ruling on the Non-Email Documents until they are offered in context at trial.

This Order addresses *only* the issue whether the Exhibits are admissible as business records. The Court makes no determination at this time whether certain of the Exhibits may be admissible on other, independent grounds. The issue at hand, therefore, is whether the Assertive Emails are admissible as records of a regularly conducted business activity. The Pike Declarations establish that the Exhibits originated from Lyondell's or LBI's servers, satisfying the authentication requirement (which defendants' counsel has not contested). But the Pike Declarations do *not* address whether (i) each email was written contemporaneously with the facts described therein; (ii) each email describes a regularly-conducted business activity; and (iii) each email was sent as part of that regularly-conducted business activity. Each of these elements must be established for each email before it can be admitted into evidence.

Most of the Assertive Emails readily meet the first element—they describe facts or assertions occurring at approximately the same time as the sending of the email itself. For example, PX56 concerns a contemporaneous discussion of work to be done for "Stress Scenarios for our LRP," sent on October 8, 2006. Likewise, PX61 describes work currently underway for the "07LRP." PX77 is a compilation of weekly emails entitled "Houston Refinery Weekly Update," describing operations at the Houston refinery for that same week. Records such as

6

these, which describe events at about the same time as they occur, satisfy the contemporaneousness requirement.

The dual hurdles of Rule 803(6)'s regularity requirement are more difficult for the Trustee to overcome. Although there is no bright-line rule about the frequency with which an activity must be conducted to qualify as "regular" under Rule 803(6), the Second Circuit has stated that "records are admissible if witnesses testify that the records are integrated into a company's records and relied upon in its day-to-day operations." *Matter of Ollag Const. Equip. Corp.*, 665 F.2d 43, 46 (2d Cir. 1981); *see also Komasa*, 767 F.3d at 156 (affirming admission of mortgage loan applications that were compiled as part of an automated process); *United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000) (affirming admission of a cash advance receipt that was issued and recorded as part of a bank's regular "practice").

The Court has reviewed each of the Assertive Emails individually; most do not meet these standards. Rather than describing each email, one by one, several examples are instructive.

- PX56 contains no indication that the documented activity occurs regularly. The author describes preparations for "our LRP" (presumably a Long-Range Plan) and upcoming tasks. Although the email references "further discussion in the next couple weeks," it is not evident that the tasks recorded in the email are regularly conducted or part of a recurring business activity. And even if the tasks described in the email are regular, there is no indication that making the email record was a regular part of that activity.

- PX61 appears to be a one-off question among team members, and suffers from the same deficiency as PX56. There is no indication that the discussion in PX61 was performed on a regular basis, or that memorializing it in email is a regular part of

that activity. A similar analysis applies to several Assertive Emails which include internal discussion about "LRPs." While reports prepared on a routine schedule may very well be admissible as business records, sporadic internal discussions such as these do not appear to be regularly conducted, incorporated into the day-to-day records of the company, and relied upon in the same way as the report itself may be. *See Matter of Ollag Const. Equip. Corp.*, 665 F.2d at 46.

- PX136 discusses events that were clearly *not* within the regular business activity of Lyondell: Robert Salvin forwarded an e-mail from Dan Smith to all Lyondell employees describing among other things Leonard Blavatnik's interest in "engag[ing] in discussions with Lyondell concerning . . . the merits of an offer to acquire all of the shares of Lyondell, or a merger, combination or similar transaction," along with Salvin's own commentary: "Interesting news stock is up $3.50 since." The email on its face appears to be a unique occurrence, not in the ordinary course of business, and therefore fails to meet Rule 803(6)'s regularity requirement.

- PX311 is a short exchange between Mario Portela and Robert E. Salvin regarding debt to EBITDA ratio. Although not specifically tied to the LRP exchanges such as PX56 and PX61, communications like this one are also not proven to be "regular." An email does not become a business record by virtue of merely discussing the entity's business.

On the present record, the Court concludes that the Trustee has only established that the following emails satisfy the requirements of Rule 803(6) and are admissible on that basis:

8

- PX77: "Houston Refining weekly update." This is a set of weekly emails that appear to cover the time period January 2007 through November 2007, sent to a large distribution group, covering substantially the same topics each week. This type of weekly report satisfies Rule 803(6)'s regularity requirement.

- PX221: "Refining Forum." This email includes an agenda for a weekly meeting. Although the exhibit includes only one email (unlike the long set of emails included in PX77), the email indicates on its face that it refers to a regularly-occurring meeting. In addition, recording the agenda for such a meeting is likely to be a regular part of that business activity.

- PX628: "Forecast 2008." This email appears to refer to a recurring forecast: the discussion includes references to the regularity of the activity, such as "Attached is the current forecast"; "As in the past"; and "in the future." These indicia of repeated activity satisfy the regularity requirements.

Therefore, only PX77, PX221, and PX628 are admissible as business records. The Court makes no determination at this time whether other of the Exhibits may be admissible on independent grounds.

## IV.    CONCLUSION

For the reasons described above, the Access Defendants' objections are **SUSTAINED IN PART** and **OVERRULED IN PART**. Rulings on exhibits that will be offered other than for the truth of the matters asserted must await their offer during the trial at which time the Court will rule on any relevance objections.

The objections to PX77, PX221, and PX628 are **OVERRULED**.  The objections to the remainder of the Assertive Emails are **SUSTAINED** unless the Trustee establishes each of the required elements of the business records exception.

**IT IS SO ORDERED.**

Dated: October 19, 2016
      New York, New York

                                            **/s/Martin Glenn**
                                            MARTIN GLENN
                                  United States Bankruptcy Judge